**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CORRINE M. DEVITT,<br>Plaintiff,<br>v.<br>SANOFI-AVENTIS US, LLC,<br>Defendant. | Civil Action No. 4:23-cv-10516-MRG |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Sanofi-Aventis US, LLC ("Sanofi" or "Defendant") submits this Memorandum of Law in Support of Its Motion to Dismiss the Complaint of Plaintiff Corinne Devitt ("Plaintiff") in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]

## INTRODUCTION

Sanofi's Covid-19 Vaccination Policy lawfully required Plaintiff and other managers and on-site personnel and to be vaccinated against Covid-19 unless they met specific, lawful criteria for a religious or medical exemption. Plaintiff requested a religious exemption from the vaccination requirement, which Sanofi lawfully denied, and Plaintiff's employment terminated because she did not come into compliance with the Vaccination Policy. Nevertheless, Plaintiff brings no count for discrimination. Instead, she asserts seven state common-law claims that are untethered to her factual allegations, including counts for detrimental reliance / promissory estoppel (Count I); intentional and negligent misrepresentation (Counts II-III); tortious

[1] Plaintiff filed her state court Complaint on November 28, 2022. (*See* Dkt. 9, p. 5-14) On the same day, she filed a second, nearly identical complaint against her previous employer, Bristol-Myers Squibb, in Middlesex Superior Court, Civil Action No. 22-4040.

interference with a business relationship (Count IV); intentional infliction of emotional distress ("IIED") (Count V); "good faith and fair dealing" ("GFFD") (Count VI); and assault (Count VII).

Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because they are: (i) preempted by M.G.L. c. 151B – the Massachusetts anti-discrimination statute; and (ii) barred by the Massachusetts Workers' Compensation Act ("WCA"). First, with respect to c. 151B preemption, Plaintiff cannot survive dismissal by attempting to disguise religious discrimination allegations under various unrelated common law theories. Second, Plaintiff's claims for IIED, GFFD, and assault (Counts V, VI, and VII), and any other common law claims asserting physical or emotional injury, are barred because the WCA provides the exclusive remedy for personal injury claims arising out of an individual's employment.

Even if Plaintiff's claims were not barred under Rule 12(b)(1), and they are, dismissal is appropriate under Rule 12(b)(6) because she fails to allege facts to show entitlement to relief on any of her claims. She offers only a threadbare and conclusory recitation of the elements of her claims – each of which is deficient on its face – and fails to satisfy the federal pleading standard.

## **RELEVANT BACKGROUND**

Sanofi is a global healthcare company dedicated to treating and preventing human disease through the discovery, development, manufacture, and sale of innovative pharmaceutical products. Throughout the worldwide Covid-19 pandemic, Sanofi did its part to combat the global public health crisis by researching and developing Covid-19 vaccines, as well as manufacturing approved vaccines and vaccine-related products on behalf of other competitive pharmaceutical companies. *See* Exhibit ("Ex."). 1 at p. 2.[2]

---

[2] At the motion to dismiss stage, the Court may consider administrative charge filings without converting a motion to dismiss to one for summary judgment. *Hall v. FMR Corp.*, 559 F. Supp. 2d 120, 125 n.7 (D. Mass. 2008).

In 2021, Sanofi implemented a Covid-19 Vaccination Policy, which required all employees to receive the Covid-19 vaccine as a condition of employment, subject to lawful exemptions for valid religious accommodation requests.[3] Compl. ¶¶ 4-5. Plaintiff began working for Sanofi as a Cell Therapy Manager on February 7, 2022. *Id.* ¶ 1. Plaintiff admits that prior to her start date, Sanofi engaged in an interactive process with her, and she submitted a request for a religious exemption from the Covid-19 vaccination requirement. *Id.* ¶¶ 6, 8. After carefully considering Plaintiff's exemption request, Sanofi denied it for failure to meet legitimate criteria, and later terminated Plaintiff's employment on February 14, 2022 (i.e., one week after her start date), for her failure to comply with Sanofi's Covid-19 Vaccination Policy.[4] *Id.* ¶ 9.

On June 6, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Sanofi discriminated against her on the basis of her religion when it denied her religious accommodation request and terminated her for non-compliance with the Covid-19 Vaccination Policy. *See* Ex. 2 (Charge of Discrimination). On August 31, 2022, the EEOC dismissed the charge without making a determination on the merits of Plaintiff's allegations. Compl. ¶ 10, Ex. A.

Plaintiff claims that she suffered physical and emotional distress damages, "all due to Defendant's denial of her religious exemption and their failure to offer her an accommodation." *Id.* ¶ 14, Prayer for Relief ¶¶ 1-2. However, none of the Counts alleges employment discrimination

[3] Sanofi permitted valid medical exemptions as well, which are not at issue here. *See* Ex. 1, p.3.

[4] As stated in Plaintiff's Charge, Sanofi informed Plaintiff, "After a careful review, Sanofi US is denying your accommodation request. Sanofi US has determined that providing you an exception to the Covid-19 vaccine requirement would constitute an undue hardship due to the nature and essential functions of your position, which, among other things, require you to be able to enter a Sanofi US site and/or participate in person at Sanofi US external events and meetings, which is limited to only vaccinated individuals. Due to health and safety concerns, only vaccinated individuals, including employees, will be able to enter the Sanofi US site to which you are assigned, as well as participate in Sanofi US in-person meetings, whether held onsite or offsite…". *See* Ex. 2. In its Position Statement, Sanofi elaborated on the hands-on nature of Plaintiff's managerial rule, which required that she "oversee the manufacturing of cell therapy products, provide hands-on technical leadership, and supervise a team of operators at Sanofi US's manufacturing site in Framingham." *See* Ex. 1.

or any related claim. Any attempt by Plaintiff to do so now would be untimely.[5] The EEOC issued Plaintiff's Right to Sue on August 31, 2022, giving Plaintiff 90 days to bring claims within the scope of her charge. Compl., Ex. A. She did not. Her pending claims are deficient in numerous respects, and should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE BARRED BY THE MASSACHUSETTS ANTI-DISCRIMINATION STATUTE AND THE WORKERS' COMPENSATION ACT.

Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because they are: (1) preempted by c. 151B; and (2) barred by the WCA. *See Branyan v. Southwest Airlines Co.*, 105 F. Supp. 3d 120, 125 (D. Mass. 2015) (Gorton, J.) ("The [WCA's exclusivity provision] thus effectively abrogates subject matter jurisdiction"); *Spencer v. Kantrovitz*, 392 F. Supp. 2d 29, 32 (D. Mass. 2005) ("The exclusivity provision [of the WCA] is a jurisdictional bar precluding a court of general jurisdiction from even considering threshold matters involving an employer's liability."); *Grosick v. Smith & Wesson*, No. 87-0172-F, 1989 WL 436192, at *2 (D. Mass. 1989) (dismissing common law claims barred by WCA for lack of jurisdiction).[6]

#### A. All of Plaintiff's Claims Are Barred By c. 151B.

Plaintiff's allegations boil down to a complaint that Sanofi denied her request for religious exemption from the Covid-19 vaccination requirement, and terminated her employment because she failed to comply with company policy. Compl. ¶¶ 7, 9 14. Rather than assert a count for

---

[5] *See Rice v. New England Coll.*, 676 F.2d 9, 11 (1st Cir. 1982) ("In the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day.").

[6] "The proper vehicle for challenging a court's subject-matter jurisdiction is not Rule 12(b)(6) Fed. R. Civ. P., but rather Rule 12(b)(1)." *Makris v. Spensieri Painting, LLC*, 669 F. Supp. 2d 201, 202 (D.P.R. 2009). "[W]hen ruling on motions to dismiss for lack of subject matter jurisdiction, the court is not constrained to the allegations in the pleadings as with Rule 12(b)(6) petitions." *Id.* at 203. Plaintiff's claims are barred, and therefore are properly raised under Fed. R. Civ. P. 12(b)(1). However, even if this Court were to find the proper analysis is under Rule 12(b)(6), Defendant's arguments are equally applicable, and Plaintiff's claims still cannot withstand a motion to dismiss.

religious discrimination, however, Plaintiff brings numerous state common law claims based on these same factual allegations.[7] However, c. 151B, § 9 creates a comprehensive and exclusive statutory scheme for employment discrimination claims. As such, Plaintiff's claims are barred.

M.G.L. c. 151B is the exclusive state law remedy for employment discrimination complaints. *Reidy v. Travelers Ins. Co*., 928 F. Supp. 98, 106 (D. Mass. 1996), *aff'd*, 107 F.3d 1 (1st Cir. 1997). Thus, a plaintiff cannot maintain common law causes of action for a discharge she claims was discriminatory. *Gasior v. Mass. Gen. Hosp*., 446 Mass. 645, 651, n. 8 (2006). Massachusetts courts interpret the statute's exclusivity provision broadly, prohibiting plaintiffs from recasting claims brought, or that should have been brought, under c. 151B as independent claims. *Glowacki-Bishop v. W. & S. Financial Group Inc.*, 578 F. Supp. 3d 124, 130 (D. Mass. 2021); *Andrews v. Mass. Bay Transit Auth.*, 872 F. Supp. 2d 108, 118 (D. Mass. 2012).

Courts in Massachusetts routinely dismiss common law claims under c. 151B's exclusivity provision where, as here, they are based on the same alleged facts underlying a plaintiff's discrimination claims. *Andrews,* 872 F. Supp. 2d at 118 (negligent misrepresentation and estoppel claims barred by c. 151B)*; see also Laureano v. Legal Sea Foods, LLC,* No. 13-12057-FDS, 2013 WL 5587949, at *3 (D. Mass. 2013) (breach of contract and GFFD claims sounded in discrimination, and therefore were barred by c. 151B's exclusivity provision); *St. Arnaud v. Chapdelaine Truck Center, Inc.,* 836 F. Supp. 41, 43 (D. Mass. 1993) (dismissing GFFD claim because the public policy against discrimination is already comprehensively covered by 151B);

[7] Plaintiff's common law claims are necessarily governed by state law regardless of the forum. *See City of Milwaukee v. Illinois and Michigan*, 451 U.S. 204, 313 (1981) ("Federal courts, unlike state courts, are not general common law courts and do not possess a general power to develop and apply their own rules of decision."); *Jacobson v. New York, N.H. & H.R. Co*., 206 F. 2d 153, 157 (1st Cir. 1953) ("[I]f such an action is brought in or removed to a federal district court on grounds of diversity of citizenship, the substantive law to be applied, in determining the right to recover, is the statutory or common law of the state."); *Sampson v. Channell*, 110 F.2d 753, 761 (1st Cir. 1940) ("[U]nder [*Erie R. Co. v. Tompkins*, 304 U.S. 63 (1938)], the Massachusetts law must be determined by the state statutes and the common law as interpreted by the state courts, not by the federal court's notion of 'general law'.").

*Carroll v. Xerox Corp*., 294 F.3d 231, 241 (1st Cir. 2002) (affirming dismissal of promissory estoppel claim because plaintiff failed to allege facts sufficient to state a claim, but recognizing the claim was barred by c. 151B); *Jacobs v. Cider Mill Farms Co., Inc.*, No. 99-40210-NMG, 2003 WL 25945258, at *7 (D. Mass. 2003) (dismissing tortious interference claims as barred by c. 151B); *Eichenholz v. Brink's Incorp*., No. 16-cv-11786-LTS, 2019 WL 1061053, at *9 (D. Mass. 2019) ("tortious interference claim [was] merely a backdoor way of bringing his discrimination claim, which is not proper under the statute").

Each of Plaintiff's claims stems from Plaintiff's allegation that she was wrongfully terminated following Sanofi's denial of her request for religious exemption from the vaccination requirement. Compl. ¶¶ 7, 9, 14. "It is of no significance that [Plaintiff's] claims are framed in terms of several different … separate torts because they all have a common denominator – a supposed entitlement to recover on common law principles for alleged wrongful termination because of [religion]." *Mouradian v. Gen. Elec. Co.*, 23 Mass. App. Ct. 538, 542-43 (1987) ("The complaint merely dresses a straightforward c. 151B claim in several different outfits."). Plaintiff cannot circumvent the exclusive statutory scheme, and her claims must be dismissed in their entirety.

### B. Plaintiff's IIED, GFFD, and Assault Claims (Counts V, VI, and VII), and Any Other Common Law Claims Asserting Physical or Emotional Injury, Are Also Barred By The Massachusetts Workers' Compensation Act.

Plaintiff's common law claims asserting physical or emotional injury are additionally barred by the WCA, which provides the exclusive remedy for personal injury claims arising out of an individual's employment. *Cavicchi v. Raytheon Co*., 16 F. Supp. 3d 4, 7 (D. Mass. 2014); *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558 (1996).[8] The WCA's exclusivity provision bars

[8] Under the exclusivity provision of the WCA, G.L. c. 152, § 24, "[c]ompensation under the act is the exclusive remedy for injuries to an employee suffered in the course of employment, regardless of the wrongfulness of the employer's

all common law actions where: (1) the plaintiff was an employee of the defendant; (2) the plaintiff claims to have suffered a "personal injury" within the meaning of the Act; and (3) the injury arose out of and in the course of the plaintiff's employment. *Green*, 422 Mass. at 558. "'[E]motional distress arising out of employment' is a 'personal injury' which is compensable under the [WCA]." *Presto v. Sequoia Sys., Inc.*, 633 F. Supp. 1117, 1120 (D. Mass. 1986).

Counts V (IIED), VI (GFFD), and VII (assault) specifically allege that Plaintiff suffered physical and emotional injuries as a result of Sanofi's purported actions. Compl. ¶¶ 32, 37, 41.[9] Courts in Massachusetts have made clear that such claims are barred by the WCA. *See Bazile v. UPS Ground Freight, Inc.*, 405 F. Supp. 3d 181, 185 (D. Mass. 2019) (dismissing assault and battery and IIED claims as barred by WCA); *Doe v. Purity Supreme, Inc.*, 422 Mass. 563, 565-66 (1996) (claims for assault, and intentional and negligent inflection of emotional distress are barred by WCA); *Zygmuntowicz v. Am. Steel & Wire Co. of NJ*, 240 Mass. 421, 424 (1922) ("It is settled that injury caused by an assault upon an employee, which arises out of and in the course of his employment, falls within the act."); *Simmons v. Merchants Mut. Ins. Co.*, 394 Mass. 1007 (1985) (plaintiff's claim that he suffered emotional injury as a result of defendant's bad faith termination of his employment was barred by the WCA's exclusivity provision).

It is unclear whether in Plaintiff's other counts she intends to specifically allege personal injury. In her Prayer for Relief, for instance, Plaintiff seeks damages for "emotional distress, embarrassment, humiliation, anxiety, sleeplessness, and emotional trauma."[10] Compl. ¶ 2.

---

conduct … or the foreseeability of harm." *Estate of Moulton v. Puopolo*, 467 Mass. 478, 482-83 (2014) (internal citations omitted).

[9] As discussed *infra*, Sec. II(F)(1-2), pp. 18-20, Plaintiff's GFFD claim fails as pleaded. However, because this claim alleges that actions Sanofi took during Plaintiff's employment (i.e., the decision to terminate) led to her personal injury, the GFFD claim is also barred by the WCA.

[10] Plaintiff's additional prayer for costs and fees is inappropriate and unavailable, given her counts. *Alyeska Pipeline Serv. Co. v. Wilderness Soc*., 421 U.S. 240, 246 (1975); *Doe v. Boston Publ. Schools*, 358 F.3d 20, 25 (1st Cir. 2004) (under the "American Rule," "parties bear their own fees in the absence of explicit statutory authority").

Moreover, while these remaining counts attempt to raise unique legal theories, the factual allegations underlying these counts are the same – that Plaintiff suffered personal injury as a result of Sanofi's alleged actions. Thus, because Plaintiff's remaining state common law counts seek to redress physical or mental harms she allegedly suffered in the workplace, they are also barred by the WCA. *See Margulas v. Agar Supply Co., Inc.*, No. 04-1025, 2005 WL 4890543 (Mass. Super. Apr. 27, 2005) (Billings, J.) ("to the extent that" claims alleged "emotional, psychiatric, or physical injury arising out of or in the course of [plaintiff's] employment" such claims were "barred by the exclusivity provision of the workers' compensation act").

As such, Plaintiff's claims in Counts V (IIED), VI (GFFD), and VII (assault), and any other claim seeking to redress physical or emotional injury, should be dismissed with prejudice.

## II. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER FED. R. CIV. P. 12(B)(6).

In 2021, the EEOC released guidance explicitly stating that employers may require employees to be vaccinated to physically enter the workplace.[11] Like thousands of other employers across the Country, Sanofi implemented Covid-19 protocols and sought to maintain a workplace safe for employees and visitors and to permit critical activities to continue productively. Even if Plaintiff's claims were not barred by other statutes, as they are for the foregoing reasons, the Complaint still must be dismissed in its entirety under Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to plausibly allege facts sufficient to establish liability.

To properly state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Showing an

[11] EEOC Issues Updated COVID-19 Technical Assistance, May 28, 2021, available at https://www.eeoc.gov/newsroom/eeoc-issues-updated-covid-19-technical-assistance#:~:text=Federal%20EEO%20laws%20do%20not%20prevent%20or%20limit%20employers%20from,care%20provider%2C%20or%20public%20clinic

"entitle[ment] to relief" requires more than a mere "the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. Indeed, "[w]hile detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action ... [and] must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013).

Accordingly, to survive dismissal under Rule 12(b)(6), a claim must be supported by sufficient facts that, if taken as true, make it "plausible" that Defendant is liable for the misconduct alleged and that Plaintiff is entitled to relief. *Twombly*, 550 U.S. at 556, 570. The plausibility inquiry requires the Court, first, to "sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited)." *Rodriguez-Reyes*, 711 F.3d at 53 (citing *Morales-Cruz v. Univ. of P.R.*, 676 F. 3d 220, 224 (1st Cir. 2012)).

Second, the Court must consider whether the "winnowed residue of the factual allegations gives rise to a plausible claim to relief." *Id.* A "mere possibility of liability" is insufficient. *Frith v. Whole Foods Market, Inc.*, 517 F. Supp. 3d 60, 67 (D. Mass. 2021) (internal quotations omitted). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Rodriguez-Reyes*, 711 F.3d at 53 (citing *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)). Plaintiff's allegations fall woefully short of these standards and her Complaint must be dismissed in its entirety under Rule 12(b)(6).

### A. Plaintiff Fails To State A Claim For Detrimental Reliance / Promissory Estoppel (Count I).

To survive a motion to dismiss under the theory of promissory estoppel and/or detrimental reliance, Plaintiff must plausibly allege that: (1) a promisor made a promise which it should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) the promise does induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise. *Moore v. La-Z-Boy, Inc.*, 639 F. Supp. 2d 136, 142 (D. Mass. 2009) (quoting *Loranger Constr. Corp. v. E.F. Hauserman Co.*, 6 Mass. App. Ct. 152, 154, *aff'd*, 376 Mass. 757 (1978)). A promise is only enforceable if the plaintiff can establish that it "included enough essential terms so that a contract including them would be capable of being enforced," meaning the promisor intended the promise to be a "firm commitment." *Id*. (quoting *Armstrong v. Rohm & Haas Co., Inc.*, 349 F. Supp. 2d 71, 82 (D. Mass. 2004); *Kiely v. Raytheon Co*., 914 F. Supp. 708, 712 (D. Mass. 1996)). "Courts in Massachusetts have been clear that statements that are vague and indefinite as to conditions to exist in the future, such as a promise of inchoate 'job security' (that specifies no actual duration of employment) or the 'potential' to earn future profits (that may or may not ever materialize), may not be the basis for reasonable reliance." *Rodden v. Savin Hill Enter., LLC*, No. 15-02194-C, 2016 WL 1688688, at *7 (Mass. Super. Ct. Apr. 21, 2016); *see also Kiely*, 914 F. Supp. 2d at 142 ("[The promise] may not be simply an expression of present intention, or a statement that merely gives rise to hope or expectation on the part of the promise.").

None of Plaintiff's factual allegations identify a single promise made by Sanofi. Plaintiff provides conclusory legal allegations that she "relied on promises of the Defendant for being employed [and] fair and equitable treatment under the Vaccine Policy." Compl. ¶ 18. However, Plaintiff does not allege that she was anything other than an at-will employee who could be

"terminated at any time for any reason or for no reason at all."[12] *Merricks v. Savers, Inc.*, 2012 WL 32579, at *3 (D. Mass. Jan. 6, 2012) (quoting *Upton v. JWP Businessland*, 425 Mass. 756, 757 (1997)). Further, Plaintiff admits that she underwent an interactive process regarding her exemption request, and was required to abide by the Vaccination Policy as a "condition of maintaining employment," which she failed to do. Compl. ¶ 4.

Even if Plaintiff plausibly alleged a promise for continued employment – which she has not done – such an allegation is insufficient to establish a claim for detrimental reliance or promissory estoppel. *See Treadwell v. John Hancock Mut. Life Ins. Co.*, 666 F. Supp. 278, 287 (D. Mass. 1987) ("The promise of secure and continued employment is simply too vague to be enforceable under the doctrine of promissory estoppel…"); *Upton*, 425 Mass. at 757 (rejecting plaintiff's argument that employer was "estopped from firing her because she relied to her detriment on the defendant's representations regarding her expected hours of work").

Moreover, Plaintiff's assertion that she detrimentally relied on an unidentified promise of "fair and equitable treatment under the Vaccine Policy including a legitimate opportunity to request a religious exemption and expect accommodations to be fairly considered" is contradicted by her own factual allegations. Compl. ¶ 18. She states that she engaged in two interactive dialogues with Sanofi regarding her request for accommodation, and that she submitted a request for a religious exemption, which was ultimately denied after careful consideration following the interactive process. Compl. ¶¶ 6, 8; Compl. Ex. A. Plaintiff's conclusory legal assertion that Sanofi's decision to deny her requests was "wrongful" is insufficient to plausibly suggest that her requests were not lawfully or fairly considered. *Dexter v. Dealogic, LLC*, 390 F. Supp. 2d 233,

[12] Notably, Plaintiff does not assert a breach of contract claim, "a fact perhaps reflecting [her] recognition of the settled Massachusetts law that agreements specifying no fixed duration of employment and no cause standard for discharge are deemed to be terminable at will." *Rodden*, 2016 WL 1688688, at *3.

245 (D. Mass. 2019) (dismissing promissory estoppel claim based on "vague" promise by employer). Count I should be dismissed under Rule 12(b)(6).

**B. Plaintiff Fails to State A Claim For Intentional Misrepresentation / Deceit (Count II).**

To state a claim of intentional misrepresentation and deceit, Plaintiff must show that Sanofi "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing [Plaintiff] to act thereon, and that [Plaintiff] relied upon the representation as true and acted upon it to [her] damage." *Softub, Inc. v. Mundial, Inc.*, 53 F. Supp. 3d 235, 255 (D. Mass. 2014) (quoting *Danca v. Taunton Sav. Bank*, 385 Mass. 1, 8 (1982)). Additionally, when a plaintiff alleges fraud or deceit, a heightened pleading standard applies. Fed. R. Civ. P. 9(b) (requiring such claims to be stated "with particularity"); *North Am. Cath. Ed. Programming Found*., 567 F.3d 8, 12 (1st Cir. 2009) ("Rule 9(b)'s heightened pleading standard applies to state law fraud claims asserted in federal court."). Thus, to properly state a claim, Plaintiff must "specify[] the false statements and by whom they were made," as well as "'specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading.'" *Id.* (citation omitted).

Plaintiff's complaint allegations come nowhere near the pleading standard required to state a claim for intentional misrepresentation or deceit. *Rhone v. Energy North, Inc*., 790 F. Supp. 353, 361 (D. Mass. 1991) (dismissing claim for fraud and deceit due to failure to meet particularity pleading requirement). Plaintiff vaguely asserts, in conclusory fashion, that Sanofi "misrepresented the meaning of company conditions and ongoing company practices" without any factual allegations supporting such a statement. Compl. ¶ 20. It is entirely unclear what "company conditions" or "company practices" Plaintiff refers to, who made such representations, what made

them false, why they were material, or how Plaintiff relied on them. The absence of such information is fatal to her claim.

Additionally, Plaintiff plainly admits that she was informed of the Company's Covid-19 Vaccination Policy upon hire, failed to comply with the policy, and was terminated as a result. Compl. ¶¶ 4, 5, 7. Sanofi provided Plaintiff and all other employees with an opportunity to request a religious exemption from the Covid-19 vaccination requirement, applied lawful criteria,[13] and engaged in the interactive process to carefully and thoughtfully evaluate Plaintiff's request. Compl. ¶¶ 5, 8. Nowhere in her Complaint does Plaintiff plausibly allege that the policy guaranteed an exemption request or particular accommodation would be granted. Compl. ¶ 4-6. Plaintiff's complaint does not plausibly support a claim of intentional misrepresentation or deceit, and Count II must be dismissed.

### C. Plaintiff Fails to State A Claim For Negligence (Count III).[14]

Count III is independently subject to dismissal because Plaintiff fails to plausibly state a claim for negligent misrepresentation. To do so, Plaintiff must show that Sanofi "negligently or willfully made a false statement regarding her employment upon which she reasonably relied." *Cagnina v. Philadelphia Ins. Comp.*, 61 F. Supp. 3d 192, 194 (D. Mass. 2014) (citing *Robertson v. Snow*, 404 Mass. 515, 523 (1989)). "In the absence of a false statement, plaintiffs can seldom succeed on a claim of negligent misrepresentation." *Weber v. Sanborn*, 526 F. Supp. 2d 135, 148 (D. Mass. 2007). "'[F]alse statements of opinion, of conditions to exist in the future,' and promises to perform an act cannot sustain a claim for negligent misrepresentation…unless the promisor had no intention to perform the promise at the time it was made." *Cumis Ins. Soc'y, Inc. v. BJ's*

[13] As stated in Plaintiff's charge, Sanofi considered health and safety concerns in determining whether individuals, including employees, could enter a Sanofi site, or participate in in-person meetings. *See* Ex. 2.
[14] Plaintiff's "Negligence" claim is, in substance, a claim for negligent misrepresentations. Compl. ¶¶ 25-26.

*Wholesale Club, Inc.*, 455 Mass. 458, 471-471 (2009) (quoting *Yerid v. Mason*, 341 Mass. 527, 530 (1960)); *Cagnina*, 61 F. Supp. 3d at 194 (dismissing at-will employee's negligent misrepresentation claim based on assurances of long term job security).

Further, when bringing claims of negligent misrepresentation, plaintiffs must plead reliance with particularity, pursuant to Rule 9(b). *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 95 (D. Mass. 1998); *Young v. Deloitte & Touche, LLP*, No. 040807BLS, 2004 WL 2341344, at *5 (Mass. Super. Ct. Sept. 20, 2004).

In Count III, Plaintiff alleges misrepresentation of "company conditions, and company policies" with the same lack of clarity as to any precise representation that dooms her intentional misrepresentation claim: she fails to plead who made the representation, why it was material, how it was false, whether Sanofi knew it was false, or how Plaintiff relied upon it. Accordingly, Plaintiff's negligent misrepresentation claim likewise fails. *See Schram v. PMC Ins. Agency, Inc.*, No. 20-cv-10307-GAO, 2021 WL 2012565, at *4 (D. Mass. Mar. 22, 2021) ("[W]here the plaintiffs' negligent misrepresentation claim rests on the same allegations underlying the fraud claim, the allegations must meet the Rule 9(b) standard of particularity…Against that backdrop…Count V fails to state a claim for negligence misrepresentation because the complaint fails to plead any facts showing that the defendants knew their representations were false when they made them…"); *Barthelmes v. Kimberly-Clark Corp.*, No. 13-30164-MGM, 2015 WL 1431156, at *7 (D. Mass. Mar. 27, 2015) (dismissing negligent misrepresentation claim where plaintiff failed "to plead any facts regarding [the plaintiff's] reliance on [Defendant's purported] representation, let alone reasonable reliance'"). Count III also warrants dismissal.

### D. Plaintiff Fails To State A Claim for Tortious Interference With Business Relationship (Count IV).

Plaintiff's count for tortious interference with a business relationship also fails for several independent reasons. To state such a claim, Plaintiff must plausibly allege that: (1) she had a business relationship with a third party; (2) Defendant knowingly induced the third party to break that business relationship; (3) Defendant's interference was improper in motive or means; and (4) the interference harmed Plaintiff. *Sensitech Inc. v. LimeStone FZE,* 548 F. Supp. 3d 244, 258 (D. Mass. 2021) (quoting *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 715 (2011)).

Plaintiff fails to plausibly allege a single element of an intentional interference claim. She does not identify any third-party business relationship, and she certainly does not explain how Sanofi interfered with such a relationship, much less that it did so by improper means. *See Felinska v. New England Teamsters and Trucking Indus. Pension Fund*, 855 F. Supp. 474, 478 (D. Mass. 1994) (dismissing claim where complaint failed to identify a third party, "a crucial element").

To the extent Plaintiff bases her claim on her nascent employment relationship with Sanofi, her claim fails because Sanofi is not a third party, and cannot interfere with its own business relationship. *Sensitech Inc.*, 548 F. Supp. 3d at 258 ("A party cannot 'tortiously interfere' with a …business relationship to which he is a party."); *Karter v. Pleasant View Gardens, Inc*., 248 F. Supp. 3d 299, 314 (D. Mass. 2017) (dismissing claim because defendant could not "tortiously interfere with his own relationships"); *Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659, 663, n. 3 (1981) ("[Employer] could not be liable for tortious interference with its own contract with [employee]."). As such, Plaintiff's claim for tortious interference with a business relationship in Count IV must be dismissed.

**E. Plaintiff Fails To State A Claim For Intentional Infliction of Emotional Distress (Count V).**

Count V fares no better. To state a claim for IIED, Plaintiff must plausibly allege that: (1) Sanofi intended to inflict emotional distress or knew or should have known that emotional distress

was the likely result of its alleged conduct; (2) the conduct was "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community"; (3) Sanofi's actions caused Plaintiff distress; and (4) the emotional distress sustained by Plaintiff was "severe" and of a nature "that no reasonable [person] could be expected to endure it." *North Shore Pharm. Serv., Inc. v. Breslin Assoc. Consulting LLC*, 491 F. Supp. 2d 111, 132 (D. Mass. 2007) (quoting *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997); *Sena v. Commonwealth*, 417 Mass. 250, 263–64 (1994)); *see also Clemens v. Stewart*, No. 22-cv-10593-DJC, 2023 WL 2072427, at *3 (D. Mass. Feb. 17, 2023) ("'The standard for making a claim [IIED] is very high.'") (quoting *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996)).

To support her IIED claim, Plaintiff merely asserts that Sanofi made unknown misrepresentations,[15] denied her religious exemption request, and terminated her employment. Compl. ¶¶ 31-32. No factual allegations even remotely suggest extreme or outrageous conduct sufficient to ground an IIED claim. *See Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 151 (1989) ("An employee, even one in a socially important occupation, who simply disagrees with her employer's policy decisions, may not seek redress in the courts."); *Alicea v. Spaulding Rehab. Hosp. Corp.*, No. 17-cv-11065-DJC, 2018 WL 1156226, at *4 (D. Mass. Mar. 5, 2018) ("The complaint, however, does not describe conduct by [plaintiff's supervisor] that is so extreme and outrageous such that it would be intolerable in a civilized society, apart from being allegedly unlawful and discriminatory."); *Emerson v. Mass. Port Auth.*, 138 F. Supp. 3d 73, 76-77 (D. Mass. 2015) (dismissing IIED claim alleged in conjunction with

[15] The allegation that Sanofi "made misrepresentations" is a conclusory legal assertion, which is entitled to no weight when ruling on a Rule 12(b)(6) motion. *See Rodriguez-Reyes*, 711 F.3d at 53; *Hosseini v. Capital One, N.A.*, 217 F. Supp. 3d 441, 454 (D. Mass. 2016) (dismissing fraud claim where plaintiff merely alleged "in a conclusory manner that [the defendant] made misrepresentations and omissions 'with knowledge of [their] untruth'"); *Kruskall v. Sallie Mae Service, Inc.*, No. 15-cv-11780, 2016 WL 1056973, at *5 (D. Mass. Mar. 14, 2016) (dismissing fraud and negligent misrepresentation claims where plaintiff stated "in a conclusory fashion that [the defendant] 'made misrepresentations,'" with no allegation of when or where the misrepresentations occurred).

employment discrimination and retaliation claims); *Soni v. Wespiser*, 239 F. Supp. 3d 373, 390 (D. Mass. 2017) (dismissing IIED claim where the court could not reasonably infer that allegations that "[defendant] tracked down [the plaintiff's] potential employers and told vicious lies about her because she's a woman and a minority, which cost her two jobs" "rises to the exceptionally high standard required to qualify as 'extreme and outrageous'"); *Hoffman v. Optima Systems, Inc.*, 683 F. Supp. 865, 872-873 (D. Mass. 1988) (dismissing IIED claim despite allegations that defendants fraudulently induced plaintiff to resign from his position and enter into a new employment contract, paid plaintiff only a fraction of the fair market value of his services, and did not reimburse plaintiff for certain expenses); *see also, e.g., Leake v. Raytheon Techs. Corp.*, No. CV-22-00436-TUC-RM, 2023 WL 2242857, at *1 (D. Ariz. Feb. 27, 2023) (finding allegations of hostile work environment resulting from Covid-19 safety policy to be "shocking to the Court" given that the "virus … has claimed the lives of over one million Americans[.]"). Because Plaintiff fails to state a claim for IIED, Count V must be dismissed.

**F. Plaintiff Fails To State A Claim For Breach of the Implied Covenant of Good Faith And Fair Dealing (Count VI).**

**1. Plaintiff Does Not Plead the Existence of Any Relevant Contract.**

Plaintiff's GFFD claim is similarly unavailing. "Massachusetts law does not recognize an independent claim for breach of the implied covenant of [GFFD] separate and apart from a claim for breach of the underlying contract." *Bos. Redevelopment Auth. v. Bos. Priv. Bank & Tr. Co. , Tr. of 21 Warren St. Realty Tr.*, No. 1884CV01578BLS1, 2018 WL 6933371, at *4 (Mass. Super. Nov. 6, 2018) (Davis, J.), *aff'd sub nom. Bos. Redevelopment Auth. v. Bos. Priv. Bank & Tr. Co.*, 98 Mass. App. Ct. 1107 (2020). The existence of a contract is therefore a prerequisite for a claim for breach of the implied covenant of good faith and fair dealing. *See Delmonte v. Laidlaw Env't Serv., Inc.*, 46 F. Supp. 2d 89, 92 (D. Mass. 1999) ("A further consequence of the insufficiency of

plaintiffs' pleading as to the existence of an employment contract is the dismissal of the claim of breach of the implied covenant of good faith and fair dealing."); *Chokel v. Genzyme Corp*., 449 Mass. 272, 276 (2007) (breach of the covenant of GFFD "occurs when one party violates the reasonable expectations of the other…however, '[t]he scope of the covenant is only as broad as the contract that governs the particular relationship.") (citation omitted).

Plaintiff does not allege the existence of any contract. She simply states that "Defendant wrongfully terminated her employment," which is plainly insufficient to state a claim for breach of the implied covenant of good faith and fair dealing. Compl. ¶¶ 37-38. *See Haglund v. Estee Lauder Companies, Inc*., 466 F. Supp. 3d 292, 300 (D. Mass. 2020) (dismissing claim due to lack of contract). Plaintiff's vague reference to a violation of public policy does not save her claim. *Madden v. Ascensus Coll. Savings Recordkeeping Serv., LLC*, No. 20-10565-FDS, 2021 WL 231298, at *7 (D. Mass. Jan. 22, 2021) ("To the extent that the complaint's allegations that plaintiff's termination violated public policy have merit, they may support a claim for wrongful termination. But the complaint does not assert such a claim. Instead, it asserts a claim for breach of the implied covenant, which requires a contract between the parties.").[16] Because Plaintiff makes no plausible allegations for breach of contract, Count VI must be dismissed.

#### 2. To the Extent Plaintiff Attempts to Bring a *Fortune* Claim, That Claim Also Fails.

In the context of at-will employment, Massachusetts courts have recognized a limited claim for breach of the implied covenant of good faith and fair dealing where an employer terminates an employee on the eve of the employee's anticipated receipt of specific, identifiable compensation,

[16] Even if Plaintiff's GFFD claim is a veiled attempt to assert a claim for wrongful termination in violation of public policy, her claim still fails because the public policy exception "exists only when 'there is no other adequate way to vindicate the public policy.'" *Wong v. Resolve Tech*., 2011 WL 3157198, at *7 (D. Mass. July 25, 2011). As discussed *supra*, pp. 5-7, Sec. I(A), "the remedial scheme in c. 151B precludes the creation of any common law claim based on the same public policy." *Id.*

such as commissions, tied to her own past performance. *Shen v. Biogen Idec Inc.*, 523 F. Supp. 2d 48, 54 (D. Mass. 2007). To bring such a claim, a plaintiff must properly allege: (1) status as an at-will employee; (2) termination of her employment; (3) termination without "good cause" or in "bad faith"; and (4) termination with the purpose of depriving her of compensation for his own past services. *Lelio v. Marsh USA, Inc.*, No. CV 15-10335-MLW, 2017 WL 3494214, at *10 (D. Mass. Aug. 14, 2017); *Madden*, 2021 WL 231298, at *7; *Fortune v. Nat'l Cash Register Co.*, 373 Mass. 96, 100-05 (1977) (recognizing a limited cause of action in the employment arena for a good faith and fair dealing claim).

Here, Plaintiff's allegations do not give rise to any such claims, but even if she sought to pursue one, this claim also would fail because she does not allege that Sanofi terminated her for the purpose of depriving her of earned compensation. Indeed, she only worked for Sanofi for *one week*, and her Complaint contains no factual allegations concerning any outstanding earned compensation. *See Delmonte*, 46 F. Supp. 2d at 92 (dismissing GFFD claim "[b]ecause the complaint contains no allegations whatever of [defendant's] conduct having deprived [the plaintiff] of any unpaid financial benefit").

Moreover, Plaintiff fails to allege any facts from which a plausible inference could be made that her termination was in bad faith, or for any purpose other than her failure to comply with the Vaccination Policy. She expressly concedes that her termination resulted from that conduct. *See Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 9 (1st Cir. 2011) (dismissing claim where "complaint contain[ed] only a threadbare allegation" that termination was in bad faith). The Complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing, and Count VI must be dismissed.

**G. Plaintiff Fails To State A Claim For Assault (Count VII).**

Finally, Plaintiff also fails to state a claim for assault. To do so, she must plausibly allege that Sanofi acted intending to cause a harmful or offensive contact with Plaintiff or acted to create an imminent apprehension of such a contact, and that Plaintiff was thereby put in such imminent apprehension. *Diaz v. Devlin*, 229 F. Supp. 3d 101, 111 (D. Mass. 2017) (quoting Restatement (Second) of Torts § 21 (1) (Am. Law Inst. 1965)). The Complaint is devoid of any factual allegation whatsoever suggesting that Sanofi intended to cause or create any apprehension of physical contact with Plaintiff, or that Plaintiff was placed in such imminent apprehension. *See Gouin v. Gouin*, 249 F. Supp. 2d 62, 69 (D. Mass. 2003) ("Words do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person.") (internal citations and quotations omitted) (dismissing claim for assault).

Further, Plaintiff was at all times in control of whether she obtained a vaccination against Covid-19 or not. She does not allege, and Sanofi did not in fact, threaten or force her to do so, and her decision was at all times voluntary. Plaintiff has not plausibly pled that she reasonably feared physical harm as a result of the Vaccination Policy. *See Panse v. Norman*, No. 04-11658-RWZ, 2005 WL 2323176, at *3 (D. Mass. Sept. 16, 2005) (dismissing civil assault and battery claim where plaintiff failed to plead elements necessary to establish a *prima facie* case). As such, Plaintiff's assault claim fails on its face and must be dismissed.

## III. CONCLUSION

The Complaint should be dismissed in its entirety, with prejudice. First, dismissal with prejudice is appropriate where common law claims are barred by the WCA or c. 151B. *Ahanotu v. Mass. Turnpike Auth.*, 466 F. Supp. 2d 378 (D. Mass. 2006); *Welch v. People's United Bank, Natl. Ass'n.*, 2021 WL 1391467, at *6 (D. Mass. Apr. 13, 2021). Second, "dismissal … under [Rule] 12(b)(6) typically is 'presumed to be with prejudice,' because it serves as 'a final decision on the

merits.'" *In re Fresenius Granuflo/Naturalyte Dialysate Prod. Liab. Litig.*, 76 F. Supp. 3d 279 (D. Mass. 2015). Where "defect[s] in [Plaintiff's] claim[s] [are] irremediable," as they are here, dismissal with prejudice is the "proper and most efficient resolution." *Id*.

Respectfully submitted,

SANOFI-AVENTIS US, LLC,

By its attorneys,

*/s/ Christopher W. Kelleher*__________________

Kristin G. McGurn (BBO No. 559687)
kmcgurn@seyfarth.com
Christopher W. Kelleher (BBO # 705508)
ckelleher@seyfarth.com
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
Telephone: (617) 946-4800
Telecopier: (617) 946-4801

**CERTIFICATE OF SERVICE**

I, Christopher W. Kelleher, certify that on March 15, I caused a true and accurate copy of the foregoing document to be filed and uploaded to the CM/ECF system.

*/s/ Christopher W. Kelleher*_____________
Christopher W. Kelleher