Exhibit 1

# Exhibit 1

Seyfarth

**Seyfarth Shaw LLP**
Seaport East
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
**T** (617) 946-4800
**F** (617) 946-4801

jmcgovern@seyfarth.com
T (617) 946-8351

www.seyfarth.com

July 7, 2022

**VIA EEOC PORTAL**

Marc Hawley
Office Automation Assistant
U.S. Equal Employment Opportunity Commission
Boston Area Office
15 New Sudbury St., Room 475
Boston, MA 02203

**Re: *Corrine Devitt v. Sanofi***
**EEOC Charge No.: 523-2022-01696**

Dear Mr. Hawley:

This letter and the enclosed documents set forth the position statement of Respondent Sanofi US Services Inc. (incorrectly identified as "Sanofi" in the caption) ("Sanofi US" or the "Company") in response to the Charge of Discrimination ("Charge") filed by Corrine Devitt ("Ms. Devitt").[1]

## NATURE OF THE CHARGE

Ms. Devitt, a Sanofi US employee for 11 days, alleges that Sanofi US discriminated against her on the basis of her religion (not identified in the Charge) and failed to reasonably accommodate her religious beliefs when it denied her request for accommodation and terminated her employment pursuant to Sanofi US's COVID-19 Vaccination Policy. Ms. Devitt's claims are completely meritless. As set forth below, Sanofi US denied Ms. Devitt's request for a religious exemption from the Company's Vaccination Policy after careful and respectful consideration, and

[1] This position statement is submitted to assist the Commission in investigating the above-referenced Charge so that the Charge may be resolved as expeditiously as possible. This position statement and accompanying documents are confidential and should not be disclosed to individuals or entities outside the Commission without the Company's prior written consent, except as required to Ms. Devitt or Ms. Devitt's legal representative, or in response to a valid Freedom of Information Act request. Inclusion of information in this position statement does not constitute a waiver of any objection or privilege the Company may have in response to future discovery or information requests, or to the introduction of evidence in this or any subsequent proceeding; nor does it constitute a waiver of any objection as to timeliness of the Charge or any other legal argument the Company may assert in the future. Furthermore, this position statement, although believed to be true and correct in all respects, does not constitute an affidavit or admission, and is not intended to be used as evidence in any court or other proceedings. The Company retains its right to present new, revised, or additional facts or arguments or to respond to any new issues or evidence that may arise.

in accordance with all applicable laws. Accordingly, Sanofi US respectfully requests that the Commission dismiss the Charge in its entirety with a "no reasonable cause" finding.

**FACTUAL BACKGROUND**

**I. Sanofi US's Business Operations and Relevant Policies.**

Sanofi US is a global healthcare company dedicated to treating and preventing human disease through the discovery, development, manufacture and sale of innovative pharmaceutical products. The Company develops products in various therapeutic areas, such as cardiovascular disease, central nervous system, internal medicine, metabolic disorders, oncology, ophthalmology, and thrombosis. Sanofi US operates manufacturing, packaging, distribution, and research facilities and markets its products in the United States through its field sales professionals. Throughout the worldwide COVID-19 pandemic, Sanofi US has fought to combat the public health crisis by researching and developing COVID-19 vaccines, as well as manufacturing approved vaccines and vaccine-related products on behalf of other competitive pharmaceutical companies.

Sanofi US is committed to providing equal employment opportunities for its employees and applicants and maintaining a work environment free from any kind of discrimination, harassment and retaliation. To this end, the Company maintains an Equal Employment Opportunity ("EEO"), Harassment-Free Work Environment, and Mutual Respect Policy, which prohibits all forms of discrimination, including on the basis of race, color, creed, religion, national origin, age, ancestry, nationality, marital, domestic partnership or civil union status, sex, gender, gender identity or expression, affectional or sexual orientation, disability, veteran or military status or liability for military service, domestic violence victim status, atypical cellular or blood trait, genetic information or any other characteristic protected by federal state or local law. *See* Exhibit A (EEO, Harassment-Free Work Environment, and Mutual Respect Policy). Sanofi US also prohibits harassment, intimidation and all forms of unprofessional and disrespectful conduct. *See id.* The Company further prohibits retaliation against any employee, applicant or contractor for the good-faith reporting of discrimination, harassment or any other actions that may violate the EEO, Harassment-Free Work Environment, and Mutual Respect Policy. *See id.*

Sanofi US respects the religious beliefs and practices of all employees and applicants, and will make, on request, a reasonable accommodation for such sincerely held religious beliefs or practices when a reasonable accommodation is available that does not create an undue hardship on the Company's business. *See id.*

**II. Sanofi US's COVID-19 Vaccination Policy.**

As a healthcare company and vaccine manufacturer, Sanofi US is committed first and foremost to the health and safety of its employees, patients, customers and the public. Sanofi US's customers include many healthcare institutions and facilities. That priority has become increasingly important given the unprecedented challenge presented by the ongoing COVID-19 pandemic. Over the course of the pandemic, Sanofi US implemented various mitigation procedures for its workforce, including remote work where appropriate, and/or requiring masking, testing, maintaining social distance, and temperature checks. The vaccines that have now been developed and approved for use by the FDA are highly effective at preventing severe disease and death from COVID-19. *See, e.g., What You Need to Know About Variants*, Centers for

Disease Control and Prevention (updated Apr. 26, 2022), available at https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html. At this point, the facts are clear: vaccination is the most effective way to reduce the spread of COVID-19 and protect Sanofi US's field employees, customers, patients and the general public from contracting COVID-19 and from serious illness if infected with COVID-19.

On August 10, 2021, to minimize the risk of transmission of the COVID-19 virus and maintain a healthy workplace to safely serve its patients, customers and the public at large, and to foster business continuity to enable Sanofi US to continue its contributions to health science, including combatting the public health crisis through activities such as vaccine production, Sanofi US implemented a COVID-19 Vaccination Policy. Pursuant to this Policy, vaccination was initially required in certain circumstances. All field-based employees (including employees who could be called upon to access healthcare-related facilities as part of their job responsibilities) were required to be fully vaccinated against COVID-19 by October 4, 2021.

Sanofi US expanded its COVID-19 Vaccination Policy in phases to eventually cover all U.S. employees, in accordance with applicable state and federal laws and in light of certain Executive Orders. On November 12, 2021, Sanofi US communicated that all U.S.-based employees, including the Company's critical workforce, regardless of role or function, were required to be fully vaccinated against COVID-19 by January 4, 2022, with the exception of employees working at three different sites.[2] *See* Exhibit B (November 12, 2021 communication; and Sanofi US COVID-19 Vaccination Policy). Employees were instructed to submit proof that they received the full vaccine dosage (two doses of the Moderna or Pfizer vaccine, or the single Johnson & Johnson ("J&J") dose) by uploading their vaccination information to Sanofi US. *See id.*

As part of its policy, Sanofi US considers requests for exemption from its COVID-19 Vaccination Policy due to sincerely held religious beliefs or qualifying medical conditions for which, according to the CDC, the COVID-19 vaccine is contraindicated, and Sanofi US provides reasonable accommodations, consistent with Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"), absent undue hardship to the business and/or a direct safety threat to employees, customers, or others' health and safety.[3] Consistent with the foregoing, Sanofi US's US Employee Relations Team objectively and individually reviewed each

---

[2] Due to business continuity concerns, employees working at Sanofi US's Chattanooga, TN, Ridgefield, NJ and Swiftwater, PA sites were notified of their requirement to be vaccinated by March 31, 2022. That deadline was ultimately extended to April 15, 2022 (except for the Chattanooga, TN site, for which the mandate is paused due to restrictive Tennessee legislation concerning private employer vaccine mandates).

[3] On November 4, 2021, the United States government, through the Centers for Medicare and Medicaid Services ("CMS"), issued rules requiring vaccination for workers at fifteen categories of health care facilities that depend on Medicare and Medicaid reimbursement (the "CMS rules"), unless such workers are exempt for medical or religious reasons. 86 Fed. Reg. 61555 (2021). As recipients of federal funding, these rules apply to most health care facilities and hospitals. Such health care facilities generally restrict access to unvaccinated business visitors, including pharmaceutical sales representatives. Consistent with the CMS rules, Sanofi US's policy allows employees to request an exemption from the vaccine mandate based on either medical or religious grounds.

accommodation request consistent with the Company's health and safety priorities to protect individual and public health.

Sanofi US's Policy was implemented and has developed in response to the pandemic, CDC, EEOC, Executive Order, CMS and OSHA guidance, and scientific data. It is intended to help safeguard the health and well-being of Sanofi US's employees, customers, patients, and the general public. Sanofi US remains committed to protecting its workforce and the community against the ever-evolving threat of the pandemic.[4]

**III. Ms. Devitt's Hire and Request for a Religious Accommodation.**

Ms. Devitt applied for a position as a Cell Therapy Manufacturing Manager in Sanofi US's Genomic Medicine Unit (GMU). The Company's GMU CMC group is dedicated to the establishment of best in class manufacturing platforms to support development of life-changing advanced cell and gene therapy products. *See* Exhibit C (Job Description). The primary accountability of the Cell Therapy Manufacturing Manager role is to enable the manufacturing of cell therapy products for clinical supply, as a cell therapy technical expert for cGMP manufacturing, through providing hands-on technical leadership and onsite operational oversight for Sanofi US's therapy manufacturing site in Framingham, Massachusetts. *See id.* This position requires managing a team of direct reports (which consists of manufacturing operators), developing team capabilities by providing initial and ongoing training, overseeing tech transfer activities and drug production, and managing the production schedule and daily tasks of the manufacturing operators. *See id.*

Since implementing its COVID-19 Vaccination Policy, Sanofi US's job requisitions expressly state: "As a healthcare company and a vaccine manufacturer, Sanofi has an important responsibility to protect individual and public health. This position will require individuals to be fully vaccinated against COVID-19 as part of your job responsibilities."

Sanofi US selected Ms. Devitt for the Cell Therapy Manufacturing Manager role, and followed up with an offer letter on December 22, 2021. *See* Exhibit D (Offer Letter). Ms. Devitt's anticipated start date with Sanofi US was on February 7, 2022. As set forth in Ms. Devitt's offer letter, all Sanofi US employees must obtain a COVID-19 vaccine as a condition of employment, unless they request, and the Company approves, a religious or medical exemption from this requirement. On or about December 22, 2021, Ms. Devitt reached out to Sanofi US to inquire about requesting an accommodation in connection with the Company's COVID-19 Vaccination Policy.

On January 5, 2022, Ms. Devitt submitted a request for accommodation to Sanofi US, requesting a religious exemption from the Company's COVID-19 Vaccination Policy. *See* Exhibit E (Religious Accommodation Request). Ms. Devitt stated that she is a "Biblically based Christian"

---

[4] Before vaccinations against COVID-19 were available, like many healthcare companies, Sanofi US permitted its employees temporarily to work remotely and engage in only virtual (e.g., "Zoom") engagements with customers and medical professionals and co-workers, despite the fact that in-person meetings are an essential function of the job. Now that FDA-approved vaccines are readily available, Sanofi US's COVID-19 Vaccination Policy requires employees to be vaccinated unless a religious or medical exemption is approved. Site-based employees, who were temporarily permitted to work remotely, are required to be onsite on average 2 to 3 days per week.

and believes people "are created by God, to be a temple of the Holy Spirit, [and] that the body is important to that connection." *See id.* She explained that her "conflict" was that "[p]hysical sin hurts the Spirit [and] defiling the physical body defiles the spirit," and she "take[s] caution when it comes to other pharmaceuticals…and frequently seek[s] natural or holistic alternatives." *See id.* Although Ms. Devitt stated that taking the COVID-19 vaccine "would be a blasphemous sin, and it would be me placing my trust in man, rather than God," she did not deny taking other pharmaceuticals ("I *take caution* when it comes to other pharmaceuticals") (emphasis added) and acknowledged that she consumes alcohol ("I don't drink *to excess*") (emphasis added). *See id.* Ms. Devitt proposed "self-symptom monitoring," "masking," and "testing," if necessary, as alternative accommodations to getting vaccinated against COVID-19. *See id.*

Sanofi US asked Ms. Devitt to provide additional information to learn more about how a religious tenet, practice or belief to which she adhered directly conflicted with the requirement that she be vaccinated against COVID-19. Ms. Devitt voluntarily participated in an interactive discussion on January 19, 2022. She was unable to recall the last time she received a vaccine, but surmised it had been at least a few years. Although she noted that she refuses medication, she acknowledged that she would take medication if she was "knocking on death's door." Ms. Devitt also explained that her beliefs are "Biblically based," and while she does not strictly adhere to Christianity, her beliefs are "spiritual [and] stem from Biblical tenets." When asked if her beliefs were spiritual or religious, Ms. Devitt stated that she was unable to separate these two concepts. She reiterated her belief in maintaining and treating her body well because her body is "a temple of the Holy Spirit."

On February 2, 2022, Sanofi US informed Ms. Devitt her request for exemption from the Vaccination Policy was denied. *See* Exhibit F (Denial of Request). The Company determined that providing Ms. Devitt an exemption from its COVID-19 Vaccination Policy would constitute an undue hardship due to the nature and essential functions of her position, which, among other things, required Ms. Devitt to oversee the manufacturing of cell therapy products, provide hands-on technical leadership, and supervise a team of operators at Sanofi US's manufacturing site in Framingham. Sanofi US communicated to Ms. Devitt that as of the applicable vaccination deadline (February 14, 2022), only vaccinated individuals would be able to enter the Framingham site and participate in in-person meetings, whether held onsite or offsite. *See id.*

Sanofi US also explained that Ms. Devitt was permitted to commence her employment with the Company on her scheduled start date of February 7, 2022, but she would be required to work remotely at first. *See id.* Ms. Devitt was required to submit proof to Sanofi US that she had obtained the first dose of either the Moderna or Pfizer vaccines, or the single-dose J&J vaccine by 12:00 p.m. on February 14, 2022. *See id.* She would be permitted on-site after obtaining the first dose. *See id.* After obtaining her first vaccine dose, Ms. Devitt was required to submit proof that she is scheduled to receive her second dose (if she chose a two-dose COVID-19 vaccine). Finally, she would be required to submit proof to Sanofi US that she obtained the final dose within one business day of the scheduled dose. *See id.* Any failure of Ms. Devitt to submit proof of vaccination would result in termination of employment. *See id.*

In response, Ms. Devitt requested an appeal of Sanofi US's denial of her accommodation request. *See* Exhibit G (2-4-22 Devitt Email). In her appeal, Ms. Devitt argued (incorrectly) that Sanofi US had denied her religious accommodation on the grounds that she was a "direct threat" and cited to the ADA. *See id.* She also informed the Company that she had "opened up an EEOC Complaint" and will be "pursuing all of [her] rights" if she is terminated from employment. *See id.*

Sanofi US clarified to Ms. Devitt that the basis of denying her accommodation request is due to the nature and requirements of her role, which was set forth in her February 2, 2022 denial letter. *See id.*

In the interim, Ms. Devitt began working for Sanofi US on February 7, 2022 in a temporary remote capacity.

On February 8, 2022, Sanofi US communicated to Ms. Devitt that, upon reviewing and considering her additional submissions, the Company would not overturn its decision to deny her request for exemption from the vaccine requirement. *See* Exhibit H (Appeal Denial Letter). Notably, Ms. Devitt's appeal was evaluated and the decision determined by an experienced Sanofi US Human Resources professional who was (a) uninvolved in the initial determination, and (b) more senior within the Sanofi US HR organizational structure than the HR individual who made the initial determination. Sanofi US communicated to Ms. Devitt that she was still required to obtain proof that she had obtained the first dose of either the Moderna or Pfizer vaccines, or the single-dose J&J vaccine by 5:00 p.m. on February 14, 2022.

## IV. Ms. Devitt Fails to Comply with the Company's COVID-19 Vaccine Mandate, and Sanofi US Terminates Her Employment.

On February 10, 2022, Ms. Devitt informed her manager, Robert Milczarek, via email that her accommodation request was denied and that he could "begin the process of reopening [her] role." *See* Exhibit I (Email Communication). She noted that she was "not sure of the value of completing any other parts of new hire / training / meetings etc." *See id.* Mr. Milczarek forwarded Ms. Devitt's email to Lisa Leger, HR Business Partner. *See id.* Ms. Leger reached out to Ms. Devitt and inquired whether she was resigning her position. *See id.*

In response, Ms. Devitt told Ms. Leger, "I will not be getting the vaccine as per the denial email demands. It appears that I do not meet the requirements for this role." *See id.* When Ms. Devitt failed to comply with the Company's COVID-19 vaccine mandate and provide proof of vaccination by the February 14, 2022 deadline, Sanofi US terminated her employment, effective February 18, 2022. *See* Exhibit J (Termination Letter).

## ARGUMENT

Sanofi US's COVID-19 Vaccination Policy is consistent with federal and state laws and guidance. The U.S. Supreme Court has long recognized the legitimacy of mandatory vaccination rules. "The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944) (internal citations omitted). The EEOC itself, along with OSHA – the two agencies with jurisdiction over employer vaccination requirements – have both authorized mandatory vaccination programs like Sanofi US's. *See, e.g.*, *What You Should Know About COVID-19 And The ADA, The Rehabilitation Act, And Other EEO Laws,* available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws ("COVID-19 Vaccinations: EEO Overview" (updated Mar. 14, 2022)), confirming federal equal employment statutes do not prevent an employer from requiring a COVID-19 vaccination for all employees who physically enter the workplace, subject to the reasonable accommodation provisions of the ADA and Title VII. As noted above, Sanofi US's decision to implement its COVID-19 Vaccination Policy came only after careful consideration of

workplace safety concerns in light of COVID-19 and the Federal government's efforts to promote and support vaccination.

Simply put, Ms. Devitt's claim of religious discrimination is without merit. Sanofi US respects the religious beliefs, observances and practices of its employees, and undertook a careful and individual review of Ms. Devitt's request for an exemption from its COVID-19 Vaccination Policy. Accordingly, Ms. Devitt's religious discrimination claim fails and this Charge should be dismissed in its entirety.

## I. Ms. Devitt's Claim Of Discrimination Based On Religion Fails.

### A. Ms. Devitt Cannot Establish a *Prima Facie* Case of Religious Discrimination Based on a Failure to Accommodate.

Title VII's prohibition against employment discrimination based on religion includes a right for job applicants and employees to request a reasonable accommodation from an employer requirement that conflicts with their sincerely held religious beliefs, practices, or observances. However, if an employer cannot reasonably accommodate an employee's religious beliefs, practices, or observances without undue hardship on its operations, the employer is not required to grant the accommodation. *See* COVID-19 Vaccinations: EEO Overview, at § L. Notably, an employer is not required to automatically accept an employee's professed religious belief. Rather, if the employer is aware of facts that provide an objective basis for questioning either the religious nature or the sincerity of a particular belief, practice, or observance, the employer may request additional supporting information. *See id.* at §§ K.12, L.2.

Under Title VII, to establish a *prima facie* case of religious discrimination based on a failure to accommodate, Ms. Devitt must show that (1) she held a *bona fide* religious belief conflicting with an employment requirement;[5] (2) she informed her employer of this belief; and (3) she was disciplined for failure to comply with the conflicting employment requirement. *See Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 131 (1st Cir. 2004). If Ms. Devitt is able to establish a *prima facie* case, the burden shifts to Sanofi US to show that it could not reasonably accommodate Ms. Devitt's religious belief or practice without undue hardship.

#### 1. Ms. Devitt's Preferred Accommodation Would Create an Undue Hardship.

Even if Ms. Devitt could establish a *prima facie* case (which she cannot), her claim still fails as Ms. Devitt's preferred accommodations—to be exempt from receiving the COVID-19 vaccination and to work remotely for the foreseeable future—would create an undue hardship for Sanofi US. Sanofi US's COVID-19 Vaccination Policy was implemented to protect the safety of its employees, customers, and patients, and to foster business continuity to enable the Company to continue its contributions to combatting the public health crisis. Granting Ms. Devitt's

---

[5] Based on the plethora of information Ms. Devitt submitted to Sanofi US, it is clear that personal, non-religious reasons were the basis for her accommodation request, including but not limited to her concerns about the unknown long-term effects of receiving a COVID-19 vaccine and her desire to "preserve" and not "endanger" her health.

exemption request would undermine these health and safety efforts, resulting in an undue hardship.

It is well-established that any accommodation that imposes more than a *de minimis* burden on the employer is an undue hardship under Title VII.[6] In fact, in its Technical Assistance, the EEOC advised that costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business—including the risk of the spread of COVID-19 to other employees or to the public. The EEOC reiterated that courts have found Title VII undue hardship where the religious accommodation would impair workplace safety. *See* COVID-19 Vaccinations: EEO Overview, at § L.3. The EEOC further recognized that, in assessing undue hardship, common and relevant considerations during the COVID-19 pandemic include, for example, whether the requesting employee works outdoors or indoors, whether the employee works in a solitary or group work setting, whether the employee has close contact with other employees or members of the public (especially medically vulnerable individuals), the type of workplace, the nature of the employee's duties, the number of employees who are fully vaccinated, how many individuals enter the workplace, and the number of employees who are seeking a similar accommodation. *Id.* Reputational effects on an employer also can impose an undue hardship. *See Cloutier*, 390 F.3d at 136 (finding undue hardship in Title VII case where accommodation would "adversely affect the employer's public image").[7]

By definition, Ms. Devitt's position was never intended to be performed on a remote basis. As a Cell Therapy Manufacturing Manager, Ms. Devitt's role required constant interaction with co-workers, specifically, she was required to provide *onsite* operational oversight for Sanofi US's therapy manufacturing site in Framingham by managing and training a team of manufacturing operators who report to her, and overseeing the production schedule and daily tasks of her team members. Allowing Ms. Devitt to perform her job in-person while unvaccinated would impose an undue hardship on Sanofi US by requiring the Company to essentially experiment with the safety of its employees, business partners and customers. *See EEOC v. Oak-Rite Mfg. Corp.*, No. 99-cv-1962-DFH, 2001 WL 1168156, at *10 (S.D. Ind. Aug. 27, 2001) (Undue hardship exists if the proposed accommodation would "either cause or increase safety risks or the risk of legal liability for the employer.").

Moreover, alternatives to vaccines, such as masking, periodic testing, and social distancing, would impose an undue hardship. For example, social distancing from other colleagues, staff, or visitors is not always practicable. Testing is inadequate because, among other reasons, it misses infections on days not tested and conveys a false sense of security to employees. *See Together Employees v. Mass Gen. Brigham Inc.*, No. 21-cv-11686-FDS, 2021 WL 5234394, at *20 (D. Mass. Nov. 10, 2021) (rejecting preliminary relief for employees who were denied a religious exemption from the hospital's COVID-19 vaccination policy); *aff'd*, No. 21-1909 (1st Cir. Apr. 27, 2022). And, allowing employees to wear masks in lieu of undergoing vaccination would cause more than a *de minimis* negative effect on Sanofi US's employee workplace safety

[6] The EEOC's Technical Assistance Questions and Answers defines "undue hardship" under Title VII as an accommodation that would impose "more than a minimal cost or burden on the employer." *See* COVID-19 Vaccinations: EEO Overview, at § K.12 ("This is an easier standard for employers to meet than the ADA's undue hardship standard.").

[7] As a healthcare company and vaccine manufacturer, Sanofi is committed to promoting and supporting public health initiatives by requiring its employees to become vaccinated for COVID-19.

efforts. *See Robinson v. Children's Hosp. Boston*, No. CV 14-10263-DJC, 2016 WL 1337255, at *10 (D. Mass. Apr. 5, 2016).

Furthermore, any attempt to argue that Sanofi US cannot establish an undue burden because it had already granted other exemptions to its COVID-19 Vaccination Policy misses the mark. *See Aukamp-Corcoran, v. Lancaster Gen. Hosp.*, Civ. Action No. 19-5734, 2022 WL 507479, at *7 (E.D. Pa. Feb. 17, 2022) (finding defendant hospital had demonstrated undue hardship and stating that allowing plaintiff nurse's religious request for exemption from mandatory influenza vaccine, "even though 24 such [religious] requests had already been granted, 'could have put the health of vulnerable patients at risk,' with the potential for increased hospitalization and death as a result"). The Court further noted:

> Any exemption, for whatever reason granted, weakens the Defendant's ability to protect patients from influenza, and Plaintiff presents no evidence to the contrary. Clearly, some employees should not undergo vaccination due to medical complications and must be exempt from the vaccine requirement. However, contrary to Plaintiff's argument, these necessary medical exemptions make it even more important for Defendant to limit the number of additional exemptions to only those individuals who demonstrate an actual established right to a religious exemption. If exemptions are extended to employees who have not demonstrated a legal right to exemption, that could weaken immunity amongst Defendant's employees as a group, which in turn can lead to the spread of influenza at Defendant's facilities.

*See id.* The Court discredited as "unpersuasive" the plaintiff's argument that the employer would not be harmed by granting one additional exemption. *See id.* at *8. The Court further concluded that allowing the plaintiff to wear a mask in lieu of undergoing vaccination would cause more than a *de minimis* negative effect on patient and workplace safety efforts. *See id.* (citing *Robinson*, 2016 WL 1337255, at *10 (granting summary judgment to employer who refused to permit employee involved in direct patient care to wear a mask in lieu of undergoing influenza vaccination)).

Similarly, Ms. Devitt's requested accommodation would undermine Sanofi US's health and safety efforts with respect to minimizing the transmission of COVID-19, and would be inconsistent with its mission as a healthcare and vaccines company, resulting in an undue hardship.

As such, Ms. Devitt's religious discrimination claim fails and should be dismissed.

## II. Ms. Devitt Cannot Show Pretext.

Even if Ms. Devitt could establish a *prima facie* case of religious discrimination (and she cannot), her claims still fail because she cannot show that Sanofi US's reason for terminating her employment—her failure to abide by a legitimate Company policy—is pretextual, and that intentional discrimination is the real reason.

In order to demonstrate pretext, Ms. Devitt must provide evidence discrediting Sanofi US's reason for firing her and show it is "unworthy of credence" and intentional discrimination was the real reason. *See Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007). The question is not whether Ms. Devitt disagrees with Sanofi US's reason, it is whether she can show the reason

relied upon is false, *i.e.*, that Sanofi US is lying about its stated reason and that intentional discrimination was the real reason. *See Desmond v. Mukasey*, 530 F.3d 944, 964 (D.C. Cir. 2008) ("[I]t will not do for the plaintiff to show that the employer's stated reason was false if the employer believed it in good faith; the plaintiff must establish a basis to conclude that the employer has lied about the reason or, more directly, that the reason was discriminatory."). Ms. Devitt has not made that showing here. Moreover, the fact that Sanofi US has provided religious exemptions from its COVID-19 Vaccine Policy to other employees would belie such an argument.

Given the compelling undisputed evidence here, the Commission need go no further in order to dismiss this Charge.

**ADDITIONAL DEFENSES ASSERTED BY SANOFI US**

Pursuant to 804 C.M.R. § 1.10(8)(d), Sanofi US asserts the following additional defenses in response to the allegations contained in the Charge:

1. The Charge fails to state a claim upon which relief may be granted.

2. Ms. Devitt's claims are barred, in whole or in part, by the applicable statute of limitations.

3. Ms. Devitt's claims are barred to the extent that she fails to set forth a *prima facie* case of failure to accommodate on the basis of her religion.

4. Ms. Devitt's claims are not actionable because the practices challenged in the Charge are justified by legitimate, non-discriminatory, and non-pretextual business reasons.

5. Sanofi US neither engaged in the purported discrimination, nor aided and abetted it, nor encouraged, condoned, acquiesced or approved of any alleged discrimination of Ms. Devitt.

6. Without conceding that Ms. Devitt has suffered any damages as a result of any purportedly wrongful act by Sanofi US, any damages sustained by Ms. Devitt were not proximately caused by Sanofi US.

7. Without conceding that Ms. Devitt has suffered any damages as a result of any purportedly wrongful act by Sanofi US, Ms. Devitt has failed to mitigate her damages.

8. Sanofi US has complied with all laws and regulations and otherwise satisfied its statutory obligations toward Ms. Devitt under all relevant federal, state and local laws.

**RESERVATION OF RIGHTS**

This position statement is based on Sanofi US's investigation to date and is not intended as a representation of all of the arguments or defenses that are or may be available. Sanofi US

reserves the right to raise additional defenses that may become apparent during the course of the investigation or discovery.

**CONCLUSION**

As demonstrated above, Ms. Devitt's claims are without merit. Accordingly, the Company respectfully requests the Commission dismiss the Charge in its entirety.

Please note that, in this position statement, the Company has sought comprehensively to address the allegations contained in the Charge. However, to the extent the Company's position statement does not specifically respond to any particular allegation in the Charge, the Company hereby expressly denies such allegation.

Please contact me if you have any questions, require additional information, or if Ms. Devitt raises any new allegations or presents additional evidence to which the Company has not had the opportunity to respond.

Very truly yours,

SEYFARTH SHAW LLP

Jennifer B. McGovern

Jennifer B. McGovern

JBM:dnl
Attachments

# EXHIBIT A

# EEO, Harassment-Free Work Environment, and Mutual Respect Policy

Published 5/14/2021

## 1.0 POLICY

The Company's goal is to provide equal employment opportunity to employees and applicants in all phases of our operation and practices. In addition, employees are entitled to conduct their work in an environment that is free from unlawful harassment. Further, and in accordance with Sanofi's Code of Ethics, we are committed to maintaining an environment where everyone treats each other respectfully. Conduct prohibited by this policy is unacceptable in the workplace and in any work-related setting outside the workplace, such as during business trips, business meetings and business-related social events.

The purpose and effect of this Policy is to promote mutual respect and to prohibit harassment, discrimination, disrespectful behavior, bullying, and retaliation whether engaged in by fellow employees, by a supervisor or manager or by someone not directly connected to the Company (e.g., an outside vendor, consultant or client).

## 2.0 SCOPE

The Policy applies to all employees, applicants, contractors and temporary workers of all Sanofi companies in the US. Together, all participating Sanofi affiliates in the US are referred to as the "Company".

## 3.0 GUIDELINES

### 3.1 Equal Employment Opportunity

The Company is an equal opportunity employer and fully complies with all applicable federal, state and local equal employment opportunity laws. Our commitment to equal employment opportunity goes beyond merely meeting legal mandates;
equitable treatment and equality of opportunity are part of our shared value of Respect, and they should underlie everything we do.

The Company is committed to providing equal employment opportunities to all applicants for employment and to all employees on the basis of individual merit and personal qualifications and without regard to race; color; creed; religion; national origin; age; ancestry; nationality; marital, domestic partnership or civil union status; sex, gender, gender identity or expression; affectional or sexual orientation; disability; veteran or military status or liability for military service; domestic violence victim status; atypical cellular or blood trait; genetic information (including the refusal to submit to genetic testing) or any other characteristic protected by law. This Policy applies to all employees and job applicants in connection with all aspects of employment, including but not limited to, recruiting, hiring, placement, advancement, training, benefits, compensation, discipline and termination.

This commitment also extends to providing reasonable accommodations to enable qualified individuals with disabilities to perform the essential functions of their jobs. The Company will make a reasonable accommodation to known physical or mental limitations of a qualified applicant or employee with a disability so that they can perform the essential functions of their job, unless the accommodation would impose an undue hardship on its operation. Any employee who believes they may require a reasonable accommodation, based upon a physical or mental impairment, in order to perform the essential functions of their job should contact their manager or supervisor and their Human Resources Business Partner.

If an employee requests an accommodation, the Company will determine whether the individual has a "disability" as defined by the Americans with Disabilities Act ("ADA"), as amended, or any other state or federal disability law. If the employee has a disability, is otherwise qualified and requires a reasonable accommodation in order to perform the essential functions of their position, the Company will initiate the interactive process aimed at identifying potential reasonable accommodations. The employee's physician may need to be consulted as part of the interactive process.

The Company respects the religious beliefs and practices of all employees and will make, on request, a reasonable accommodation for such practices when a reasonable accommodation is available that does not create an undue hardship on the Company's business. A religious accommodation is any reasonable adjustment to the work environment that enables the requesting employee to engage in practices mandated by their sincerely held religious beliefs, including ethical or moral beliefs arising from such religious beliefs, in a manner that does not pose an undue hardship on the

Company. Religious accommodations include, but are not limited to, flexible scheduling, allowing for certain dress and grooming practices, and/or permitting prayer at work. The Company provides employees with paid time off to be used at their discretion and/or to exercise their sincerely held religious, and related ethical, or moral beliefs. While the law does not specifically define "sincerely held religious beliefs," they generally must involve fundamental ideas about subjects such as "life, purpose and death."

Employees may request a religious accommodation by contacting their manager, supervisor or their Human Resources Business Partner. The request will be evaluated based upon whether a work conflict exists due to circumstances mandated by a sincerely held religious belief or practice and whether an accommodation is available that is reasonable and that would not create an undue hardship on the Company's business.

The Company is dedicated to ensuring that all employment-related decisions are in accordance with these principles of equal employment opportunity. Equal employment opportunity is not only a legal principle; it is a cultural and business imperative as well. No employee of the Company ever should feel obligated to tolerate discrimination in any form.

**3.2 Harassment-Free Work Environment**

The Company is committed to providing a work environment that is free from harassment and intimidation on the basis of race; color; creed; religion; national origin; age; ancestry; nationality; marital, domestic partnership or civil union status; sex, gender, gender identity or expression; affectional or sexual orientation; disability; veteran or military status or liability for military service; domestic violence victim status; atypical cellular or blood trait; genetic information (including the refusal to submit to genetic testing) or any other characteristic protected by law. Employees must not act on the basis of any of these factors in ways that could be construed as harassment or that could create a hostile, offensive, intimidating, or demeaning environment for other employees, applicants for employment, or others with whom we interact in connection with our business.

**3.2.1 Types of Unlawful Harassment**

1. Sexual harassment is defined as sexual advances, requests for sexual favors, and verbal or physical conduct of a sexual nature when:

(a) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions such as favorable reviews, salary increases, promotions, increased benefits or continued employment regardless of whether the harasser actually carries through with the threats to alter the subordinate's terms or conditions of employment; or

(b) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, offensive, hostile, humiliating or sexually offensive work environment.

2. Harassment on the basis of any other protected characteristic is also strictly prohibited. Under this Policy, harassment is verbal or physical conduct that denigrates or shows hostility or aversion toward an individual because of the above enumerated characteristics protected by law, and that: (i) has the purpose or effect of creating an intimidating, hostile or offensive work environment; (ii) has the purpose or effect of unreasonably interfering with an individual's work performance; or (iii) otherwise adversely affects an individual's employment opportunities.

While it is impossible to provide a comprehensive list, harassment includes, for example, using racial or religious slurs, or telling racial or religious jokes, as well as abusive, demeaning, sarcastic or derogatory comments made about age, religion, gender, pregnancy, ethnicity, disability or other factors protected by law. Sexual harassment may include, for example, displaying sexually suggestive material in the workplace, unwelcome flirting or advances, requests for sexual favors, or using offensive words or gestures of a sexual nature. In taking steps to provide a harassment- free work environment, our focus is on the effect the individual's action has on the work environment, not the individual's intent. Harassment can also include microaggressions. Microaggressions can be intentional or unintentional and may even be perceived by the deliverer to be well-meaning. Microaggressions communicate hostile, derogatory or negative messages or assumptions, based upon a factor that is protected by law.

3. Activities during work hours or during an employee's personal time that constitutes hate speech. Generally, hate speech is any form of expression through which the speaker intends to vilify, humiliate, or incite hatred against a group or a class of persons based on a protected characteristic. Hate speech can be demonstrated through behaviors such as social media posts, participating in marches or protests, wearing clothing or other attire, or displaying items that are visible during work activities.

Hate speech activities or other improper conduct during an employee's personal time may subject the employee to disciplinary action, up to and including termination, if there is a nexus between the activities/conduct and the Company. For example, if it has the potential to negatively impact colleagues, patients, prescribers or the Company's reputation.

For the avoidance of doubt, this Policy does not preclude employees from engaging in discussions about conditions of employment. However, we hope any such discussions are conducted in a respectful manner.

## 4.0 MUTUAL RESPECT

As set forth in the Sanofi Code of Ethics, the Company is committed to maintaining an environment where everyone treats each other respectfully. This commitment includes the physical workspace, virtual workspaces (such as Zoom, Microsoft Teams and Skype, for example), online and through electronic communications such as Yammer and instant messaging. Respectful behavior includes never:

- Making unkind remarks about family members, belittling someone's appearance, making personal insults, using obscenities, or engaging in other similar conduct;
- Threatening the health or safety of colleagues;
- Disparaging patients or prescribers; or

- Posting, accessing or engaging with any material that is inappropriate or illegal. Examples include social media posts, links, photos, GIFs and emojis that are insulting, threatening, discriminatory, bullying, embarrassing, of a sexual nature, obscene, defamatory, profane or fraudulent.

**4.1 Workplace Bullying**

Workplace bullying is defined as repeated mistreatment towards one or more people by one or more transgressors. It is demeaning or abusive conduct that is threatening, humiliating or intimidating and negatively impacts the work environment or individuals and interferes with one or more person's ability to get their work done.

Such behavior violates the Sanofi Code of Ethics, which clearly states that all employees will be treated with dignity and respect.

While not an exhaustive list, examples of Workplace Bullying, physical, verbal or virtual, can include:

- Name-calling or use of nicknames that is hurtful, insulting or humiliating,
- Insulting a person's capabilities or reputation, or other personal attacks,
- Abusive, offensive, intimidating or threatening verbal or nonverbal remarks, gestures or actions,
- Purposeful interference with a person's work area or property,
- Socially or physically excluding or disregarding a person in work-related activities,
- Ignoring or interrupting a colleague,
- Public humiliation in any form in front of others,
- Public reprimands in front of others,
- Falsely blaming others.

**5.0 COMPLAINT PROCEDURE**

Any employee or applicant for employment who believes they have witnessed or experienced, or who otherwise learns of, actions that may violate this Policy, should immediately report the matter to their manager or second level manager or Human Resources Business Partner, or any of the resources listed in the "Reporting Compliance Concerns" section of this policy. Employees can also refer to the

applicable Issue Resolution Policy which is accessed via the intranet. Individuals are not required to file their complaints with their immediate supervisor first before bringing the matter to the attention of one of the other designated representatives listed immediately above.

The employee may also contact Stuart Persky, EEO & HR Compliance Director and EEO Coordinator at 1-908-981-6872 to register complaints, concerns, or ask questions, or may do so anonymously through the compliance helpline:

North America Confidential Compliance Helpline: 1-800-648-1297

The Company will promptly investigate all allegations of discrimination or harassment as confidentially as possible, consistent with performing a thorough investigation, and will take prompt and appropriate corrective action when warranted. Any employee who is determined, after such an investigation, to have violated this Policy will be subject to appropriate disciplinary action, up to and including termination of employment.

Aside from the internal processes listed above, employees may also choose to pursue legal remedies with governmental entities. While a private attorney is not required to file a complaint with a governmental agency, you may seek the legal advice of an attorney.

IMPORTANT NOTICE TO ALL EMPLOYEES: Employees who have experienced conduct they believe is contrary to this Policy have a legal obligation to make use of this complaint procedure first. An employee’s failure to meet this obligation could affect their right to pursue later legal action. Also, please note that federal, state and local discrimination laws establish specific time limits for initiating a legal proceeding pursuant to those laws.

**5.1 Non-Retaliation**

Retaliation in any form against an employee, applicant or contractor who raises a concern under this Policy or who provides information in an investigation of a concern under this Policy is strictly prohibited. Appropriate disciplinary action, up to and including termination of employment, will be taken against anyone who the Company determines has retaliated or has attempted to retaliate against an employee, contractor or applicant who has raised a concern under this Policy or who has

participated in an investigation of a concern under this Policy.

An employee who feels that they may have been retaliated against for reporting a complaint or cooperating with an investigation should notify the Company in accordance with the complaint procedure outlined above. The Company expects that employees will report such matters in a timely manner. Reporting a concern under this Policy will not hurt your job, as long as the report is made in good faith. Acting in good faith entails honestly reporting your understanding of the facts for the purpose of ensuring that the Company's Policy against harassment is honored in the workplace.

If it turns out that the employee's information is incorrect, or if the employee's objections are determined to be unwarranted, that does not necessarily mean the complaint was made in bad faith.

## 6.0 RESPONSIBILITIES

It is every employee’s responsibility to adhere to and comply with this Policy. An employee should not assume that the Company is aware of a problem. It is every employee’s responsibility to bring their concerns to the Company’s attention in a timely manner so that the problem can be investigated and resolved. Additionally, should an employee witness an activity in violation of this Policy, they should report such to their immediate manager, their second level manager, their HR Business Partner or any resources listed in this Policy.

Should a manager witness or become aware of an activity in violation of this Policy, they are required to report it to their HR Business Partner or any resource listed in this Policy, as soon as practicable. Failure to report violations promptly can delay the timely investigation and resolution of the matter and may result in disciplinary action for the manager.

Furthermore, it is every employee’s responsibility to cooperate with the investigation of any complaints or concerns brought up under this Policy, including maintaining the confidentiality of the investigation.

### 6.1 Resources for Reporting Concerns

- Your supervisor, manager, second level manager, or department head
- Human Resources Business Partner

- Any member of Human Resources
- Member of Employee Relations team or Employee Relations mailbox at EmployeeRelations@sanofi.com
- Legal Department
- Exercise rights under the federal / state False Claims Act
- Member of your Company's Compliance Committee
- Sanofi North America Compliance Officer
- Confidentially through a compliance helpline
    - North America Confidential Compliance Helpline: 1-800-648-1297 or www.sanofi.ethicspoint.com
    - Available 24 hours a day / 7 days a week
    - Callers can remain anonymous

Neither this Policy nor any Company policy or document constitutes a contract guaranteeing continued employment or any terms and conditions thereof. Employment remains at-will. Accordingly, the Company and its employees retain the right to terminate their employment relationship at any time or without cause or prior notice.

The Company reserves the right to change or terminate this Policy at any time without prior notice.

## Related Documents

# EXHIBIT B

# US CRISIS COMMITTEE

Dear Colleagues,

Cases of COVID-19 are on a steady decline across the country thanks in large part to increasing vaccination rates. It's clear that the most effective way to stop the spread of COVID-19 is through vaccination and we are fortunate in the U.S. to have broad access to safe and effective vaccines. As a healthcare company and a vaccine manufacturer, we have an important responsibility to protect individual and public health, including for our employees, our families and the communities in which we work. We also have a responsibility to ourselves and our patients to ensure our medicines, vaccines and consumer healthcare products get to the patients and customers who need them.

As a next step in our collective efforts, all US-based employees ***will be required to be fully vaccinated*** against COVID-19 as a condition of continued employment. At this time, this requirement applies to all employees, including our critical workforce, regardless of role or function.

The vaccination deadline for employees at all sites is **January 4, 2022** with the exception of employees working in Chattanooga, Ridgefield, and Swiftwater. Due to business continuity and our obligation to meet patient needs, the deadline for vaccination for employees at Chattanooga, Ridgefield and Swiftwater is **March 31, 2022**. Between January 4, 2022 and March 31, 2022, any employee at the Chattanooga, Ridgefield or Swiftwater site that has not submitted proof of vaccination will be required to undergo weekly COVID-19 testing. More information about this testing requirement will be shared at a later date.

While we acknowledge there is a lot of activity related to Federal and State vaccination mandates and challenges to these mandates, we believe full employee vaccination is the right course of action for a healthcare company. As such, regardless of the outcomes of these legal decisions we will stay the course with our requirements assuming they continue to comply with all applicable laws.

***Vaccination Validation and Timing***:
All employees **must submit proof** of having received the full vaccine dosage (two doses of the Moderna or Pfizer vaccine, or the single J&J dose) by ***12:00 pm on January 4th***. For employees in Chattanooga, Ridgefield, and Swiftwater the deadline is ***12:00 pm on March 31st***.

The last day of employment for employees who do not obtain an exception or the vaccine by January 4th will be January 5th. The last day of employment for employees in Chattanooga, Ridgefield and Swiftwater who do not obtain an exception or the vaccine by March 31st will be April 1st. This is not a severance eligible event.

To comply with this deadline, please **click here** to upload your vaccination information (device must be connected to Sanofi VPN). If you've already provided your proof of vaccination to Occupational Health and it has been validated, no further action is needed from you. If you have not yet been vaccinated, due to the recommended time interval between the first and second doses of the

Moderna vaccine (four weeks) and Pfizer vaccine (three weeks), ***we recommend you schedule your first dose as soon as possible***.

***Religious or Medical Accommodations***:
Sanofi US recognizes that some employees may be eligible for accommodations based on limited medical or religious grounds. Any employee outside of Chattanooga, Ridgefield and Swiftwater who wishes to request an accommodation must initiate the process by contacting ***EmployeeRelations@sanofi.com* by 5:00 pm ET on November 17th**. From the date of initiation with Employee Relations, employees will be informed of the deadline to submit the required documentation. Sanofi US expects to communicate medical and religious accommodation decisions **by 5:00 pm ET on *December 20***.

Employees in Chattanooga, Ridgefield and Swiftwater who wish to request an accommodation **are not permitted to initiate the accommodation request process at this time** so that requests for all other sites with the January 4th deadline may be reviewed by the deadline. Employees at these sites will be informed at a later date of the deadlines and process to submit accommodation requests.

This requirement does not change the current site vaccination rules until January 4 – anyone entering a Sanofi US site must be fully vaccinated except for our critical workers at IA and R&D sites.

Thank you for your compliance with this important requirement. Your personal health and safety and that of our patients and our customers continue to be our top priority.

Best,
Carole Huntsman on behalf of the US Crisis Committee

If you have questions, please click **here** to access the FAQ or visit the Return to the Workplace Buzz page.

SANOFI

**Sanofi US Covid-19 Vaccination Policy**

Sanofi US[1] is committed to providing and maintaining a safe work environment and has adopted this Covid-19 Vaccination Policy ("Policy") requiring that employees receive a Covid-19 vaccine as a condition of continued employment (or obtain an approved exemption as an accommodation). Regardless of vaccination status, employees and others who spend time in a Sanofi US site should not enter the site if they are experiencing any Covid-19 symptoms. While all US-based employees are subject to this Policy, the deadline for compliance may differ based on an employee's location, role and duties, as well as Sanofi US's business need to continue to research, develop, produce and distribute our medicines, vaccines and consumer healthcare products.[2]

This Policy has been adopted in response to the Covid-19 pandemic. It is intended to safeguard the health and wellbeing of our employees, their families, and others who spend time in the office or who meet in-person with employees, health care providers, patients, suppliers, vendors or customers. It is consistent with guidance provided by the Centers for Disease Control and Prevention (CDC) and other public health authorities, as well as our responsibility as a healthcare company. This Policy is intended to comply with all applicable laws, provided, however, that if this Policy conflicts with applicable law in any way, applicable law shall govern and supersede the conflicting portion of this Policy.

**Policy Requirements**

Employees will be provided advance notice that they must establish by a certain date that they have received the final dose of an approved Covid-19 vaccine (or, alternatively, have obtained an approved exemption as an accommodation). The process for seeking an approved exemption is explained generally below, and more details will be provided in communications and FAQs, all of which will be posted here. The currently approved vaccines under this policy are those produce by: Pfizer/BioNTech, Moderna, and Johnson & Johnson/Janssen.[3] Communications that announce the application of this Policy to certain roles and sites will identify the date by which such employees must submit proof that they have received the final dose[4] of an approved Covid-19 vaccine. **As a reminder, the Moderna and Pfizer Covid-19 vaccines have recommended time intervals between the first and second doses (28 days for Moderna, 21 days for Pfizer). It is employees' responsibility to account for these intervals when choosing which vaccine to receive in order to meet the deadlines identified for compliance with this Policy.**

---

[1] Sanofi US refers to all Sanofi entities in the United States.

[2] All contractors, contingent workers and other non-employees assigned to and working at a Sanofi US site need to be fully vaccinated as a condition of entry. Deadlines to become fully vaccinated will be communicated separately. **The Accommodation Process identified in this Policy applies only to Sanofi US employees.** Any non-employee should communicate with their employer, not Sanofi US, if they have concerns regarding vaccination.

[3] On an exception-basis, Sanofi US may accept another Covid-19 vaccine if it has been approved by the World Health Organization.

[4] The definition of "final dose" is based on the CDC's definition of "fully vaccinated." Should the CDC's definition change (*e.g.*, should it require booster shots for individuals to be considered "fully vaccinated"), Sanofi US may change or modify this requirement. At this time, booster shots are not required to meet the vaccination requirement under this Policy.

Employees who have not submitted proof of vaccination and are subject to a vaccination deadline that is after January 4, 2022 will be subject to regular Covid-19 testing beginning on January 4, 2022 and continuing until they submit proof of vaccination in compliance with any applicable deadline.

Employees who do not fulfill the above requirements by the identified applicable deadline will be subject to separation from Sanofi US. Such separations are not severance-eligible events under Sanofi US's separation plans.

To submit proof of compliance with the vaccine requirement, employees must submit their vaccination card from an authorized healthcare provider to NA Occupational Health ("NAOH") by utilizing this portal. This document must include the date(s) of vaccination, the vaccine administered, and the authorized healthcare provider's identity. This document should not include any medical or genetic information concerning the employee or any other individual. NAOH will review vaccination cards for completeness and accuracy. NAOH will follow-up with employees should it have questions regarding the authenticity or accuracy of any proof submitted. As a reminder, submitting falsified documentation under this Policy will result in disciplinary action, up to and including termination of employment.

Sanofi US will cover the cost of any required vaccination or reimburse an employee for any cost reasonably incurred in obtaining the vaccination from their own healthcare provider, such as co-payment. If necessary, employees will be provided paid time off to get vaccinated in accordance with applicable law.

**Requests for Accommodation**

Consistent with Sanofi US's obligations under federal and state law, as well as our EEO, Harassment-Free Work Environment, and Mutual Respect Policy, Sanofi US recognizes two categories of potential accommodations that may provide the basis for an approved exemption from this Policy.

1. The first involves employees who cannot get vaccinated due to a disability (as defined by applicable law), pregnancy, or other documented medical condition that contraindicates the vaccination (temporarily or permanently), or any other trait, characteristic, or class for which applicable law requires Sanofi US to provide reasonable workplace accommodations. All medical information received by Sanofi US in connection with a request for accommodation will be treated as confidential.

2. The second involves employees who object to being vaccinated on the basis of sincerely held religious beliefs, observances and practices.

The process to request an accommodation will be outlined in separate Sanofi US communications, and will involve reaching out to Sanofi US's Employee Relations (ER) team. Employees who reach out to the ER team will be provided additional information regarding the specific process and deadlines for requesting accommodations. Employees must comply with any deadlines to initiate the accommodation request process with the ER team. **Absent exceptional circumstances, late-submitted requests will not be reviewed and will be denied.**

Under either set of circumstances, Sanofi US will engage in an interactive process with the employee to determine the substance of the request, and if applicable, whether a reasonable accommodation can be provided. The exact nature of the dialogue will vary. In some instances, both the reason for the exemption/accommodation request and the type of exemption/accommodation required may be obvious, and there may be limited need to engage in a detailed discussion. In other situations, Sanofi US

or its designees (including external vendors retained by Sanofi US) may need to ask questions and/or seek additional documentation concerning the nature of the request and to verify the validity of the exemption/accommodation request, the reasonableness of the requested accommodation, whether the requested accommodation may pose an undue hardship on Sanofi US or pose a direct threat to the employee or others in the workplace, and whether there are other alternative reasonable accommodations available. While Sanofi US will consider any accommodation request that is properly submitted, it reserves the right to offer its own accommodation to the extent permitted by applicable law.

As with any communication with Sanofi US, employees must provide accurate and truthful information and documentation at all times.

Once Sanofi US has made a determination as to the employee's request for an accommodation, the determination will be communicated to the employee as soon as is feasible under this Policy. In some instances, Sanofi US may offer an accommodation that would constitute an exception to the vaccine requirement; in other situations, the accommodation may be an extension of time to become compliant with the vaccine requirement. If an accommodation is provided, the arrangement may be revisited, modified or withdrawn as business circumstances require as determined by Sanofi US.

**Reporting a Positive Covid-19 Test**

Regardless of vaccination status, any Sanofi US employee (or non-employee assigned to and working at a Sanofi US site) must immediately report to NAOH if they receive a positive Covid-19 test or are diagnosed with Covid-19 by a licensed healthcare provider. Any such individual will be immediately removed from the workplace. NAOH will follow any state or local reporting requirements and will contact the individual (or their employer) to request additional information in order to conduct contact tracing (in addition to any contact tracing that may be performed by a state or local Department of Health). To the extent possible, efforts will be maintained to protect the confidentiality of the reporting individual. NAOH will communicate with the individual (or the individual's employer) the specific requirements that must be met in order for the individual to return to the workplace.

**Anti-Retaliation**

Sanofi US prohibits retaliation, which includes threatening or taking adverse action against an individual, for, among other things, requesting an accommodation under this policy, or for exercising rights protected under the Federal Occupational Safety and Health Act (OSHA), including without limitation for reporting any work-related injuries or illnesses. Sanofi US will make every reasonable effort to stop retaliation immediately, to investigate alleged acts of retaliation in a timely manner, to provide remedies to victims of retaliation, and to discipline the perpetrators of retaliation as deemed appropriate in Sanofi US's sole discretion.

More information concerning Covid-19 vaccine efficacy, safety and the benefits of being vaccinated can be found here.

# EXHIBIT C

**Role: Suite Manager, Cell Therapy Manufacturing**
**Grade: L3-1**
**Org: GMU CMC**
**Work Loc: Framingham, MA**
**Manager: Robert Milczarek**
**HRBP: Lisa Leger**

### Position Overview/Department Description

Sanofi's Genomic Medicine Unit (GMU) CMC group is dedicated to the establishment of best in class manufacturing platforms to support development of life-changing advanced cell and gene therapy products, including recombinant AAV vectors, lentiviral vectors, and cell therapy products.

Sanofi is looking for a cell therapy leader with GMP manufacturing expertise to serve as Clinical Cell Therapy Manufacturing manager. This is an exciting opportunity to join Sanofi's GMU and be part of building the company's cell therapy manufacturing strategy. The ideal candidate will have expertise in cell therapy manufacturing with a demonstrated track record of successful development-to-clinical product transitions. Creativity, scientific thoroughness, entrepreneurial mindset, and ability to function in a complex environment are essential.

### Key Responsibilities

The primary accountability of this role is to enable the manufacturing of cell therapy products for clinical supply, as a cell therapy technical expert for cGMP manufacturing, through providing hands-on technical leadership and operational oversight for a cell therapy manufacturing suite in Framingham, MA. We are looking for a candidate with excellent GMP, scientific, technical, communication, and leadership skills.

Specifically:

**Key Responsibilities**

- The individual will manage and execute Change Controls, LIRs, OTN and site deviations.
- The individual works cross-functionally and in collaboration with internal support departments and Manufacturing suite to develop or update internal policies, procedures or steps, identifies and escalate risks, communicates changes and plan for execution.
- Own, manage, and monitor functional area project and tasks: Campaign support and readiness, MFG process specific change controls, CAPA's, Laboratory Investigation Reports (LIR), Validation activities.

**Key Requirements**

- Advanced technical knowledge of cell therapy manufacturing operations/ process
- Working knowledge and experience with Quality Systems including deviations and change controls
- Excellent communication skills both verbal and written.
- PMP, Lean Six Sigma Green or Black belt certification nice to have, but not required.

**Basic Qualifications**

- Bachelor’s degree in sciences or engineering discipline with a minimum of 10 years of industry experience or a Master’s degree with a minimum of 8 years of industry experience
- Experience with GMP regulations and cell therapy
- Experience in GMP documentation and compliance
- Ability to operate and thrive in a fast-paced, high-growth environment
- Strong skills in change management
- Excellent communication skills

**Preferred Qualifications**

- Experience in various Operational Excellence tools such as Root Cause Analysis, Failure Modes and Effects Analysis, Value Stream Mapping, Kaizen, Statistical Process Control, SMED etc. preferred.
- Direct experience in cell GMP manufacturing facilities with expertise in CAR-T, NK cell therapy
- Involvement in delivering a cell therapy-based product into clinical development

# EXHIBIT D

SANOFI

December 22nd, 2021

Corrine Devitt
82 Larned Rd
Oxford, Massachusetts 01540

Dear Corrine,

I am pleased to join Robert Milczarek in offering you a position with Sanofi US Services Inc. In addition to confirming our offer, this letter will detail certain terms and conditions of your employment and outline Sanofi US Services Inc.'s compensation programs and benefits plans.

**Assumption of Duties:** You will assume the position of Cell Therapy Manufacturing Manager. You will report to Robert Milczarek and your anticipated start date will be on February 7th, 2022.

**Base Salary:** Your annual base salary will be $145,000.00. This equates to approximately $5,576.92 (before the applicable taxes and deductions) paid out on a bi-weekly basis (i.e., every two weeks)

**Other Compensation and Benefits:** In addition to your salary, your role is also eligible to receive an annual bonus subject to the terms and conditions of the company's Short-Term Incentive ("STI") program. The target amount of your annual STI bonus is 20%. STI bonus payments, if any, can and do vary annually based on the company and individual performance. You are eligible to earn a pro-rated annual STI bonus based on the length of time that you have been employed during the calendar year.

Sanofi US Services Inc. offers a generous benefits package including three (3) weeks paid vacation that increases up to six (6) weeks with tenure, a 401(k) plan with a generous matching company contribution, comprehensive medical, prescription drug, dental and vision insurance coverage, short- and long-term disability salary continuation and insurance coverages, and company-paid life insurance with an economic supplemental option.

All of Sanofi US Services Inc.'s employee programs and plans, including all compensation programs and benefits plans, are subject to change at any time, at the sole discretion of the company, and the program/plan provisions in effect from time to time will govern all awards and benefits provided.

**Hiring Bonus:** You are eligible for a one-time hiring bonus of $28,000.00 (subject to applicable taxes and deductions). This bonus is scheduled to be included in a pay cycle within your first 45 days of employment (if you continue to be employed by the company on this date of payment). This payment is not part of your annual compensation. Furthermore, you are obligated to repay 100% of this money if you resign or are terminated within 18-months of receiving the payment (except as noted below).

Note: If termination is under circumstances making you eligible for benefits under either the Sanofi US Performance Transition Pay Policy (PTPP) or an applicable separation plan, and you sign a general release in connection with receiving benefits under one of these plans, you will not be subject to this reimbursement obligation.

Our offer is further contingent upon your acknowledgement that you are not subject to any restrictive covenant including any nondisclosure/noncompetition/nonsolicitation agreements, or other obligations to any parties, which would limit your ability to perform the duties of this position.

Additionally, our offer is contingent upon you signing and completing any additional Company agreements which are applicable to your role, and your continued willingness to abide by their terms. Upon receipt of these documents, please review, sign and return prior to your start

SANOFI

date. All documents must be received prior to your first day of employment.

This offer is contingent upon receiving satisfactory references, background check, and your successful completion of the pre-employment drug screening. You will receive an email notification informing you of the process for completing the on-line Pre-employment Screening Questionnaire and Release Authorization, which will be used to complete part of the background check. Satisfactory results from the drug screening and background check must be received by Human Resources prior to your first day of employment.

As this position requires that you be fully-vaccinated against Covid-19, this offer is further contingent on you uploading proof that you are fully vaccinated against Covid-19 on your start date. Proof of vaccination can be submitted through our return to workplace portal which can only be accessed on your first day of work, Return to the Workplace (sharepoint.com). If you believe you may be eligible for a potential accommodation due to a disability or sincerely held religious belief, please reach out to employeerelations@sanofi.com within two days of receiving this offer.

We look forward to you joining Sanofi US Services Inc. and wish you a fulfilling career. Please acknowledge your acceptance of this conditional offer by signing this document and uploading all pages of that signed copy to our system. This offer is valid until December 28th, 2021. Additionally, please be sure to keep the original offer for your personal records.

If you have any questions concerning the terms of this offer, or if I can assist you in any way, please contact me at +1 262-923-2431.

Sincerely,

Ariel Glorioso
Talent Acquisition Specialist
Sanofi US Services Inc.

Ariel Glorioso (Dec 22, 2021 14:09 EST)

Ariel Glorioso

I understand and acknowledge that this offer does not guarantee me employment for any period of time and that the employment relationship between the company and me will be "at-will." This means that either the company or I may terminate the relationship at any time, without notice or cause. I also understand and acknowledge that the Company may change the terms and conditions of my employment at any time in its sole discretion.

Corrine Devitt (Dec 22, 2021 14:28 EST)

Corrine Devitt

# EXHIBIT E

**From:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Sent:** Wednesday, January 5, 2022 3:35 PM
**To:** Employee Relations /US
**Subject:** Re: Accommodation Request for potential New Hire
**Attachments:** DEVITT Covid-19 Vaccine Religious Accommodation Request Form FINAL.pdf

Hello,

Attached is my accommodation request. Can you kindly advise about how long it will be until I hear something?

Best regards,
Corrine

---

**From:** Employee Relations /US <EmployeeRelations@sanofi.com>
**Sent:** Tuesday, January 4, 2022 8:31 AM
**To:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Subject:** RE: Accommodation Request for potential New Hire

Hi Corrine,

Thank you for your email. It appears that you may be seeking an accommodation (exception) to the Covid-19 vaccination requirement based on a religious concern or objection. Attached is a Religious Accommodation Request Form to be completed. Please fill it out and submit it (by email to employeerelations@sanofi.com) no later than **three (3) business days from your receipt of this email by 5:00 pm EST**.

Please note the following:

- Follow all instructions on the form.
- You must submit this form to Employee Relations (employeerelations@sanofi.com) within **THREE (3) BUSINESS DAYS** of receipt **by 5:00pm EST. Absent exceptional, unforeseen circumstances, late-submitted requests will not be reviewed and will be denied.**
- You must use this form and your own words in order to submit a request. Your explanation should include enough detail that Sanofi US can discern the religious belief, observance or practice that is the basis of your request, that such beliefs/observances/practices are sincerely held and consistently guide and influence your life, and how these beliefs/observances/practices are in conflict with obtaining a Covid-19 vaccine. Writing "see attached" and only submitting other documents (e.g. statements or letters obtained from the internet or copied) will not be considered compliant and any requests submitted in such fashion will be subject to denial.

When you complete the form, save and rename to include your last name in the front of the current file name (LASTNAME Covid-19 Vaccine Religious Accommodation Request Form FINAL). Once your completed form is received you will be contacted by our external partner, Seyfarth Shaw, who is assisting Sanofi US in our accommodation process.

Please note this form is for your use only, do not forward to others, as each employee must reach out to Employee Relations individually to initiate the process.

Thank you

**From:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Sent:** Wednesday, December 22, 2021 3:13 PM
**To:** Employee Relations /US <EmployeeRelations@sanofi.com>
**Subject:** Re: Accommodation Request for potential New Hire

Hello,

Yes, apologies I didn't specify. I would be seeking a religious accommodation, please.

Thanks,
Corrine

**From:** Employee Relations /US <EmployeeRelations@sanofi.com>
**Sent:** Wednesday, December 22, 2021 3:12 PM
**To:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Subject:** RE: Accommodation Request for potential New Hire

Hi Corrine, can you please specify if you are seeking a religious or medical accommodation and we can send you the correct forms and instructions. Thank you

**From:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Sent:** Wednesday, December 22, 2021 2:26 PM
**To:** Employee Relations /US <EmployeeRelations@sanofi.com>
**Subject:** Accommodation Request for potential New Hire

Hello,

As part of my offer letter received today (22DEC21), I am reaching out to inquire on accommodation request, as it pertains to Covid-19 vaccination.

Please advise next steps.

Best regards,
Corrine Devitt

Sent from Mail [go.microsoft.com] for Windows

SANOFI

**RELIGIOUS ACCOMMODATION REQUEST – COVID-19 VACCINE EXEMPTION**

| | |
|---|---|
| Name: Corrine Devitt | Manager: Robert Milcarek |
| Position/Title: Manager / Cell Therapy | Email: corrine.devitt@hotmail.com |
| Phone Number: 508-574-5601 | Workday ID: N/A |
| Assigned Work Location: Framingham, MA | State of Residence: MA |

Completing this form will assist Sanofi US* in evaluating your request to be exempted from Sanofi US's requirement that you be vaccinated against COVID-19 based on a sincerely religious belief, observance or practice. Sanofi US may seek further information as part of its interactive process to determine whether a reasonable accommodation can be made without undue hardship. Although Sanofi US will consider any specific type of accommodation you propose, you may be offered an alternative accommodation to eliminate the conflict between your practice, observance or belief and Sanofi US's vaccination requirement. Additionally, Sanofi US may determine it is not able to provide any reasonable accommodation. Sanofi US's ability to provide a reasonable accommodation will take into account various considerations, including legal compliance, safety and health, security requirements, the potential negative impact on Sanofi US's operations, impact on other employees and/or health care providers and customers, as well as cost and limitations on Sanofi US's resources. Sanofi US's ability to provide a reasonable accommodation may change over time depending on changes to these various factors and other business considerations and Sanofi US therefore reserves the right to reconsider any granted accommodation as circumstances change.

**Please note the following:**

- **You must submit this form to Employee Relations (employee.relations@sanofi.com) within THREE (3) BUSINESS DAYS of receipt. Absent exceptional, unforeseen circumstances, late-submitted requests will not be reviewed and will be denied.**

- **You must use this form and your own words in order to submit a request. Your explanation should include enough detail that Sanofi US can discern the religious belief, observance or practice that is the basis of your request, and that such beliefs/observances/practices are sincerely held and consistently guide and influence your life. Writing "see attached" and only submitting other documents (e.g. statements or letters obtained from the internet or copied) will not be considered compliant and any requests submitted in such fashion will be subject to denial.**

| QUESTION | RESPONSE |
|---|---|
| 1) What is the religion for which you are seeking an accommodation? | Biblically based Christian |

SANOFI

| QUESTION | RESPONSE |
|---|---|
| 2) What is the specific sincerely held religious belief, observance or practice for which you are seeking accommodation? | I am a Biblically based Christian, my beliefs and faith are the foundation of my life. However I am a member of a minority part of Christianity that seeks wisom and guidance directly from scripture, and the Holy Spirit, rather than relying on a faith leader to do so for me. Theology can be a very complex issue, and when eternal salvation hangs in the balance, it is up to each of us as believers to study the Word for ourselves. I believe that we are created by God, to be a temple of the Holy Spirit, that the body is important to that connection. I believe that we are supposed to be obedient to God, put our absolute trust and faith in Him. |
| 3) Describe the conflict between the religious belief, observance or practice and Sanofi US's requirement to obtain a Covid-19 vaccine. In your own words provide as much specificity as possible, and identify all areas of conflict, including without limitation whether the conflict is with all vaccines, only Covid-19 vaccines, or only specific Covid-19 vaccines. | Explaining a lifetime of theological study in a paragraph would be impossible. To abbreviate as much as possible, I believe that God created man, and we were created in the image of God. Our bodies designed and created exactly as they were meant to be, to be the temple for the Holy Spirit. Scripture places a lot of importance on the maintainence and treatment of the body, with entire sections of The Torah being dedicaded to the physical upkeep. I believe that this is an anointed and yet fragile connection, Scripture even tells us that there will be a day when the Spirit of God will dwell with man no more. I also believe that the physical and spiritual are always connected. Physical sin hurts the Spirit, defiling the physical body defiles the spirit as well. As such, not only can I not take this vaccine, but I also do not smoke, I dont drink to excess, I am faithfully married. I also take caution when it comes to other pharmaceuticals as well. I frequently seek natural or holistic alternatives. For me to take the covid vaccines, would be a blasphemous sin, and it would be me placing trust in man, rather than God. For me, to take the covid vaccine would be to forfeit my connection with God, and therefore, forfeit my eternal salvation.<br>Relevant Scripture: Genesis 5:1-2 - 1 Corinthians 6:19 - Psalm 118-8 - Matthew 15-10-15 |

SANOFI

| QUESTION | RESPONSE |
|---|---|
| 4) Describe how you have adhered to observation of the religious belief, observance or practice in your life and how it impacts other areas of your life. | I do not drink excessively, I do not smoke, I have never tattooed my body, I am not sexually promiscuous. I am very cautious of any type of medication and/or treatments I utilize, frequently seeking out natural or holistic alternatives. I seek scripture and the Holy Spirit to guide me in all things. |
| 5) Describe the accommodation that you propose to eliminate the conflict between your religious belief, observance or practice and Sanofi US's requirement to obtain a Covid-19 vaccine as a condition of continued employment. Include any alternative accommodations that you believe will also eliminate the conflict. | I have managed to maintain a safe work enviroment throughout the entirety of the pandemic, and I am happy and eager to continue to do so for Sanofi. I am capable of self-symptom monitoring, masking, and should the need arise I am happy to test. |
| 6) Describe how you can continue to perform the essential functions of your position with each of the proposed accommodation(s). | In my position utilization of masks would not affect my work or my preformance at all. Self-Symptom monitoring happens throughout the day, and testing can be done easily, and quickly, before or after a shift each week. |

SANOFI

| QUESTION | RESPONSE |
|---|---|
| 7) If requested, what verification can you provide from a third person to support this request for an accommodation? | Yes |
| 8) Is there any other information that you believe will assist in Sanofi US's consideration of your request? | I hope that I have expressed what I believe in a way that is easily understandable. I have never before needed to explain or justify my beliefs, in order to obtain a position within my field. I love the work that I do, and while my beliefs are intimately private to me, they are a fundamental core of who I am, but I simply cannot forfeit my beliefs, my connection with God, or my eternal salvation. Thank you for your consideration. |

**I affirm that the Covid-19 vaccines are contrary to my sincerely held religious beliefs, observances or practices as described in this document, and that my objections to the Covid-19 vaccines are not made on grounds of social, political or economic preferences, or inconvenience.**

**I verify that the information I have submitted in this form is in my own words and complete and accurate to the best of my knowledge. I understand that any misrepresentation contained in this request may result in disciplinary action, up to and including termination of employment.**

**I also understand that my request may not be granted if it is not reasonable or if it creates an undue hardship for Sanofi US. I understand that any religious accommodation granted now may be reviewed periodically by Sanofi US to ensure it is reasonable and does not create an undue hardship at a later date. I understand that Sanofi US prohibits retaliation for requesting a religious accommodation, and that if I should have any concerns about retaliation, I will report them immediately to Human Resources.**

Signature: Corrine Devitt Date: 05JAN22

*Sanofi US refers to all Sanofi entities in the United States.

# EXHIBIT F

**From:** Employee Relations /US <EmployeeRelations@sanofi.com>
**Sent:** Wednesday, February 2, 2022 6:36 PM
**To:** Corrine Devitt
**Subject:** IMPORTANT UPDATE : Accommodation Request for potential New Hire
**Attachments:** Devitt Religious Accommodation Denial Letter.pdf

Hi Corrine,

Please see the attached letter outlining the conditions of your starting with Sanofi US on February 7, 2022.
Please confirm if you intend to meet the deadline outlined in the attached.

Thank you

---

**From:** Employee Relations /US
**Sent:** Wednesday, February 2, 2022 10:08 AM
**To:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Subject:** RE: Accommodation Request for potential New Hire

Hi Corrine,

After a careful review, Sanofi US is denying your accommodation request. Sanofi US has determined that providing you an exception to the Covid-19 vaccine requirement would constitute an undue hardship due to the nature and essential functions of your position, which, among other things, require you to be able to enter a Sanofi US site and/or participate in-person at Sanofi US external events and meetings, which is limited to only vaccinated individuals. Due to health and safety concerns, only vaccinated individuals, including employees, will be able to enter the Sanofi US site to which you are assigned, as well as participate in Sanofi US in-person meetings, whether held onsite or offsite. We will follow up with you with a more formal letter.

In the meantime we are working with your manager to determine alternatives which may include delaying your start date if you choose to get vaccinated.

We hope to be able to come back to you later today with the next step.

Thank you

---

**From:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Sent:** Monday, January 31, 2022 7:22 PM
**To:** Employee Relations /US <EmployeeRelations@sanofi.com>
**Subject:** Re: Accommodation Request for potential New Hire

Hello,

I am reaching out for an update on my request, please. I am slated to start a week from today and have received my new hire information and completed my I-9.

Best regards,
Corrine Devitt

---

**From:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Sent:** Wednesday, January 5, 2022 3:35 PM
**To:** Employee Relations /US <employeerelations@sanofi.com>
**Subject:** Re: Accommodation Request for potential New Hire

Hello,

Attached is my accommodation request. Can you kindly advise about how long it will be until I hear something?

Best regards,
Corrine

---

**From:** Employee Relations /US <EmployeeRelations@sanofi.com>
**Sent:** Tuesday, January 4, 2022 8:31 AM
**To:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Subject:** RE: Accommodation Request for potential New Hire

Hi Corrine,

Thank you for your email. It appears that you may be seeking an accommodation (exception) to the Covid-19 vaccination requirement based on a religious concern or objection. Attached is a Religious Accommodation Request Form to be completed. Please fill it out and submit it (by email to employeerelations@sanofi.com) no later than **three (3) business days from your receipt of this email by 5:00 pm EST**.

Please note the following:

- Follow all instructions on the form.
- You must submit this form to Employee Relations (employeerelations@sanofi.com) within **THREE (3) BUSINESS DAYS** of receipt **by 5:00pm EST. Absent exceptional, unforeseen circumstances, late-submitted requests will not be reviewed and will be denied.**
- You must use this form and your own words in order to submit a request. Your explanation should include enough detail that Sanofi US can discern the religious belief, observance or practice that is the basis of your request, that such beliefs/observances/practices are sincerely held and consistently guide and influence your life, and how these beliefs/observances/practices are in conflict with obtaining a Covid-19 vaccine. Writing "see attached" and only submitting other documents (e.g. statements or letters obtained from the internet or copied) will not be considered compliant and any requests submitted in such fashion will be subject to denial.

When you complete the form, save and rename to include your last name in the front of the current file name (LASTNAME Covid-19 Vaccine Religious Accommodation Request Form FINAL). Once your completed form is received you will be contacted by our external partner, Seyfarth Shaw, who is assisting Sanofi US in our accommodation process.

Please note this form is for your use only, do not forward to others, as each employee must reach out to Employee Relations individually to initiate the process.

Thank you

---

**From:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Sent:** Wednesday, December 22, 2021 3:13 PM
**To:** Employee Relations /US <EmployeeRelations@sanofi.com>
**Subject:** Re: Accommodation Request for potential New Hire

Hello,

Yes, apologies I didn't specify. I would be seeking a religious accommodation, please.

Thanks,
Corrine

---

**From:** Employee Relations /US <EmployeeRelations@sanofi.com>
**Sent:** Wednesday, December 22, 2021 3:12 PM
**To:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Subject:** RE: Accommodation Request for potential New Hire

Hi Corrine, can you please specify if you are seeking a religious or medical accommodation and we can send you the correct forms and instructions. Thank you

---

**From:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Sent:** Wednesday, December 22, 2021 2:26 PM
**To:** Employee Relations /US <EmployeeRelations@sanofi.com>
**Subject:** Accommodation Request for potential New Hire

Hello,

As part of my offer letter received today (22DEC21), I am reaching out to inquire on accommodation request, as it pertains to Covid-19 vaccination.

Please advise next steps.

Best regards,
Corrine Devitt

Sent from Mail [go.microsoft.com] for Windows

SANOFI

***Personal and Confidential***

February 2, 2022

*Via Email*

Corrine Devitt
Corrine.devitt@hotmail.com

Re: Request for Religious Accommodation from Covid-19 Vaccine Requirement

Dear Corrine,

As set forth in your offer letter, all Sanofi US employees must obtain a Covid-19 vaccine as a condition of employment.

Sanofi US is committed to engaging in an interactive dialogue and providing reasonable accommodations to employees who request an exception to the vaccine requirement based on a sincerely held religious belief, observance or practice protected pursuant to Title VII of the Civil Rights Act of 1964, provided that an accommodation would not relieve an employee of performing the essential functions of their role and would not constitute an undue hardship on Sanofi US.

After a careful review, Sanofi US is denying your request. Sanofi US has determined that providing you an exception to the Covid-19 vaccine requirement would constitute an undue hardship due to the nature and essential functions of your position, which, among other things, require you to be able to enter a Sanofi US site and/or participate in-person at Sanofi US external events and meetings, which is limited to only vaccinated individuals. Due to health and safety concerns, as of the applicable vaccination deadline only vaccinated individuals, including employees, will be able to enter the Sanofi US site to which you are assigned, as well as participate in Sanofi US in-person meetings, whether held onsite or offsite.

In order to allow you sufficient time to obtain an available Covid-19 vaccine of your choosing, and to comply with Sanofi US's policies, you will be permitted to commence employment on your scheduled start date (February 7th), but you will work remotely at first. You will be required to submit proof that you have obtained the first dose of either the Moderna or Pfizer vaccines, or the single-dose J&J vaccine, by **12:00 p.m. on February 14, 2022**. You will be permitted on-site if you obtain the first dose. However, failure to submit such proof will result in the termination of your employment. Such proof must be submitted to Occupational Health (NAOH@sanofi.com), along with proof that you are scheduled to receive your second dose (if you choose a two-dose vaccine). You will then be required to submit proof that you have obtained the final dose of such vaccine within one (1) business day of the scheduled dose. Failure to do so will result in the termination of your employment.

SANOFI

Please do not hesitate to reach out if you have any questions.

Sincerely,

The Sanofi US Employee Relations Team employeerelations@sanofi.com

# EXHIBIT G

**From:** Employee Relations /US <EmployeeRelations@sanofi.com>
**Sent:** Friday, February 4, 2022 4:00 PM
**To:** Corrine Devitt
**Subject:** RE: IMPORTANT UPDATE : Accommodation Request for potential New Hire- UPDATED

Hi Corrine,

As noted below your appeal request is noted and your accommodation request will be reviewed. Sanofi US reviewed your request as required pursuant to Title VII of the Civil Rights Act of 1964. The basis for the denial of your request is set forth in the letter, and it is due to the nature and requirements of your role. When a decision is reached on your appeal, it will be communicated to you.

Thank you

---

**From:** Employee Relations /US
**Sent:** Friday, February 4, 2022 1:08 PM
**To:** Corrine Devitt <noons2001@hotmail.com>
**Subject:** RE: IMPORTANT UPDATE : Accommodation Request for potential New Hire- UPDATED

Thank you Corrine, this is confirm receipt of your message and your appeal will be reviewed.

---

**From:** Corrine Devitt <noons2001@hotmail.com>
**Sent:** Friday, February 4, 2022 12:53 PM
**To:** Employee Relations /US <EmployeeRelations@sanofi.com>
**Subject:** IMPORTANT UPDATE : Accommodation Request for potential New Hire- UPDATED

Hello,

Apologies, the case # was incorrect and has been updated, please see updated version of appeal request below:

I am writing today to request an appeal to your denial of my request for religious accommodation for the Covid 19 vaccination. You stated in the appeal that you “Completed a full and thorough review based on the information you provided.” No information was given on why the exemptions were denied on an individual basis as required by the law. I have therefore, filed an EEOC complaint (Case # 523-2022-01696) and will be seeking all remedies under the law to include damages for pain and suffering for the stress this is causing should I be terminated for holding sincerely held religious beliefs. Please respond with specific information on why my individual request was denied.

If in fact the request was based on a failure to be able to accommodate the request please note that I intend to fight this lack of accommodation based on the following information.

1. According to the ADA, a direct threat is defined as an employee who poses a significant risk of substantial harm to the health or safety of that employee or others, which cannot be eliminated or reduced by a reasonable accommodation. Per the EEOC, the burden of proof will be on the employer to prove the employee is a direct threat. I have in fact been reducing this threat for nearly 24 months through the use of masking, socially distancing and taking daily self-symptom checks to limit the spread of covid and could continue to do so should my exemption be granted. Furthermore, the conclusion that I would be a "direct threat" in the workplace simply due to my unvaccinated status necessarily assumes that I would somehow increase the chances of transmitting COVID in the workplace simply because of my unvaccinated status. This ignores the actual function of the vaccines. The Covid vaccines are non-sterilizing vaccines. To be sterilizing, a vaccine must prevent infection. After receipt of a sterilizing vaccine you can neither catch nor transmit the disease to others. Therefore, you cannot pose a direct threat to others. Among commonly used sterilizing vaccines are MMR (measles, mumps and rubella), Varicella (chicken pox), OPV (oral polio) and others. The following article explains that with non-sterilizing vaccines the virus can be passed to others even if the infected person has no symptoms. https://www.verywellhealth.com/covid-19-vaccines-and... [verywellhealth.com] The Covid vaccines were never intended to be a sterilizing vaccine and thus they were not designed to prevent infection in recipients but to simply reduce the chances of becoming seriously ill with the infection. This is what is meant by 95% effectiveness. 95% vaccine effectiveness does not mean it will provide 95% protection nor 95% prevention of transmission as these parameters were not the goal and they were not designed as sterilizing vaccines. Although these vaccines had initial promise of vaccine infection prevention, the current research shows that over time the initial immunity degrades. This is stated several times in the CDC conference on August 18th, 2021. (11:30 mark;https://youtu.be/ciVGAPuruoQ [l.facebook.com]) In the following CDC study the effectiveness at prevention from infection has reduced from 74.7% in March to 53.1% by August-which is a period of 5 months. (https://www.cdc.gov/mmwr/volumes/70/wr/mm7034e3.htm [l.facebook.com]) Furthermore, in this study published in the New England Journal of Medicine found not only that the effectiveness of the vaccine was waning, but that "Our findings underline the importance of rapidly reinstating nonpharmaceutical interventions, such as indoor masking and intensive testing strategies," This would suggest that BOTH the vaccinated and unvaccinated individuals can be a direct threat and non pharmaceutical interventions should be used by both groups to limit the spread. I would like to point you to the published paper in Springer Leak published on September 30, 2021, which found the following. "Of the top 5 counties that have the highest percentage of population fully vaccinated (99.9–84.3%), the US Centers for Disease Control and Prevention (CDC) identifies 4 of them as "High" Transmission counties. Chattahoochee (Georgia), McKinley (New Mexico), and Arecibo (Puerto Rico) counties have above 90% of their population fully vaccinated with all three being classified as "High" transmission. Conversely, of the 57 counties that have been classified as "low" transmission counties by the CDC, 26.3% (15) have percentage of population fully vaccinated below 20%." https://link.springer.com/article/10.1007/s10654-021-00808-7 [link.springer.com]

   This clearly shows at the very least the science on vaccination rates and transmission (And thus if vaccinated people are direct threats to the community) is not settled science and I would request to continue in my position based on this. (Please see the following sources: Denying me a religious exemption on the grounds that I am a direct threat when I am willing to continue with such safety accommodations as requested in my exemption statement, would be discriminatory. As those who are vaccinated are losing protection from infection over time per the CDC study, one can deduce that a vaccinated individual becomes more susceptible to an infection and over time will be as likely to become infected just as an unvaccinated individual. This would imply a vaccinated person poses a direct threat to those around them as well and there should be no reason for a denial of my exemption based on this concept. Another way to look at this is in the recent Oxford study which demonstrates the similar peak viral burden in vaccinated and unvaccinated individuals with the current strain of SARS-CoV-2. https://www.bmj.com/content/374/bmj.n2074 [l.facebook.com] After studying the population in England irrespective of when they received the vaccine (unrelated to the waning of immunity from the vaccines) they found that a vaccinated individual carries the same viral load as an

unvaccinated individual with the current variant, which means they would both be a direct threat in the workplace regardless of when the vaccine was received. In fact this news article in the scientific journal, Nature, warns, “Emerging data suggest that Delta could spread more readily than other coronavirus variants among people vaccinated against COVID-19.” and went on to state, ““People who have a Delta virus and happen to have ‘breakthrough’ infections can carry these really high levels of virus, and can unwittingly spread the virus to others,” says David O’Connor, a virologist at the University of Wisconsin–Madison.” Breakthrough infections are only in the vaccinated and thus they can unwittingly spread Delta to patients as well. Therefore, how am I as an unvaccinated person seeking a religious exemption any more of a direct threat than a vaccinated employee with a breakthrough case?

https://www.nature.com/articles/d41586-021-02187-1?fbclid=IwAR3pExXd92Xteop-ORxebvehEkUQqjamYsSKivnJc4boTOe7sqJ738C6zqY [nature.com]

It has come to my attention that Sanofi has accepted religious exemptions for other locations out of state. If the concern truly is about protecting coworkers and patients, why is Sanofi allowing patients and other coworkers to be exposed to those "direct threats" if that is truly the concern, in other states? The fact that Sanofi is allowing these exemptions in other states negates the argument that I am a "direct threat" to others.

Therefore, I would request an appeal of the denial of the religious exemption. Please provide an explanation of WHY my request was denied so that it can be properly fought with an EEOC complaint. I have opened up an EEOC Complaint (Case# 523-2022-01696) and am hereby notifying you that I will be pursuing all of my rights for religious accommodation including damages caused by stress and financial strain should I be terminated. I am hopeful that this appeal will be successful and I can drop my complaint.

Sincerely,

Corrine Devitt

---

**From:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Sent:** Friday, February 4, 2022 11:53 AM
**To:** Employee Relations /US <EmployeeRelations@sanofi.com>
**Subject:** Re: IMPORTANT UPDATE : Accommodation Request for potential New Hire

Hello,
Thank you for the response, I appreciate it. I am requesting an appeal of this denial, please see below:

I am writing today to request an appeal to your denial of my request for religious accommodation for the Covid 19 vaccination. You stated in the appeal that you “Completed a full and thorough review based on the information you provided.” No information was given on why the exemptions were denied on an individual basis as required by the law. I have therefore, filed an EEOC complaint (Case

# 523-2022-00748) and will be seeking all remedies under the law to include damages for pain and suffering for the stress this is causing should I be terminated for holding sincerely held religious beliefs. Please respond with specific information on why my individual request was denied.

If in fact the request was based on a failure to be able to accommodate the request please note that I intend to fight this lack of accommodation based on the following information.

1. According to the ADA, a direct threat is defined as an employee who poses a significant risk of substantial harm to the health or safety of that employee or others, which cannot be eliminated or reduced by a reasonable accommodation. Per the EEOC, the burden of proof will be on the employer to prove the employee is a direct threat. I have in fact been reducing this threat for nearly 24 months through the use of masking, socially distancing and taking daily self-symptom checks to limit the spread of covid and could continue to do so should my exemption be granted. Furthermore, the conclusion that I would be a "direct threat" in the workplace simply due to my unvaccinated status necessarily assumes that I would somehow increase the chances of transmitting COVID in the workplace simply because of my unvaccinated status. This ignores the actual function of the vaccines. The Covid vaccines are non-sterilizing vaccines. To be sterilizing, a vaccine must prevent infection. After receipt of a sterilizing vaccine you can neither catch nor transmit the disease to others. Therefore, you cannot pose a direct threat to others. Among commonly used sterilizing vaccines are MMR (measles, mumps and rubella), Varicella (chicken pox), OPV (oral polio) and others. The following article explains that with non-sterilizing vaccines the virus can be passed to others even if the infected person has no symptoms. https://www.verywellhealth.com/covid-19-vaccines-and... [verywellhealth.com] The Covid vaccines were never intended to be a sterilizing vaccine and thus they were not designed to prevent infection in recipients but to simply reduce the chances of becoming seriously ill with the infection. This is what is meant by 95% effectiveness. 95% vaccine effectiveness does not mean it will provide 95% protection nor 95% prevention of transmission as these parameters were not the goal and they were not designed as sterilizing vaccines. Although these vaccines had initial promise of vaccine infection prevention, the current research shows that over time the initial immunity degrades. This is stated several times in the CDC conference on August 18th, 2021. (11:30 mark;https://youtu.be/ciVGAPuruoQ [l.facebook.com]) In the following CDC study the effectiveness at prevention from infection has reduced from 74.7% in March to 53.1% by August-which is a period of 5 months. (https://www.cdc.gov/mmwr/volumes/70/wr/mm7034e3.htm [l.facebook.com]) Furthermore, in this study published in the New England Journal of Medicine found not only that the effectiveness of the vaccine was waning, but that "Our findings underline the importance of rapidly reinstating nonpharmaceutical interventions, such as indoor masking and intensive testing strategies," This would suggest that BOTH the vaccinated and unvaccinated individuals can be a direct threat and non pharmaceutical interventions should be used by both groups to limit the spread. I would like to point you to the published paper in Springer Leak published on September 30, 2021, which found the following. "Of the top 5 counties that have the highest percentage of population fully vaccinated (99.9–84.3%), the US Centers for Disease Control and Prevention (CDC) identifies 4 of them as "High" Transmission counties. Chattahoochee (Georgia), McKinley (New Mexico), and Arecibo (Puerto Rico) counties have above 90% of their population fully vaccinated with all three being classified as "High" transmission. Conversely, of the 57 counties that have been classified as "low" transmission counties by the CDC, 26.3% (15) have percentage of population fully vaccinated below 20%." https://link.springer.com/article/10.1007/s10654-021-00808-7 [link.springer.com]

   This clearly shows at the very least the science on vaccination rates and transmission (And thus if vaccinated people are direct threats to the community) is not settled science and I would request to continue in my position based on this. (Please see the following sources: Denying me a religious exemption on the grounds that I am a direct threat when I am willing to continue with such safety accommodations as requested in my exemption statement, would be discriminatory. As those who are vaccinated are losing protection from infection over time per

the CDC study, one can deduce that a vaccinated individual becomes more susceptible to an infection and over time will be as likely to become infected just as an unvaccinated individual. This would imply a vaccinated person poses a direct threat to those around them as well and there should be no reason for a denial of my exemption based on this concept. Another way to look at this is in the recent Oxford study which demonstrates the similar peak viral burden in vaccinated and unvaccinated individuals with the current strain of SARS-CoV-2. https://www.bmj.com/content/374/bmj.n2074 [l.facebook.com] After studying the population in England irrespective of when they received the vaccine (unrelated to the waning of immunity from the vaccines) they found that a vaccinated individual carries the same viral load as an unvaccinated individual with the current variant, which means they would both be a direct threat in the workplace regardless of when the vaccine was received. In fact this news article in the scientific journal, Nature, warns, "Emerging data suggest that Delta could spread more readily than other coronavirus variants among people vaccinated against COVID-19." and went on to state, ""People who have a Delta virus and happen to have 'breakthrough' infections can carry these really high levels of virus, and can unwittingly spread the virus to others," says David O'Connor, a virologist at the University of Wisconsin–Madison." Breakthrough infections are only in the vaccinated and thus they can unwittingly spread Delta to patients as well. Therefore, how am I as an unvaccinated person seeking a religious exemption any more of a direct threat than a vaccinated employee with a breakthrough case?

https://www.nature.com/articles/d41586-021-02187-1?fbclid=IwAR3pExXd92Xteop-ORxebvehEkUQqjamYsSKivnJc4boTOe7sqJ738C6zqY [nature.com]

Therefore, I would request an appeal of the denial of the religious exemption. Please provide an explanation of WHY my request was denied so that it can be properly fought with an EEOC complaint. I have opened up an EEOC Complaint (Case# 523-2022-00748) and am hereby notifying you that I will be pursuing all of my rights for religious accommodation including damages caused by stress and financial strain should I be terminated. I am hopeful that this appeal will be successful and I can drop my complaint.

Sincerely,

Corrine Devitt

# EXHIBIT H

**From:** Employee Relations /US <EmployeeRelations@sanofi.com>
**Sent:** Tuesday, February 8, 2022 6:54 PM
**To:** Corrine Devitt; Devitt, Corrine /US
**Subject:** Accommodation Final Decision
**Attachments:** Devitt Religious Accommodation Appeal Denial Letter -2.8.22.pdf

Hi Corrine,

Please see attached the final decision on your appeal request.

Thank you

sanofi

***Personal and Confidential***

February 8, 2022

*Via Email*

Corrine Devitt
corrine.devitt@sanofi.com

Re: Appeal of Denial of Request for Religious Accommodation from Covid-19 Vaccine Requirement

Dear Corrine,

As set forth in your offer letter, all Sanofi US[1] employees must obtain a Covid-19 vaccine as a condition of employment.

Sanofi US is committed to engaging in an interactive dialogue and providing reasonable accommodations to employees who request an exception to the vaccine requirement based on a sincerely held religious belief, observance or practice protected pursuant to Title VII of the Civil Rights Act of 1964, provided that an accommodation would not relieve an employee of performing the essential functions of their role and would not constitute an undue hardship on Sanofi US.

As set forth in a letter previously sent to you, Sanofi US denied your request for a religious exception to the vaccine requirement. You requested an appeal of that decision. Sanofi US reviewed your original request as well as any additional information you submitted. This appeal review involved higher level HR personnel. After review, Sanofi US is upholding its denial of your request for an accommodation for the reasons set forth in the original denial letter provided to you. This decision is final.

In order to allow you sufficient time to obtain an available Covid-19 vaccine of your choosing, and to comply with Sanofi US's policies, you have been permitted to commence employment on your scheduled start date (February 7th), but you must work remotely at first. You will be required to submit proof that you have obtained the first dose of either the Moderna or Pfizer vaccines, or the single-dose J&J vaccine, by **500 p.m. on February 14, 2022**. You will only be permitted on-site if you obtain the first dose. However, failure to submit such proof will result in the termination of your employment. Such proof must be submitted to Occupational Health (NAOH@sanofi.com), along with proof that you are scheduled to receive your second dose (if you choose a two-dose vaccine). You will then be required to submit proof that you have obtained the final dose of such vaccine within one (1) business day of the scheduled dose. Failure to do so will result in the termination of your employment

[1] Sanofi US refers to all Sanofi entities in the U.S.

Please do not hesitate to reach out if you have any questions.

Sincerely,

The Sanofi US Employee Relations Team employee.relations@sanofi.com

# EXHIBIT I

**From:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Sent:** Friday, February 11, 2022 2:01 PM
**To:** Leger, Lisa /US <[redacted]>
**Subject:** Re: TIME SENSTIVE REQUEST

Hello Lisa,

I will not be getting the vaccine as per the denial email demands. It appears that I do not meet the requirements for this role.

Best,
Corrine

---

**From:** Leger, Lisa /US <[redacted]>
**Sent:** Friday, February 11, 2022 1:26:04 PM
**To:** Corrine Devitt <Corrine.Devitt@hotmail.com>
**Subject:** FW: TIME SENSTIVE REQUEST

Dear Corrine,

I'm sending this to your personal email as I realize this may be the best way to reach you today. Could you please respond to my question that I sent to your Sanofi email below earlier?

Thank you!
Lisa

**Lisa A. Leger**
*HR Business Partner*
*Research & Development U.S.*

[redacted]
49 New York Avenue, Framingham, MA 01701
Tel : [redacted]

sanofi [sanofi.com]

MyPortal

*MyPortal* [eur01.safelinks.protection.outlook.com] A single point of contact for a comprehensive Employee Experience!

**For all HR-related inquiries:**
**Visit:** https://sanofiservices.service-now.com/c2r?id=c2r_home [eur01.safelinks.protection.outlook.com]
*Managers:* Visit the My Team [eur01.safelinks.protection.outlook.com] page for information and resources you need to manage your team!
**Contact:** 855-694-7737
**Hours:** Monday-Friday: 9 am-5 pm (EST)

---

**From:** Leger, Lisa /US
**Sent:** Friday, February 11, 2022 1:10 PM
**To:** Devitt, Corrine /US <Corrine.Devitt@sanofi.com>
**Subject:** FW: TIME SENSTIVE REQUEST
**Importance:** High

Dear Corrine:

Robert forwarded the email that you sent to him yesterday. I need to clarify: are you resigning from your position at Sanofi effective on Monday, February 14th? Please let me know as soon as possible so that we can discuss next steps. Thank you.

Regards,
Lisa

**Lisa A. Leger**
*HR Business Partner*
*Research & Development U.S.*

[redacted]
49 New York Avenue, Framingham, MA 01701
[redacted]

sanofi [sanofi.com]

MyPortal

*MyPortal* [eur01.safelinks.protection.outlook.com] A single point of contact for a comprehensive Employee Experience!

**For all HR-related inquiries:**
**Visit:** https://sanofiservices.service-now.com/c2r?id=c2r_home [eur01.safelinks.protection.outlook.com]
*Managers:* Visit the My Team [eur01.safelinks.protection.outlook.com] page for information and resources you need to manage your team!
**Contact:** 855-694-7737
**Hours:** Monday-Friday: 9 am-5 pm (EST)

**From:** Milczarek, Robert /US <[redacted]>
**Sent:** Friday, February 11, 2022 12:03 PM
**To:** Leger, Lisa /US <[redacted]>
**Subject:** FW:

FYI

---

**From:** Devitt, Corrine /US <Corrine.Devitt@sanofi.com>
**Sent:** Thursday, February 10, 2022 8:34 AM
**To:** Milczarek, Robert /US <[redacted]>
**Subject:**

Hi Robert,

I received some disheartening news last evening, as it relates to my role. My request for accommodation has been denied (final decision) and so the 14th will technically be my last day. I am deeply disappointed with this decision- I was really looking forward to this role and joining the team. I wanted to communicate this out as soon as possible so you can begin the process of reopening my role. I am beyond upset about this on a lot of levels- had I received this information much sooner, I wouldn't have left my former role and you could have moved forward in the hiring process for another candidate.

I don't want this to distract from what you are handling at home today, so please don't worry about a response right away.

Needless to say, I'm not sure of the value of completing any other parts of new hire / training / meetings / etc. We can talk tomorrow if you'd like.

Best,
Corrine

# EXHIBIT J

SANOFI

C O N F I D E N T I A L

| | | | |
|---|---|---|---|
| **Date:** | **February 14, 2022** | **From:** | Robert Milczarek |
| **To:** | **Corrine Devitt** | **Copies:** | Bruno Figueroa |
| **Subject:** | **Notification of Termination** | | Lisa Leger |

This letter is to inform you that your employment with US Sanofi US Services Inc. (together with its US affiliates, the "Company") will terminate effective February 18, 2022. This is due to failure to comply with the Company's Covid-19 vaccine mandate applicable to your role. As set forth in your offer letter, all Sanofi US employees must obtain a Covid-19 vaccine as a condition of employment. As of this date, you will no longer be authorized to represent the Company in any matter.

Per Company policy:

1. Your health and dental insurance benefits will continue until February 28, 2022. Beyond that date, you are eligible to continue health coverage under the federal COBRA. Your rights to continue coverage under COBRA will be provided to you under separate cover.
2. You will be paid for your accrued, but unused, vacation time. This amount is typically included in your final paycheck; however, it may be paid out on the following payroll period pay date.
3. Final paychecks are paid in accordance with individual state law, typically on the next available pay date.

Please refer to the following page for offboarding information. Should you have further questions, you may contact the Human Resources Operations team at: NorthAmericaHROperations@sanofi.com

[signature] 14Feb2022

Robert Milczarek Date

SANOFI

## O F F B O A R D I N G   I N F O R M A T I O N

**Expenses**

All outstanding expenses must be submitted to your manager in the Concur expense reporting system https://www.concursolutions.com. Your account will become inactive the Wednesday following your last day. If you are not able to sign into Concur, please send an email to ConcurExpenseSupport@sanofi.com to have your account re-activated. You can use your personal computer to submit the expenses.

**ITS Equipment**

- All Company property must be returned (laptops, desktops, smartphones, and iPads). Sanofi US does not collect printers, they can be kept by the user or disposed following your local disposal guidelines.
- If you are a field sales employee, you will be contacted by a representative from Iqvia (formerly Buzzeo), a Company vendor, to schedule the collection of all company property. If you have not been contacted, please email Call Coordinator (IT) at callcoordinator@sanofi.com to schedule an asset return.
- If you are an office-based employee, please contact Call Coordinator (IT) at callcoordinator@sanofi.com to schedule an asset return. Onsite Support (OSS) will ship a box. Please provide your name, Sanofi ID, shipping address, and a phone number.

**Personal items**

To pick up any personal items left in your locker, please contact your manager. You will be escorted by your manager to retrieve your belongings. If your manager is not located in the location where you were employed, your manager can assign someone within your group to escort you.

**Badges, keys, and parking tags/Decals**

Manager/delegate collects security badge, keys and parking tag/decal or you have the following options:

• Return items to local security department

OR

• Ship to the following location:

Sanofi<br>
55 Corporate Drive<br>
Security Department<br>
Bridgewater, NJ 08807

If you have any questions about returning personal items, please contact security at securitynabadging@sanofi.com

**Verification of employment**

If you require verification of employment, please contact The Work Number: 1-800-367-5690 or www.theworknumber.com