**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CORRINE M. DEVITT,<br><br>Plaintiff,<br><br>v.<br><br>SANOFI-AVENTIS US, LLC,<br><br>Defendant. | Civil Action No. 4:23-cv-10516-MRG |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Sanofi-Aventis US, LLC ("Sanofi US" or "Defendant") submits this Memorandum of Law in Support of Its Motion to Dismiss the First Amended Complaint ("FAC") of Plaintiff Corrine Devitt ("Plaintiff") in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## INTRODUCTION

Plaintiff worked, for less than two weeks, as a Manager of Cell Therapy for Sanofi US. In the fall 2021, Sanofi US, like many other employers in Massachusetts and across the United States, implemented a policy requiring its workers to become vaccinated against COVID-19 as a condition of employment (the "Vaccination Policy"). The Vaccination Policy allowed employees to submit requests for religious and medical exemptions. Plaintiff requested a religious exemption, and after an interactive process, Plaintiff's request was denied. Sanofi US terminated Plaintiff's employment in February 2022 for failure to comply with the Vaccination Policy.

[1] Plaintiff filed her state court Complaint on November 28, 2022. (*See* ECF No. 9, p. 5-13.) On the same day, she filed a second, nearly identical complaint against her previous employer, Bristol-Myers Squibb, in Middlesex Superior Court, Civil Action No. 2281-cv-04040.

Following her termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On August 31, 2022, the EEOC issued Plaintiff a Right to Sue letter advising that she was required to bring a lawsuit under federal law based on the allegations in the Charge within 90 days of receipt. *See* ECF No. 9 at 13.[2] Plaintiff did not do so. Instead, she filed a complaint in Middlesex Superior Court (the "State Court Action") asserting a raft of state law tort claims. *See* ECF No. 9 at 7-10. Defendant then removed the action to this Court. *See* ECF No. 1. When Defendants filed a Rule 12(b)(6) motion seeking dismissal of those claims, Plaintiff did not respond.[3] Plaintiff subsequently abandoned every single claim in her initial pleading and, without leave of court, filed a First Amended Complaint (the "FAC") on April 21, 2023. The FAC asserted, for the first time, claims under M.G.L. c. 151B ("Chapter 151B"), Title VII, the United States Constitution, and the Massachusetts Declaration of Rights. *See* ECF No. 12 (hereinafter "FAC") at 3-5, ¶¶ 18-34. The FAC fares no better than the original complaint, and is subject to dismissal for four primary reasons, beyond its procedural impropriety.

*First*, Plaintiff's Title VII claim is untimely. It was asserted for the first time in the FAC on April 21, 2023 — more than 240 days beyond the 90-day filing period required under the statute. Nor can the Title VII claim be said to relate back to the filing of the original complaint under Fed. R. Civ. P. 15(c), because Plaintiff did not "[a]mend" or "[s]upplement" her original

[2] Plaintiff's EEOC Right to Sue letter was referenced and attached as Exhibit A to the original complaint in state court. ECF No. 9 at 13. This Court may consider it in deciding this motion. *See, e.g.*, *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (on motion to dismiss, court may consider, among others, "official public records," "documents central to plaintiffs' claim," and "documents sufficiently referred to in the complaint").

[3] Sanofi US filed its Rule 12 motion on March 15, 2023. ECF No. 10 at 2. Sanofi US indicated its intent to seek dismissal under Rule 12 during attempted pre-motion conferrals. Counsel for Plaintiff reported, on the eve of the responsive pleading deadline, that Plaintiff intended to abandon her original claims. Plaintiff's opposition deadline was March 29, 2023, but she did not oppose Sanofi US's motion. Thirty-seven days after Sanofi US filed its dispositive motion, on April 21, 2023, Plaintiff instead filed the FAC, abandoning *all* of her original claims, without leave of court. ECF No. 12. Because Plaintiff has abandoned all claims in her initial complaint, Sanofi US withdraws its initial Rule 12 motion, but notes that judicial economy has not been served and scarce resources were squandered due to Plaintiff's pleading conduct.

pleading; rather, she abandoned every one of her initial claims. This had the effect of a voluntary dismissal without prejudice and eliminated any and all claims to which the tardy Title VII count could relate back. In procedural terms, Plaintiff started over.

*Second*, Plaintiff's constitutional claims fail as a matter of law. Sanofi US is not a state actor, and the FAC provides no allegation or basis to infer that Defendant — a private entity — may be liable for supposedly violating Plaintiff's constitutional rights.

*Third*, Plaintiff's failure to accommodate claims under Title VII and Chapter 151B fail as a matter of law. The FAC is devoid of any specific facts describing the nature of Plaintiff's religious beliefs or how they conflicted with the Vaccination Policy, which is fatal to Plaintiff's religious accommodation claims. And, even if Plaintiff could plausibly allege the nature of her religious beliefs and any conflict with the Vaccination Policy, allowing Plaintiff's requested exemption would have imposed an undue hardship on Sanofi US as a matter of law. Sanofi US is a global healthcare company and vaccine manufacturer. Granting the request of Plaintiff, a people manager, to be exempt from the COVID-19 Vaccine requirement would undermine Sanofi US's health and safety efforts with respect to minimizing the transmission of COVID-19, and would be inconsistent with its mission as a science-driven company engaged in vaccine manufacture to help combat the global pandemic, resulting in an undue hardship.

*Fourth*, Plaintiff's retaliation claims fail as a matter of law. The FAC expressly alleges that Plaintiff was terminated for non-compliance with the Vaccination Policy, a condition of her employment; it does not allege that any adverse action Plaintiff experienced was retaliation for engaging in statutorily protected activity.

For all of these reasons and those discussed below, Sanofi US respectfully requests that this Court enter an Order dismissing the FAC in its entirety and with prejudice.

## RELEVANT BACKGROUND

### I. Allegations in the FAC

Plaintiff began working for Sanofi US as a Manager of Cell Therapy on February 7, 2022. FAC at 1, ¶ 4. *Prior* to her employment, on November 12, 2021, Sanofi US announced its intention to expand its Vaccination Policy to require all Sanofi US applicants and employees to be vaccinated against COVID-19 as a condition of employment. Under the Vaccination Policy, employees and applicants were permitted to submit requests for religious exemptions. *Id.* at 2, ¶ 6.

On January 5, 2022, Plaintiff submitted a request for a religious exemption from the COVID-19 vaccination requirement. *Id.*, ¶¶ 7, 9. Following an interactive process, Plaintiff's religious exemption request was denied. *Id.*, ¶¶ 7-10. On February 7, 2022, Plaintiff began working, but thereafter refused to come into compliance with Sanofi US's COVID-19 vaccination requirement, and Sanofi US terminated her employment on February 14, 2022 due to her failure to comply with the Vaccination Policy. *Id.* at ¶¶ 4, 7-10.

The FAC says nothing about the nature of Plaintiff's religious belief or why it prevented her from complying with the Vaccination Policy. In fact, the FAC invokes secular reasoning by alleging that Sanofi US should have accommodated Plaintiff's exemption request because it "knew, or should have known, that the COVID-19 vaccine did not prevent contracting nor spreading the disease." FAC at 4-5, ¶¶ 22, 28, 34. Plaintiff makes no allegation explaining why she wanted to work for Sanofi US — a company supporting the manufacture of vaccines — notwithstanding an allegedly sincere religious belief that conflicted with taking the vaccine.

## II. Procedural History

Plaintiff filed a Charge of Discrimination with the EEOC on or about February 4, 2022. *See* FAC at 2, ¶ 11. The EEOC declined to investigate the Charge and issued a Right to Sue notice on August 31, 2022. *See id.*, ¶¶ 11-12; ECF No. 9 at 13. On November 28, 2022, Plaintiff filed the State Court Action, in which she asserted seven state common law claims ostensibly related to the denial of her religious exemption request and termination of employment. *See* ECF No. 9 at 7-10. The initial complaint asserted none of the claims that now appear in the FAC. *Compare* ECF No. 9 *with* FAC.

In a pre-motion conferral, Sanofi US notified Plaintiff that it intended to file a motion to dismiss the complaint in its entirety. ECF No. 10 at 2. Plaintiff's counsel belatedly responded by advising that Plaintiff would not stand on her initial complaint, but would instead file an "amended" complaint. *Id.* Plaintiff filed the FAC on April 21, 2023. FAC. The pleading cited the same factual allegations, but withdrew all seven of the counts in the original complaint[4] and instead brought the three-count FAC: violation of Title VII and Chapter 151B (Count I); "Violation of Plaintiffs' [sic] Equal Protection and Equal Treatment Rights" under the Federal and Massachusetts Constitutions (Count II); and substantive and procedural due process claims under the Federal and Massachusetts Constitutions (Count III). FAC at 3-5, ¶¶ 18-34.

## ARGUMENT

## I. Relevant Legal Standards

To survive a Rule 12(b)(6) motion, the complaint must set forth sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if, after accepting as true all non-conclusory

[4] Those included: detrimental reliance, intentional misrepresentation, negligence, tortious interference, intentional infliction of emotional distress, good faith and fair dealing, and assault.

factual allegations, the Court can reasonably infer that the defendant is liable for the misconduct alleged. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). "Plausible, of course, means something more than merely possible[.]" *Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019) (internal quotation marks omitted). "Dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotation marks and citations omitted).

"Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under [Rule 12(b)(6)], provided that the facts establishing the defense [are] clear on the face of the plaintiff's pleadings." *Trans-Spec Serv. v. Caterpillar, Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (internal quotation marks omitted; second alteration in original). Title VII's 90-day requirement to file a claim under federal law following the plaintiff's receipt of a Notice of Right to Sue letter is in the nature of a statute of limitations, and thus appropriately addressed on a Rule 12(b)(6) motion. *See Rice v. New England Coll.*, 676 F.2d 9, 10 (1st Cir. 1982) (concluding that 90-day filing period was a statute of limitations); *accord Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010) (90 days is "more akin to a statute of limitations"); *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1174 (9th Cir. 1986) ("the 90–day filing period is a statute of limitations").

Undue hardship under Title VII and Chapter 151B is also an affirmative defense. *See, e.g.*, *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 55 (1st Cir. 2002) (under Title VII, employer bears the burden to "show that any accommodation would result in undue hardship"); *Brown v. F.L. Roberts & Co.*, 452 Mass. 674, 676 (2008) (same under Chapter 151B); *accord Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d

444, 448 (7th Cir. 2013) (referring to undue hardship under Title VII "an explicit affirmative defense for failure-to-accommodate claims").

## II. Plaintiff's Title VII Claim is Untimely Because it Was Not Brought Within 90 Days of Her Receipt of a Right to Sue Letter from the EEOC

A Plaintiff asserting a Title VII claim must file suit within ninety (90) days of receiving a Right to Sue letter from the EEOC. *See, e.g., Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 119 (1st Cir. 2009) (*citing Franceschi v. U.S. Dep't of Veterans Affs.*, 514 F.3d 81, 85 (1st Cir. 2008)); 42 U.S.C. § 2000e-5(f)(1). This requirement is strictly construed: "In the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Rice*, 676 F.2d at 11.

There is no dispute that Plaintiff received her Right to Sue letter from the EEOC on August 31, 2022. FAC at 3, ¶ 12. There is also no dispute that Plaintiff did not file the FAC, in which she asserted her Title VII claim for the first time, until April 21, 2023 — 243 days later. The Title VII claim is thus untimely unless it relates back to the filing on November 28, 2022 of the initial complaint. Here, it does not. The initial complaint asserted only state common law causes of action arising in tort and quasi-contractual theories of recovery, not statutory discrimination claims.

Relation back doctrine, therefore, has no application in this context. Fed. R. Civ. P. 15(c) governs when an "amendment to a pleading relates back to the date of the original." Here, though, Plaintiff did far more than amend or supplement her original pleading. She withdrew all seven claims she originally purported to bring, presumably because they were inapt and vulnerable to dismissal. She decided to start over, which had the effect of a voluntary dismissal of all of Plaintiff's original counts. "[A]n amendment which eliminates causes of action has the effect of a voluntary dismissal by plaintiff[] of such causes." *Addamax Corp. v. Open Software Found., Inc.*, 149 F.R.D. 3, 6 (D. Mass. 1993) (internal quotation marks and alterations omitted); *see also*

*Transwitch Corp. v. Galazar Networks, Inc.*, 377 F. Supp. 2d 284, 289 n.5 (D. Mass. 2005) ("[i]n all respects here relevant, a Rule 15(a) amendment eliminating a claim is the same as a Rule 41(a) voluntary dismissal of the claim") (*quoting Chambers v. Time Warner, Inc.*, No. 00 Civ. 2839 (JSR), 2003 WL 1107790, at *2 (S.D.N.Y. Mar. 12, 2003)); *accord Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1107 (11th Cir. 2004) ("a claim dropped through a Rule 15 amendment—or, for that matter, an action dropped pursuant to Rule 41(a)—is dismissed without prejudice"). Rather than defend the viability of her state law claims on the merits, Plaintiff began again and voluntarily dismissed them all.

Though Plaintiff was free to take that course, there are inevitable consequences. A purported amendment to a complaint that drops all of the claims asserted therein, replacing them with an entirely new set of claims, is, in effect, a voluntary dismissal under Fed. R. Civ. P. 41. That is because Rule 15 "is the proper vehicle to drop some *but not all claims* against a defendant or defendants." *Addamax*, 149 F.R.D. at 5 (emphasis added); *Transwitch*, 377 F. Supp. 2d at 288 ("the weight of authority is that Rule 15(a) … applies to an amendment which drops some *but not all* of the claims in an action") (emphasis added). Conversely, where, as here, a plaintiff "seeks to drop all of the counts in the original complaint[,] [r]eview is … properly gauged" as a Rule 41 dismissal. *Transwitch*, 377 F. Supp. 2d at 289 (finding that amendment of complaint in which party dropped all claims in original complaint to assert different claims in amended pleading was properly analyzed under Fed. R. Civ. P. 41 governing dismissal of actions). "Rule 15(c) [governing relation back of amendments] simply does not apply where, as here, the party bringing suit did not seek to 'amend' or 'supplement' [her] original pleading, but, rather, opted to file an entirely new petition at a subsequent date. In short, there was nothing to which [the second petition] could relate back." *Neverson v. Bissonnette*, 261 F.3d 120, 126 (1st Cir. 2001). The same is true here.

Accordingly, Plaintiff's initial complaint cannot provide the requisite anchor pleading to salvage her otherwise-untimely Title VII filing. As the First Circuit has explained:

> A voluntary dismissal without prejudice results in a *tabula rasa*. It renders the proceedings null and void and leaves the parties in the same position as if the action had never been prosecuted. … *Consequently, a prescriptive period is not tolled by filing a complaint that is subsequently dismissed without prejudice*.

*Jorge v. Rumsfeld*, 404 F.3d 556, 563 (1st Cir. 2005) (internal quotation marks and citations omitted) (emphasis added); *Nat'l R.R. Passenger Corp. v. Int'l Ass'n of Machinists & Aerospace Workers*, 915 F.2d 43, 48 (1st Cir. 1990) ("it is well settled that the effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought") (internal quotation marks and citation omitted).

Nor can it seriously be suggested that Plaintiff's failure to assert her Title VII claim in the initial complaint was the product of inadvertence or mistake. *Cf. Dube v. Wyeth Biotech*, No. 10-11316-RGS, 2011 WL 134053, at *2 (D. Mass. Jan. 14, 2011) ("to mistake a federal ADA claim for a state Chapter 151B claim is on the order of mistaking a woolly mammoth for a reindeer"). The original complaint explicitly discussed and referenced Plaintiff's EEOC Charge and Right to Sue correspondence, yet conspicuously declined to assert a Title VII claim — opting instead to pursue a raft of inapt state common law causes of action. To permit Plaintiff now to escape the consequences of her intentional pleading choice under these circumstances would be to reward the procedural equivalent of a bait-and-switch.[5]

[5] Sanofi US notes that the same gamesmanship occurred in simultaneous pleadings in this Court. A different plaintiff represented by the same counsel as represents Plaintiff here raised nearly identical claims to those brought in this case and engaged in precisely the same pattern: that plaintiff filed an initial complaint asserting the same seven boilerplate state common law claims and then, in the face of a threatened motion to dismiss those claims, filed an amended complaint with the same counts as appear in the FAC in this case. *Lavine v. Mass Gen. Brigham Inc.*, No. 1:23-cv-10987-PBS (D. Mass. 2023), ECF No. 11 at 1-8, 24-31. This indisputable reality raises legitimate questions about the sufficiency of each complaint, and both pre-pleading investigations.

### III. <u>Plaintiff's Counts Under the Federal and Massachusetts Constitutions Fail to State Claims for Which Relief Can Be Granted</u>

Counts II and III of the FAC purport to bring various claims directly under the Federal Constitution and Massachusetts Declaration of Rights. In Count II, Plaintiff claims that Sanofi US's termination of her employment somehow violated her rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. FAC at 4, ¶¶ 23-28. In Count III, Plaintiff alleges that Sanofi US's denial of her religious exemption request and subsequent termination of her employment offended her substantive and procedural due process rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and Articles IV, X, XX, XXI, XXIX, and XXX of the Massachusetts Declaration of Rights. *Id.* at 5, ¶¶ 29-34. These claims are fatally deficient.

Nowhere in the FAC does Plaintiff allege that Sanofi US is a government actor, and indeed Sanofi US is not a governmental actor; it is a privately-owned healthcare and pharmaceutical company. *See* FAC at 1, ¶ 2. Yet, state action is a foundational element of Plaintiff's constitutional claims. "The Supreme Court has long held that the United States Constitution applies only to actions by governments and their employees." *Tynecki v. Tufts Univ. Sch. of Dental Med.*, 875 F. Supp. 26, 30 n.5 (D. Mass. 1994) (*citing Rendell-Baker v. Kohn*, 457 U.S. 830 (1982)). "The Massachusetts Supreme Judicial Court has found the same requirement exists under the Massachusetts Constitution." *Id.* (*citing and quoting Phillips v. Youth Dev. Program, Inc.*, 390 Mass. 652, 658 (1983)). Plaintiff's constitutional claims (Counts II and III of the FAC) cannot stand.[6]

[6] Although the lack of any state action is dispositive of Counts II and III, Sanofi US notes that the FAC fails to articulate a cogent constitutional claim in any event. Federal appellate courts have consistently tossed constitutional challenges to COVID vaccination requirements. That is because requiring vaccination as a condition of employment with a certain employer or to participate in a public program does not, contrary to Plaintiff's apparent view, constitute an invasion of a person's "bodily integrity" or "unwanted medical intervention." FAC at 5, ¶ 31; *see Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 87 (1st Cir. 2022) ("MGB is not requiring appellants to be vaccinated

## IV. Plaintiff's Title VII and Chapter 151B Claims Fail as a Matter of Law

### a. The FAC Fails to Establish a Prima Facie Case of Religious Discrimination

To establish a *prima facie* case of religious discrimination based on failure to accommodate, a plaintiff must assert "that a *bona fide* religious practice conflicts with an employment requirement and was the reason for the adverse employment action." *Sanchez-Rodriguez v. AT&T Mobility P.R., Inc.*, 673 F.3d 1, 12 (1st Cir. 2012) (*quoting Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 133 (1st Cir. 2004)). The *prima facie* case is materially the same under Chapter 151B, requiring the employee to show a conflict between a religious practice and an employer's requirement. *See Brown*, 452 Mass. at 676 (failure to accommodate claim requires initial showing that "the employer required the employee to violate a required religious practice"). "Chapter 151B utilizes an evaluative framework identical to the one applied in federal Title VII accommodation cases." *Brox v. Hole*, 590 F. Supp. 3d 359, 366 (D. Mass. 2022) (*appeal filed*, Apr. 14, 2022).[7]

The FAC contains no allegations describing any particular religious practice of Plaintiff, apart from the conclusory statement that Plaintiff "sincerely" holds unspecified "beliefs." FAC at 4-5, ¶¶ 20, 27, 32. Plaintiff does not even attempt to state that she adhered to a particular belief or religion. Relatedly, the FAC says nothing about how Plaintiff's religious beliefs or practices conflicted with the Vaccination Policy. The absence of these allegations, despite two attempts to

---

involuntarily. Instead, because appellants have refused to get vaccinated, they have been fired.") (internal quotation marks and alterations omitted); *Kane v. De Blasio*, 19 F.4th 152, 172 (2d Cir. 2021) ("Plaintiffs are not required to perform or abstain from any action that violates their religious beliefs. Because Plaintiffs have refused to get vaccinated, they are on leave without pay."); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293–94 (2d Cir. 2021), *cert. denied sub nom. Dr. A. v. Hochul*, 213 L. Ed. 2d 1126, 142 S. Ct. 2569 (2022) ("Although individuals who object to receiving the vaccines on religious grounds have a hard choice to make, they do have a choice. Vaccination is a condition of employment in the healthcare field; the State is not forcibly vaccinating healthcare workers."); *Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (holding that "there can't be a constitutional problem with vaccination against SARS-CoV-2" and rejecting Fourteenth Amendment challenge to public university vaccination requirement).

[7] Because the analysis does not differ under Title VII and Chapter 151B, Sanofi US discusses these claims together in this section.

plead Plaintiff's case, is fatal. *See, e.g., Brown v. Children's Hosp. of Phila.*, No. CV 18-2363, 2018 WL 5884545, at *2 (E.D. Pa. Nov. 9, 2018), *aff'd*, 794 F. App'x 226 (3d Cir. 2020) (dismissing amended complaint for failure to state claim under Title VII; "Nowhere … does Plaintiff identify any particular religious belief that she held and/or that conflicted with Defendant's requirement that all employees receive a flu vaccination.").

**b. Granting Plaintiff's Requested Exemption Would Have Imposed an Undue Hardship as a Matter of Law**

Employers are not required to extend accommodations under Title VII or Chapter 151B where doing so would place an undue hardship on the operation of their business.[8] *See Cloutier*, 390 F.3d at 134; *Brown*, 452 Mass. at 676. Under Title VII, "[a]n accommodation constitutes an 'undue hardship' if it would impose more than a *de minimis* cost on the employer." *Cloutier,* 390 F.3d at 134 (*citing Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977)). "This calculus applies both to economic costs … and to non-economic costs … ." *Id.* "In conducting an undue hardship inquiry, the court must consider 'not only [] direct economic costs, but indirect ones related to health and safety.'" *Brox*, 590 F. Supp. 3d at 367 (*quoting Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 435 (D. Mass. 2021)); *see also Robinson v. Children's Hosp. Bos.*, No. CV 14-10263-DJC, 2016 WL 1337255, at *8 (D. Mass. Apr. 5, 2016) (under Title VII, "undue hardship can also exist if the proposed accommodation would either cause or increase safety risks") (internal quotations and citation omitted).

The EEOC reiterated that courts have found Title VII undue hardship where the religious accommodation would impair workplace safety. *See* COVID-19 Vaccinations: EEO Overview, at

[8] The EEOC's Technical Assistance Questions and Answers defines "undue hardship" under Title VII as an accommodation that would impose "more than a minimal cost or burden on the employer." *See* COVID-19 Vaccinations: EEO Overview, at § K.12 ("This is an easier standard for employers to meet than the ADA's undue hardship standard.").

§ L.3. The EEOC further recognized that, in assessing undue hardship, common and relevant considerations during the COVID-19 pandemic include, for example, whether the requesting employee works outdoors or indoors, whether the employee works in a solitary or group work setting, whether the employee has close contact with other employees or members of the public, the type of workplace, the nature of the employee's duties, the number of employees who are fully vaccinated, how many individuals enter the workplace, and the number of employees who are seeking a similar accommodation. *Id.* at § L.4. Reputational effects on an employer also can impose an undue hardship. This was especially true for Sanofi US, a company that supported vaccine manufacturing throughout the global pandemic. *See Cloutier*, 390 F.3d at 136 (finding undue hardship in Title VII case where accommodation would "adversely affect the employer's public image").[9]

Where an employer's undue hardship defense is established at the pleading stage or as a matter of undisputed fact on summary judgment, courts do not hesitate to enter judgment in the employer's favor as a matter of law. *See Does 1-2 v. Hochul*, No. 21CV5067AMDTAM, 2022 WL 4637843, at *16 (E.D.N.Y. Sept. 30, 2022) (*appeal filed*, Nov. 1, 2022) (granting Rule 12(b)(6) motion to dismiss Title VII claim based on denial of COVID vaccine exemption, in part, on the basis of undue hardship; concluding that "exempting the plaintiffs from the vaccine requirement would expose vulnerable patients … as well as other healthcare workers, to the COVID-19 virus, which is obviously a significant hardship"); *D'Cunha v. Northwell Health Sys.*, No. 1:22-CV-0988 (MKV), 2023 WL 2266520, at *3 (S.D.N.Y. Feb. 28, 2023) (granting Rule 12(b)(6) motion to dismiss Title VII claim challenging healthcare employer's COVID vaccine requirement on undue hardship grounds); *Cloutier*, 390 F.3d at 128 (affirming summary judgment in favor of employer

[9] As a healthcare company and vaccine manufacturer, Sanofi US was committed to promoting and supporting public health initiatives by requiring its employees to become vaccinated for COVID-19.

and concluding that employer established undue hardship as a matter of law); *Robinson*, 2016 WL 1337255, at *10 (summary judgment for employer on failure to accommodate claims based on denial of religious exemption to vaccine requirement on undue hardship grounds); *Aukamp-Corcoran v. Lancaster Gen. Hosp.*, No. CV 19-5734, 2022 WL 507479, at *7 (E.D. Pa. Feb. 18, 2022) (summary judgment for employer with mandatory vaccine policy on undue hardship defense under Title VII).

The overwhelming medical and scientific evidence available when Sanofi US implemented the Vaccination Policy showed that COVID vaccines were safe and effective at reducing the risk of spread of the virus. Indeed, this proposition is now so well-established that the Federal Reporter is replete with statements to this effect. *See, e.g.*, *Doe v. Mills*, 16 F.4th 20, 32-33 (1st Cir. 2021) ("The COVID-19 vaccines protect against infection and lower the risk of adverse health consequences, including death, should a vaccinated person become infected. Vaccination also reduces a person's risk of transmitting COVID-19 to others."); *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced.").

Against that legal and factual backdrop, there can be no argument that the Vaccination Policy was anything but a reasonable and appropriate measure to ensure the safety of Sanofi US's facilities and operations in the middle of a public health emergency. Plaintiff's religious discrimination claims consequently fail on undue hardship grounds as a matter of law. The accommodation Plaintiff sought — to remain in her managerial position while unvaccinated against COVID-19 — would have required Sanofi US to place Plaintiff's colleagues at an unacceptable increased risk of danger from infection with a potentially fatal disease. *See, e.g.*,

*E.E.O.C. v. Oak-Rite Mfg. Corp.*, 2001 WL 1168156, at *14 (S.D. Ind. Aug. 27, 2001) ("Title VII does not require employers to test their safety policies on employees to determine the minimum level of protection needed to avoid injury."). Consequently, Sanofi US is entitled to dismissal of Plaintiff's religious discrimination claims.

**c. The Retaliation Claims Under Title VII and Chapter 151B Fail as a Matter of Law**

Moreover, to the extent that the FAC purports to bring a retaliation claim under Title VII or Chapter 151B, *see* FAC at 4-5, ¶¶ 18-22, that claim fares no better. To make out such a claim, Plaintiff must show: (1) that she engaged in activity protected by the statute; and (2) a causal link between the protected activity and an adverse employment action. *See Sisco v. DLA Piper LLP*, 833 F. Supp. 2d 133, 147 (D. Mass. 2011) (*quoting Rivera-Colón v. Mills*, 635 F.3d 9, 12 (1st Cir. 2011)). The FAC, though, does not allege that Plaintiff was terminated because she engaged in any protected activity.[10] Instead, Plaintiff alleges that she suffered from supposed "retaliation" because she "refused to inject the COVID vaccine[,]" *viz.*, she continued to remain non-compliant with the Vaccination Policy. FAC at 4, ¶ 21. Nowhere does the FAC allege (nor could it, consistent with Fed. R. Civ. P. 11) that Sanofi US decided to implement the Vaccination Policy in retaliation against Plaintiff,[11] or that Sanofi US terminated only those workers who requested religious exemptions for non-compliance with the Vaccination Policy. *See Together Emps.*, 573 F. Supp. 3d at 444 (finding plaintiffs were unlikely to succeed on merits of retaliation claims where the "consequences for non-compliance are based on the employees' vaccination status, not whether or not they applied for an exemption (and not on their religion or disability)") (internal quotation

[10] *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 107 (1st Cir. 2015) (to state a claim for retaliation, a plaintiff must show that she engaged in protected activity).

[11] To the contrary, the Vaccination Policy was in place *before* Plaintiff submitted her request for a religious exemption from that policy and was hired in reliance on compliance.

marks omitted); *Lundstrom v. Contra Costa Health Servs.*, No. 22-CV-06227-CRB, 2022 WL 17330842, at *6-7 (N.D. Cal. Nov. 29, 2022) (granting motion to dismiss ADA retaliation claim where employee was terminated for failure to comply with employer's COVID vaccination policy; concluding that it was "not reasonable to infer that there was a causal connection" between any protected activity and termination) (quotation marks and citation omitted); *see also Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828-29 (1st Cir. 1991) (observing that retaliation provisions under federal anti-discrimination statutes "do not clothe the complainant with immunity for past and present inadequacies") (internal quotation marks omitted).

Simply put, Plaintiff's failure to comply with a condition of her employment is not protected activity, and her termination for that non-compliance is not unlawful retaliation.

## CONCLUSION

For all of the foregoing reasons, Sanofi US respectfully requests that this Court grant its Motion to Dismiss, and enter an order dismissing the FAC with prejudice.

Respectfully submitted,

SANOFI-AVENTIS US, LLC,

By its attorneys,

*/s/ Christopher W. Kelleher*

Kristin G. McGurn (BBO No. 559687)
kmcgurn@seyfarth.com
Christopher W. Kelleher (BBO No. 705508)
ckelleher@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
Telephone: (617) 946-4800
Telecopier: (617) 946-4801

## CERTIFICATE OF SERVICE

I, Christopher W. Kelleher, certify that on May 19, I caused a true and accurate copy of the foregoing document to be filed and uploaded to the CM/ECF system.

*/s/ Christopher W. Kelleher*____________
Christopher W. Kelleher