**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **CORRINE M. DEVITT,**<br>**Plaintiff,**<br>**v.**<br>**SANOFI-AVENTUS US, LLC,**<br>**Defendant.** | **Civil Action No.: 4:23-cv-10516-MRG** |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

The Defendant, Sanofi-Aventus US, LLC (hereinafter, the "Defendant") has moved, pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Plaintiff's First Amended Complaint in its entirety and with prejudice. The Plaintiff, Corrine M. Devitt (hereinafter, the "Plaintiff") opposes Defendant's Motion and submits it must be denied in its entirety.

## PREMILINARY STATEMENT

In the instant matter, one important fact must be kept in mind: Being vaccinated with the COVID-19 vaccine does not, in any respect, prevent a person from spreading the disease to another person. Vaccination neither prevents a person from contracting the disease nor in spreading the disease. Any claim otherwise is a fraudulent claim. The most vaccination does is ameliorate the degree of illness a particular person suffers who contracts COVID-19.

The leading authority on the disease has been stating throughout the so-called COVID-19 pandemic that **being vaccinated does not prevent the spread of the disease**. The Federal Center for Disease Control and Prevention (hereinafter, the "CDC"), for example, again stated in their June 23, 2022 posting that "People who are vaccinated may still get COVID-19". The June

23rd update says that "When someone who is vaccinated with either a primary series or a primary series plus a booster does get infected with the virus that causes COVID-19, it is referred to as a "vaccine breakthrough infection".[1] More importantly, the CDC has consistently said that "People who get vaccine breakthrough infections **can spread COVID-19 to other people**." (emphasis in the original). The CDC, the national agency that presumably knows more about the spread of COVID-19 than any other entity, added:

> When more virus is circulating, more breakthrough infections will occur even when vaccination rates are high. Even if you are vaccinated, if you live in a *county with a high COVID-19 Community Level*, you and others in your community, whether vaccinated or not, should take more steps to protect yourself and others, like wearing a mask in indoor public places" (emphasis in the original).

In other words, the CDC appears to be indicating that the way to prevent spreading the COVID-19 is to wear a mask, to keep one's distance from others and maintain strict sanitary habits. **Being vaccinated has virtually no effect on preventing the spread of COVID-19**. One can be vaccinated and still contract the disease and spread it to others.

## STANDARD OF REVIEW

When deciding a motion to dismiss under Rule 12(b)(6), a court must "construe all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted." *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 70 (1st Cir. 2020).

"A judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

---

[1] As it were, internet searches indicate that millions of vaccinated persons have contracted the disease and some have even died as a result, however, the overwhelming majority purportedly suffer mild to moderate symptoms.

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

"A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"As a general rule, a court freely grants leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)." *Forbes v. Cnty. of San Diego*, Case No. 20-cv-00998-BAS-JLB, 4 (S.D. Cal. Mar. 4, 2021)

## ARGUMENT

### 1. The First Amended Complaint is Timely Because it Relates Back to the Original Complaint.

In *Defendant's Motion to Dismiss* at Page 1, the Defendant asks the Court to dismiss Plaintiff's Title VII claim because they allege it is untimely, since it was asserted in the First Amended Complaint (hereinafter, "FAC") well after ninety (90) days from the Equal Employment Opportunity Commission (hereinafter the "EEOC") letter. They then allege in their *Memorandum* that there has been a voluntary dismissal of the original Complaint. Defendant's entire argument is that the Title VII claim does not relate back to the original Complaint under the Civil Rules of Procedure. Simply put, however, Defendant is wrong.

To begin, the original Complaint and the FAC concern one issue: Defendant made an order that all their employees were mandated to take a COVID-19 vaccination, Plaintiff claimed a religious exemption to taking the vaccine, the Defendant summarily denied the exemption in violation of the constitutions and laws, and the Defendant fired Plaintiff for refusing to take the vaccine. Consequently, the state law torts in the original Complaint and the Title VII claims in the FAC arise out of the same set of facts.

Second, this action commenced in the Massachusetts courts and is only before this Court because Defendant removed it from the Commonwealth courts. The Commonwealth's rules pertaining to the amending of complaints ought to apply. When a claim arises under Massachusetts law, the Commonwealth's relation-back rules control rather than the Federal rules. *Ward v. Hercules*, 75 F.R.D. 455 (D.Mass. 1977).

Rule 15(c) of the Massachusetts Rules of Civil Procedure states:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading.

The plain language of Rule 15(c) states that amendments relate back to the original complaint whenever they "arose out of the conduct, transaction or occurrence" that was set forth in the original complaint. Without question, the FAC refers to the same conduct and issues, being fired for refusal to take the vaccine, as did the original complaint. Only the theories for relief were changed in the FAC. Consequently, the Defendant had timely notice and suffered no prejudice.

Third, jurisprudence supports Plaintiff's position relative to interpretation of relation-back amendments to an original Complaint. *See, e.g. Abernathy v. Dewey*, 196 F.Supp.3d 157,

165-166 (D.Mass. 2016) (granting permission to add new claim after statute of limitations expired because new claim arose out of same conduct, transaction or occurrence stated in original complaint); *One Beacon Ins. Co. v. Electrolux*, 223 FRD 21, 25 (D.Mass. 2004) (allowing amendment under relation-back rule where claims arose out of occurrence that was subject matter of original claim, defendants had notice of claims well before expiration of limitations period, and defendants were not prejudiced); *NES Rentals v. Maine Drilling & Blasting, Inc.* 92 N.E.2d 291, 294-295 (Mass. 2013) (allowing a timely filed complaint to be amended to add a new claim even though statutory 90-day period for adding new claim had expired because it related back); *Bengar v. Clark Equipment Co.* 24 Mass.App.Ct 41, 46 (Mass. 1987) ("Fact that new action would be barred by statute of limitations is reason to permit amendment, and relation back of action to date of original complaint"); *Cimino v. Milford Keg, Inc.* 385 Mass. 323, 333 (Mass. 1982) (allowing new cause of action in amended complaint after statute of limitations had run because new cause of action arose out of same underlying transaction as stated in original complaint).

Indubitably, the original complaint claimed that Plaintiff was wrongfully fired for refusing to be injected with the COVID-19 vaccine and sought relief from the Defendant. The FAC makes the same exact claim based on the same exact facts and asks for the same exact relief. Under the rules of civil procedure and jurisprudence, the FAC relates back to the original complaint regardless of the status of the original Complaint.

## 2. Defendant is a State Actor for the Purposes of this Action.

In *Defendant's Motion to Dismiss* at Page 1, the Defendant claims they are not "state actors" for purposes of the constitutional violations claimed in the FAC. Again, the facts of this

case and jurisprudence demonstrate that the Defendant's claim lacks merit and therefore Defendant arguments in their Memorandum are inapposite.

The Plaintiff is not making freestanding constitutional claims against private entities but are making constitutional claims against the agents of state actors.

The crux of this action is based on the Defendant's policy to mandate that Plaintiff get injected with the COVID-19 vaccine. The Defendant did not originate this mandate but was **ordered** to create the policy per a mandate of the Federal Government. Thus, Defendant was carrying out a policy that originated from a state actor and which they were mandated to enforce.

The Center for Medicare and Medicaid Services (hereinafter, "CMS") mandated hospitals receiving Medicare and Medicaid funds to promulgate and enforce policies requiring their employees to be injected with the COVID-19 vaccine. *See*, CMS 3514-IFC. Defendant created the policy in question in this case because they were ordered to do so by the Federal Government. Defendant is a state actor because they are acting as agents for the state. Defendant receives Medicare and Medicaid funds and therefore are mandated to follow the policy of CMS.

Moreover, whether an entity is properly considered a state actor under Supreme Court caselaw is factually dependent. This Motion must be rejected until the parties have had an opportunity to engage in discovery.

Under the doctrine of state action, courts may, under certain circumstances, treat "the deed of an ostensibly private organization or individual" as if it were performed by the Federal government or a state government. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). "State action may be found if, … there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that

of the State itself.'" *Id.* (citing *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974)). State action may also be found under the public function test or the state compulsion test. *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992). Under any and all of these tests, Defendant is, and was, a state actor for purposes of constitutional torts. "[T]he public function test shows state action only when private actors are given powers (or perform functions) that are traditionally the exclusive prerogative of the State." *Id.* at 1131 (quotation marks omitted).

State action may exist when the government "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Private entities and individuals may be state actors when they act as "a willful participant in joint activity with the State or its agents," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)) (internal quotation marks omitted). Private entities and individuals may also be state actors when they "[have] been delegated a public function by the state." *Brentwood Acad.*, 531 U.S. at 296 (citations omitted). Additionally, "[c]onduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." *Evans v. Newton*, 382 U.S. 296, 299 (1966).

The United States Congress did not pass a statute requiring citizens to receive COVID-19 vaccines for the simple reasons that it lacked both the political will and the constitutional authority. Nonetheless, the Executive branch of the Federal government coerced Defendant into implementing its vaccine mandate. Exec. Order No. 14042 expressed the desire of the President and the Executive branch to require citizens to be vaccinated while, at the same time, acknowledging that neither they, nor Congress, had the authority to mandate this medical

procedure. The Federal government attempted to implement a broad-reaching vaccine mandate under its authority to regulate occupational health and safety. However, the Fifth Circuit Court of Appeals issued a decision that declared that the Federal Government lacked authority under the Occupational Safety and Health Act. *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Labor,* 17 F.4th 604, 617 (5th Cir. 2021); 29 U.S.C. § 651 *et seq.* This view was affirmed by the Supreme Court before Exec. Order 14042 became effective. *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.,* 142 S. Ct. 661, 665–66 (2022).

Instead of complying with the limitations imposed by the United States Constitution, the President and the Executive branch of the United States government attempted a work-around; it created a "sword of Damocles" for a large sector of the citizenry: Either get vaccinated or suffer the extreme financial consequences of losing your job. As a result, it voluntarily and intentionally decided to lead the way and impose a vaccine mandate in an attempt to garner the support and favor of the Executive branch of the United States government, from whom it derives substantial funding.

Defendant receives so much of its funding from the Federal government, it is completely beholden to the Federal government. Defendant's conduct was so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon governmental action. Defendant was a willful participant in joint activity with the Federal government, in that it deliberately aided the Federal government in its efforts to influence Americans to receive COVID-19 vaccination by threatening their employment. *See*, Exec. Order No. 14043, 86 Fed. Reg. 50989 (Executive order mandating vaccination for federal employees, issued simultaneously to Exec. Order No. 14042).

Defendant has also violated Plaintiff's constitutional rights under the religion clause of the Constitution. Defendant violated Plaintiff's right to freedom of expression protected by the First Amendment by terminating Plaintiff because of their voiced opposition to the vaccine mandate. Defendant acted as an arm of the government.

The Free Exercise Clause of the First Amendment of the United States Constitution applies when government action "discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 532 (1993) (citations omitted). Under the Free Exercise Clause, "if the object of a law is to infringe upon or restrict practices because of their religious motivation, … it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Id.* at 533 (citations omitted). "Official action that targets religious conduct for distinctive treatment cannot be shielded by … facial neutrality," as "[t]he Free Exercise Clause protects against governmental hostility which is masked, as well as overt." *Id.* at 534.

Here, Defendant's vaccine mandate violated the Free Exercise Clause. Serving as an actor for the Federal Government, Defendant purposefully enacted their vaccine mandate to infringe upon or restrict the practices of its employees who objected to receiving the vaccine because of their religious beliefs.

Defendant's company-wide vaccine mandate was not justified by a compelling interest and Defendant also failed to narrowly tailor its implementation of a vaccine mandate by ignoring the natural immunity of the Plaintiff. Clearly, the Plaintiff was at least as unlikely to spread COVID-19 as individuals who consented to being vaccinated. At the time it terminated Plaintiff, and thereafter, Defendant had no scientific evidence that employees with natural immunity were

more likely to spread COVID-19 than employees who had been vaccinated. Defendant was aware that many scientists and the European Union acknowledged the obvious impact of natural immunity.

Defendant was aware, or should have been aware, at the time it terminated Plaintiff, that definitive scientific evidence was lacking that the vaccines prevent the spread of COVID-19. Rather, the scientific evidence establishes, at best, that the vaccines lessen the symptoms of COVID-19 and reduce the number of hospitalizations. To the extent that Defendant may have considered the "public health risk" posed by unvaccinated individuals, Defendant was not entitled, in the face of religious opposition to the vaccines, to override an individual's choice to risk the possibility of worse symptoms, death, and hospitalization for themselves, especially since there was no scientific evidence that the vaccine prevented the spread of the disease or the severity of the disease in others.

Pursuant to 42 U.S.C. § 2000bb-1(a), "[i]n general Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b)". The Religious Freedom Restoration Act ("RFRA") applies to Defendant as an actor for the federal government. 42 U.S.C. § 2000bb-2(1). Pursuant to 42 U.S.C. § 2000bb-1(b), "Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

Defendant's mandate violates the Fourteenth Amendment to the United States Constitution, which includes clearly established fundamental rights and liberty interests of personal autonomy and bodily integrity. *See*, e.g., *Griswold v. Connecticut*, 381 U.S. 479

(1965); *Roe v. Wade*, 410 U.S. 113 (1973) (reversed on other grounds); *Planned Parenthood v. Casey*, 505 U.S. 833 (1992); *Rochin v. California*, 342 U.S. 165 (1952); *Obergefell v. Hodges*, 576 U.S. 644 (2015); and the right to reject medical treatment, *Cruzan v. Director, Missouri Dep't Health*, 497 U.S. 261 (1990) and *Riggins v. Nevada*, 504 U.S. 127 (1992).

In modern jurisprudence, burdens upon fundamental rights require strict scrutiny. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). As mandated vaccinations are a substantial burden, Defendant must prove narrow tailoring to a compelling interest that justifies mandatory vaccinations. While the government may have a general interest in mitigating COVID-19, the following problems reveal no narrow tailoring to any compelling interest exists. Naturally acquired immunity from COVID-19 is as robust as vaccine-acquired immunity, so there is no compelling interest, nor any rational basis, in vaccinating or requiring the vaccination of those who have already had COVID-19.

Furthermore, even absent the fundamental rights at issue, the Defendant's mandate also violates the Fourteenth Amendment under modern rational basis scrutiny, since the mandate is unreasonable and has no real or substantial relationship towards protecting the public health, particularly as applied to those with robust natural immunity. The arms of the government may not irrationally single out one class of individuals for discriminatory treatment. The mandate irrationally singles out the convalescent and discriminates against them.

In deciding whether Substantive Due Process rights have been violated, a court must determine "that a person has a 'liberty interest' under the Due Process Clause." *Cruzan by Cruzan v. Dir. Missouri Dept. of Health*, 497 U.S. 261, 279 (1990).

When there exists a liberty interest, "whether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests."

*Id.* (citing *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982)). The Due Process Clause "forbids the government to infringe ... 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Glucksberg*, 521 U.S. 702, 721 (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

It is well-established that there exists a "constitutionally protected liberty interest in refusing unwanted medical treatment". *Cruzan*, 497 U.S. at 278; *see also,* e.g., *Jacobson v. Massachusetts*, 197 U.S. 11, 24-30 (1905) (recognizing this liberty interest in the context of a smallpox vaccine); *Washington v. Harper*, 494 U.S. 210, 221-222 (1990) (recognizing the liberty interest of a prisoner in refusing involuntary administration of antipsychotic medication). Courts have also recognized a constitutionally protected liberty interest in freedom from bodily restraint. *See,* e.g., *Youngberg*, 457 U.S. at 316.

It is also well-established that "the government may not deny a benefit to a person because he exercises a constitutional right." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013) (citations and quotations marks omitted). The Unconstitutional Conditions Doctrine forbids "the government from coercing people into giving [ ] up" "the Constitution's enumerated rights." *Id.* (in the context of the Takings Clause of the Fifth Amendment); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (in the context of freedom of speech under the First Amendment); *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 269 (1974) (in the context of the right to travel under the Fourteenth Amendment).

Defendant violated the Unconstitutional Conditions Doctrine (*Koontz,* 570 U.S. 595 at 604) through its vaccine mandate. Defendant forced Plaintiff to choose between her employment and her constitutionally protected interest in refusing medical treatment and maintaining bodily integrity.

At the time of Plaintiff's terminations, there were no vaccines being administered in the United States that were fully approved by the United States Food and Drug Administration (hereinafter, the "FDA"). Rather, the FDA issued Emergency Use Authorizations for several vaccines.

Moreover, the Plaintiff in this case opposed Defendant's decision to impose a vaccine mandate without exempting those who claimed religious or medical reasons for opposing the vaccine mandate. Plaintiff expressed her opposition to Defendant's vaccine mandate and articulated the contention that it violated their religious freedoms and/or that they were entitled to a medical exemption. Prior to terminating Plaintiff, Defendant was aware of Plaintiff's opposition to the vaccine mandate and Plaintiff's contentions regarding religious and disability discrimination.

Defendant retaliated against Plaintiff by terminating her because she expressed her opposition to the vaccine mandate and because she opposed imposition of such a mandate based on religious and disability discrimination arguments and contending that it violated Title VII.

### 3. **Defendant Violated Title VII and Chapter 151B.**

Next, in *Defendant's Motion to Dismiss* at Page 2, the Defendant claims that the Plaintiff's Title VII and Chapter 151B fail because of insufficient "religious beliefs" specifications in the FAC and that accommodating Plaintiff's religious belief would have imposed an undue hardship on Defendant.

To begin, the FAC specifically demonstrates that Plaintiff's refusal to be vaccinated was based on a "deeply held religious belief". *Id.* ¶ 8. Plaintiff presented her religious belief to the Defendant. *Id.* ¶ 11. Defendant is aware of Plaintiff's religious beliefs and have not challenged that she has a deeply held religious belief. Granting her exemption from taking flu shots because

they conflicted with her religious beliefs. *Id.* ¶ 12. Despite recognizing in the past that Plaintiff's religious beliefs were sincere and that these beliefs prevented her from taking vaccines, Defendant arbitrarily and capriciously denied Plaintiff an exemption to take the COVID vaccine. *Id.* ¶¶ 13-14.

Thus, it is ingenuine at best for Defendant to now claim that there's insufficient information in the FAC for them to discern anything about Plaintiff's religious beliefs. The Defendant is fully aware of Plaintiff's religious beliefs and found them sufficient on previous occasions to exempt her from being injected with vaccines.

Moreover, the Defendant failed to recognize in the "legal standards" portion of their *Memorandum* that, in a Rule 12 Motion, a court accepts as true all well-pleaded allegations in the complaint and "construes reasonable inferences in the plaintiff's favor." *Jeannite v. Wright*, No. 22-11060-PBS (D.Mass. 2023). At the very least, the Court here can construe that Plaintiff had a sincerely held religious belief that warranted exemptions from vaccines since Defendant had previously recognized such exemption for Plaintiff. Moreover, the Court can equally construe from the pleadings that Defendant is well-aware of the basis of Plaintiff's religious beliefs since Plaintiff has litigated this issue with Defendant on several occasions.

Second, Defendant claims that had it granted Plaintiff a religious exemption it would have created an "undue hardship" on their business.

This aspect of the defense is, of course, fact-driven, and is not amenable at this stage of the proceedings for resolution without having facts to base a decision upon. In other words, Defendant could have simply accommodated Plaintiff's religious exemption by allowing her to wear a mask while at work and continue to be frequently tested. As it were, wearing a mask and

being tested was sufficient before the mandatory vaccination policy was put into effect. Wearing masks and being frequently tested had no effect on Defendant's business before the mandatory vaccination policy.

Also, pursuant to the First Circuit Court of Appeals recent decision in Lowe v. Mills 22-1710 (1st Cir. 2023), if the Defendant granted Medical Exemptions to "any of its employees" it cannot claim "undue hardship", for failing to accommodate Religious Exemptions.

Additionally, the Defendant has failed to identify in their *Memorandum* how granting Plaintiff a religious exemption by allowing her to wear a mask and be frequently tested would have created an undue hardship on their business. It did not impact their business in any manner prior to the mandatory vaccination policy.

Again, as noted in the preliminary statement, the CDC has consistently stated that the best way to prevent the spread of COVID-19 is to wear a mask and maintain sanitary conditions. Being vaccinated has virtually no effect on spreading the disease. Vaccinated people also spread the disease.

In sum, the Defendant has failed to show in any manner that granting Plaintiff a religious exemption would have caused their business an "undue hardship." The scientific evidence and the leading authorities on COVID-19 vaccination have all pointed to the fact that being vaccinated does not prevent the spread of the disease and that the most effective means of preventing the spread is to wear a mask and maintain sanitary conditions.

4. **Defendant Retaliated Against Plaintiff for Exercising Her Constitutional Rights.**

Finally, Defendant claims that it did not violate Title VII or Chapter 151B by retaliating against Plaintiff because she refused to take the vaccine because of her sincerely held religious beliefs. See *Defendant's Motion to Dismiss* at Page 1.

Title 42 USC § 2000e-2 (a)(1) states in part that its unlawful for an employer to "discharge any individual … because of such individual's … religion." Chapter 151B of MGL makes it unlawful for an employer to discharge an employee because of a "religious creed". *Id.* 1. It is also unlawful for an employer to condition a person's continued employment by forcing such employee to "violate or forego the practice of her creed or religion as required by that creed or religion". *Id.* 1A. Moreover, the Constitution forbids the Government from interfering in a person's free exercise of their religion; in this case, the mandatory vaccination policy handed down from the Government to its agents, the Defendant, that was in contradiction of Plaintiff's religious practice.

The statutes in question protect an employee from being discharged because of their religious beliefs. Defendant keeps attempting to distinguish between the mandatory vaccination policy and Plaintiff's sincerely held religious beliefs, arguing, in effect, that Plaintiff's religious beliefs had nothing to do with her discharge, but her refusal to take the vaccine is what resulted in her discharge. This argument fails. Plaintiff did not take the vaccine because her religion forbade her to take vaccines. Defendant had recognized Plaintiff's sincerely held religious belief in the past and deferred to it. Whether it was Plaintiff's religious beliefs that led to her discharge, not her refusal to take the vaccination, is a genuine issue of material fact, for the trier of fact to decide. The Plaintiff submits her religious beliefs were not, and are not, "bogus", as formerly recognized by the Defendant. The religious beliefs and refusal to be vaccinated are thus

intricately entwined in this case and cannot be separated. Had not Plaintiff been compelled by her religious beliefs to refuse the vaccination then this case would not be before the bar.

**CONCLUSION**

WHEREFORE, in the interests of justice, and based upon the above reasons, the Plaintiff respectfully submits that the Defendant's Motion to Dismiss must be denied.

**LOCAL RULE 7.1 CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), the undersigned counsel hereby certifies that counsel for the Plaintiff has conferred with counsel for the Defendant and attempted in good faith to resolve or narrow the issues presented in this motion.

*/s/ Richard C. Chambers, Jr., Esq.*
Richard C. Chambers, Jr., Esq.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(d), Plaintiff believes that oral argument may assist this Honorable Court in deciding this motion and thus request oral argument.

Respectfully submitted,
The Plaintiff,
Corrine M. Devitt,
By her attorneys,

DATED: June 2, 2023

*/s/ Richard C. Chambers, Jr., Esq.*
Richard C. Chambers, Jr., Esq.
BBO#: 651251
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 363-1773
Fax: (781) 581-8449
Email: Richard@chamberslawoffice.com

DATED: June 2, 2023

*/s/ Joseph Spinale., Esq.*
Joseph Spinale, Esq.
BBO#: 548547
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 838-1411
Fax: (781) 581-8449
Email: Joe@chamberslawoffice.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

DATED: June 2, 2023

*/s/ Richard C. Chambers, Jr., Esq.*
Richard C. Chambers, Jr., Esq.