Exhibit 3

# Exhibit 3

2023 WL 4907617
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Patricia MCENTEE, Christine Gearin, Julia Carlson, Michelle Provitola, Julie DiGirolamo, Dorothy Clarke, Jeanne Arsenault, Stacey Barnes, Marco Buzzanga, Donna Ciulla, Jennifer Jasilewicz, Lauren Mello, Erika Cardinale, Jennifer Cordy, Lauren Hetrick, Mariam Momjian, Patricia Murphy, Rachel Soucia, Felicia Dela Cruz, Angela Chandler, Mary Dickens, Desiree Letellier, Mary O'Connor, Brooke Gromyko, Mirlene Lucas, and Amy Durette, Plaintiffs,
v.
BETH ISRAEL LAHEY HEALTH, INC., Beth Israel Deaconess Hospital-Plymouth, Inc., Northeast Hospital Corporation, Beth Israel Deaconess Medical Center, Inc., Winchester Hospital, Beth Israel Lahey Health Primary Care, Inc., Mount Auburn Hospital, and Northeast Professional Registry of Nurses, Inc., Defendants.

No. 22-cv-11952-DLC
|
Signed August 1, 2023

**Synopsis**
**Background:** Healthcare professionals brought action against healthcare facilities after their termination following their refusal, ostensibly on religious grounds, to comply with facilities' mandatory vaccination policy in response to COVID-19 pandemic, asserting claims of civil assault under Massachusetts law, violation of Equal Protection Clause of United States Constitution, and violation of their substantive and procedural due process rights under Constitution and Massachusetts Declaration of Rights. Facilities moved to dismiss for failure to state a claim.

**Holdings:** The District Court, Donald L. Cabell, United States Magistrate Judge, held that:

[1] professionals failed to allege any objectively menacing conduct from facilities, and thus failed to state a claim for assault;

[2] professionals failed to allege facts showing imminent apprehension of harm or offensive conduct from vaccination policy, and thus failed to state a claim for assault;

[3] professionals failed to plead state action on part of facilities, and thus failed to state a claim for violation of their rights under Equal Protection Clause;

[4] unsupported allegations of professionals were not sufficient to make facilities' promulgation of their mandatory vaccination policy a state action;

[5] professionals failed to allege facts showing vaccination policy interfered with a constitutional right, and thus failed to state a claim for violation of their due process rights; and

[6] professionals failed to adequately allege that vaccination policy interfered with a constitutional right through threats, intimidation, or coercion, and thus failed to state a claim for violation of their due process rights.

Motion granted.

West Headnotes (23)

**[1]** **Federal Civil Procedure** Insufficiency in general

In deciding a motion to dismiss for failure to state a claim, a court may not disregard properly pled factual allegations in the complaint even if actual proof of those facts is improbable; rather, the court's inquiry must focus on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Fed. R. Civ. P. 12(b)(6).

**[2]** **Assault and Battery** Assault in general

 © 2023 Thomson Reuters. No claim to original U.S. Government Works. 

Under Massachusetts law, an "assault" is an act which puts another in reasonable apprehension of imminent harmful or offensive contact, that is, an attempted battery or an immediately threatened battery.

[3] **Assault and Battery** Injury or Harm

To have committed attempted battery assault under Massachusetts law, the defendant must have attempted to cause physical harm to the victim.

[4] **Assault and Battery** Intent to cause injury or harm

To have committed threatened battery assault under Massachusetts law, the defendant must have engaged in objectively menacing conduct with the intent to cause apprehension of imminent physical harm.

[5] **Assault and Battery** Actual fright or apprehension

**Assault and Battery** Actual fright or apprehension

Distinction between civil and criminal assault under Massachusetts law is that criminal assault does not require proof of the victim's actual fear or apprehension of harm; rather, criminal assault depends entirely upon what the wrongdoer does and intends and not at all upon what the other apprehends, or does not apprehend.

[6] **Assault and Battery** Fear or Apprehension of Harm

Healthcare professionals formerly employed by healthcare facilities, who alleged facilities' mandatory COVID-19 vaccination policy forced them to choose between being vaccinated or being terminated, failed to allege any objectively menacing conduct with the intent to cause apprehension of imminent physical harm, and thus failed to state a claim for civil assault against facilities under Massachusetts law; beyond asserting conclusorily that the facilities' actions constituted a threat of bodily harm, the professionals' complaint failed to identify any "objectively menacing" conduct the facilities engaged in.

[7] **Assault and Battery** Fear or Apprehension of Harm

Under Massachusetts law, the threatened psychological or emotional harm of termination from one's job is legally insufficient to constitute a civil assault.

[8] **Assault and Battery** Fear or Apprehension of Harm

Healthcare professionals formerly employed by healthcare facilities failed to allege facts showing an imminent apprehension of harm or offensive conduct from facilities' mandatory vaccination policy for COVID-19, and thus failed to state a claim for civil assault under Massachusetts law, where professionals had a period of two months or more before they were required by the vaccination policy to choose between being vaccinated or terminated.

[9] **Civil Rights** Substantive or procedural rights

**Civil Rights** Actions directly under Constitution

Litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize § 1983, which provides a method for vindicating federal rights elsewhere conferred, but does not independently confer any substantive rights. 42 U.S.C.A. § 1983.

[10] **Civil Rights** Employment practices

Healthcare professionals formerly employed by healthcare facilities failed to plead state action on the part of facilities, and thus failed to state a claim, purportedly under § 1983, for a violation

of their rights under Equal Protection Clause, arising from professionals' termination following their refusal, ostensibly on religious grounds, to comply with facilities' mandatory vaccination policy for COVID, where complaint identified each facility as a private, i.e., non-governmental, corporation, and nowhere suggested that any facility acted under color of state law or on behalf of a state. U.S. Const. Amend. 14; 42 U.S.C.A. § 1983.

[11] **Civil Rights** Nature and elements of civil actions

Plaintiff proceeding under § 1983 must allege facts sufficient to show that the defendant acted under color of state law and deprived the plaintiff of a federal constitutional or statutory right. 42 U.S.C.A. § 1983.

[12] **Civil Rights** Color of Law

For the defendant to have acted under color of state law, as required for an action against the defendant under § 1983 for an alleged deprivation of a federal constitutional or statutory right, its actions must be "fairly attributable to the State," meaning that it must be fair to characterize the defendant as a state actor. 42 U.S.C.A. § 1983.

[13] **Constitutional Law** Federal government

**United States** Constitutional Violations; Bivens Claims

Insofar as a plaintiff alleges that a defendant acted on behalf of the federal government in depriving the plaintiff of a federal constitutional or statutory right, the plaintiff's claim properly arises under the Fifth Amendment Due Process Clause rather than the Fourteenth Amendment, and the proper cause of action would be that provided by *Bivens*, rather than § 1983, because *Bivens* requires a plaintiff to allege that the defendant is a federal agent acting under the color of federal law. U.S. Const. Amends. 5, 14; 42 U.S.C.A. § 1983.

[14] **United States** In general; individual or official capacity

Receipt of federal funding is insufficient to transform a private party into a state actor, as would be required to maintain a *Bivens* action against the party for the deprivation of a federal statutory or constitutional right.

[15] **Civil Rights** Color of law; state action

Unsupported allegations of healthcare professionals formerly employed by healthcare facilities that facilities voluntarily extended governmental vaccine mandates for COVID-19 to their own employees to curry favor with the executive branch of the Federal Government were not sufficient to make facilities' promulgation of their mandatory vaccination policy a state action, and thus was insufficient to state a claim, purportedly under § 1983, for a violation of professionals' rights under Equal Protection Clause, arising from their termination following their refusal, ostensibly on religious grounds, to comply with vaccination policy. U.S. Const. Amend. 14; 42 U.S.C.A. § 1983.

[16] **Civil Rights** Public support, license, or regulation; utilities and monopolies

Enacting a policy to comply with state regulations alone would not necessarily render the defendants state actors, as would be required for an action against the defendants for an alleged deprivation of a federal constitutional or statutory right.

[17] **Civil Rights** Rights Protected

**Civil Rights** Right of Action; Nature and Grounds

Massachusetts Civil Rights Act (MCRA) is not a source of substantive rights but only a mechanism for obtaining relief from the interference, or attempted interference, with

 © 2023 Thomson Reuters. No claim to original U.S. Government Works. 

rights conferred by Federal or Massachusetts law. Mass. Gen. Laws Ann. ch. 12, § 11I.

**[18]** **Civil Rights** Purpose and construction in general

**Civil Rights** Right of Action; Nature and Grounds

Massachusetts Civil Rights Act (MCRA) was enacted to provide a state remedy for civil rights violations and is coextensive with § 1983, except that § 1983 requires state action whereas the MCRA does not; accordingly, a plaintiff need not allege that the defendants were state actors to set out a plausible MCRA claim. 42 U.S.C.A. § 1983; Mass. Gen. Laws Ann. ch. 12, § 11I.

**[19]** **Civil Rights** Threats, intimidation, and harassment

Claim under the Massachusetts Civil Rights Act (MCRA) requires proof of (1) an existing right secured by the Constitution or laws of the United States or of Massachusetts, (2) interference or attempted interference with that secured right, and (3) that the interference or attempted interference was by threats, intimidation, or coercion. Mass. Gen. Laws Ann. ch. 12, § 11I.

**[20]** **Civil Rights** Discharge or layoff

Healthcare professionals formerly employed by healthcare facilities failed to allege facts showing interference or attempted interference with their purported constitutional right to be free from unwanted medical intervention from facilities' mandatory vaccination policy for COVID-19, and thus failed to state a claim under Massachusetts Civil Rights Act (MCRA) for violation of their substantive and procedural due process rights, under Massachusetts Declaration of Rights, arising from their termination following their refusal to comply with vaccination policy, where professionals were never physically compelled to receive a vaccine, but rather were given an option between vaccination and termination and were terminated only after declining to be vaccinated. Mass. Const. pt. 1, art. 10; Mass. Gen. Laws Ann. ch. 12, § 11I.

**[21]** **Civil Rights** Discharge or layoff

Termination of employment does not constitute interference with a constitutional right, as required to state a claim under the Massachusetts Civil Rights Act (MCRA), where the employee was at-will. Mass. Gen. Laws Ann. ch. 12, § 11I.

**[22]** **Civil Rights** Discharge or layoff

Healthcare professionals formerly employed by healthcare facilities failed to adequately allege that facilities' mandatory vaccination policy for COVID-19 interfered with their purported constitutional right to be free from unwanted medical intervention through threats, intimidation, or coercion, and thus failed to state a claim under Massachusetts Civil Rights Act (MCRA) for violation of their substantive and procedural due process rights, under Massachusetts Declaration of Rights, arising from their termination following their refusal to comply with vaccination policy, where the only "threat" alleged by the professionals was their threatened, and later actual, loss of employment. Mass. Const. pt. 1, art. 10; Mass. Gen. Laws Ann. ch. 12, § 11I.

**[23]** **Civil Rights** Adverse actions in general

**Civil Rights** Discharge or layoff

Threatened or actual loss of at-will employment is not coercive in the relevant sense, as would be required to constitute an interference with a secured right under state or Federal law that was actionable under the Massachusetts Civil Rights Act (MCRA). Mass. Gen. Laws Ann. ch. 12, § 11I.

**Attorneys and Law Firms**

Richard Cullin Chambers, Jr., Chambers Law Office, Lynnfield, MA, for Plaintiffs Patricia McEntee, Christine Gearin, Julia Carlson, Michelle Provitola, Julie DiGigirolamo, Dorothy Clarke, Donna Ciulla, Jennifer Jasilewicz, Lauren Mello, Erika Cardinale, Jennifer Cordy, Lauren Hetrick, Mariam Momjian, Patricia Murphy, Rachael Soucia, Felicia Dela Cruz, Angela Chandler, Mary Dickens, Disiree Letellier, Mary O'Connor, Brooke Gromyko, Mirlene Lucas, Amy Durette.

Joseph Spinale, Richard Cullin Chambers, Jr., Chambers Law Office, Lynnfield, MA, for Plaintiffs Jeanne Arsenault, Stacey Barnes, Marco Buzzanga.

Scott A. Roberts, Hirsch Roberts Weinstein LLP, Boston, MA, for Defendants.

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

CABELL, UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION

***1** In 2021, defendant Beth Israel Lahey Health, Inc., and several of its affiliated health care facilities (collectively "the defendants") implemented a mandatory vaccination policy for employees in response to the COVID-19 pandemic. The plaintiffs are all former employees who refused to be vaccinated, ostensibly on religious grounds, and were thereafter terminated. They in turn brought this suit, asserting claims for assault (Count I); violation of the U.S. Constitution's Fourteenth Amendment equal protection clause (Count II); violation of their substantive and procedural due process rights under the U.S. Constitution and the Massachusetts Declaration of Rights (Count III); and employment discrimination in violation of M.G.L. c. 151 and Title VII[1] (Count IV).

The defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Counts I, II, and III for failure to state a viable claim; the plaintiffs oppose. (Dkt. Nos. 14, 20). For the reasons explained below, the court grants the motion to dismiss.

## II. RELEVANT BACKGROUND

When considering a motion to dismiss, the court accepts as true all non-conclusory factual allegations in the operative complaint and draws all reasonable inferences therefrom in favor of the plaintiffs. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). Consistent with that standard, the following facts are drawn from the plaintiffs' amended complaint, (Dkt. No. 4).

The plaintiffs were healthcare professionals working at the defendants' healthcare facilities. (*Id.*, ¶ 45). During the COVID-19 pandemic, the defendants' facilities were deluged with patients suffering from COVID-19. (*Id.*, ¶ 43). To protect their employees, patients, and visitors from the infection and spread of COVID-19, the defendants issued multiple policies, including a mandate that all employees wear masks. (*Id.*, ¶¶ 42, 44).

In August 2021, the defendants announced a "Mandatory Vaccine Policy" (the "Policy") requiring all employees to have received or commenced a two-dose COVID-19 vaccine regimen by October 31, 2021. (*Id.*, ¶ 47). The Policy would place those employees who had not received at least one vaccine dose by that date on a 14-day unpaid administrative leave. (*Id.*, ¶ 48). If those employees still failed to comply with the Policy by the end of the administrative leave, the defendants would deem those employees to have voluntarily terminated their employment. (*Id.*, ¶ 49). The Policy allowed employees to apply for certain exemptions by October 1, 2021, including an exemption based on sincerely held religious beliefs (a "religious exemption"). (*Id.*, ¶ 50).

Each of the plaintiffs applied for religious exemptions before October 1, 2021, except for two (Lauren Mello and Brooke Gromyko) who applied for religious exemptions after October 1.[2] Each of the plaintiffs requested alternate accommodations of working remotely, wearing masks, and periodic testing. The defendants denied each of the plaintiffs' requests for religious exemptions and accommodations, placed all plaintiffs on administrative leave under the Policy, and subsequently terminated each plaintiff's employment on various dates between November 5, 2021, and April 25, 2022. (*Id.*, ¶¶ 56-113).

## III. LEGAL STANDARD

***2** **[1]** To survive a motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955,

167 L.Ed.2d 929 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ocasio-Hernandez*, 640 F.3d at 12. The court may not disregard properly pled factual allegations in the complaint even if actual proof of those facts is improbable. *Id.* Rather, the court's inquiry must focus on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. *Id.* at 13.

## IV. DISCUSSION

### A. Count I: Assault

**[2]** **[3]** **[4]** **[5]** Count I alleges common law assault. (Dkt. No. 4, ¶ 127). Under Massachusetts law, an assault is "an act which puts another in reasonable apprehension of imminent harmful or offensive contact, that is, an attempted battery or an immediately threatened battery." *Conley v. Romeri*, 60 Mass.App.Ct. 799, 806 N.E.2d 933, 939 n.6 (2004) (citing Restatement (Second) of Torts § 21 (1965)). For attempted battery assault, the defendant must have attempted to cause physical harm to the victim. *Commonwealth v. Gorassi*, 432 Mass. 244, 733 N.E.2d 106, 110 (2000) (citing *Commonwealth v. Richards*, 363 Mass. 299, 293 N.E.2d 854, 858 (1973)).[3] For threatened battery assault, the defendant must have engaged in "objectively menacing" conduct with the intent to cause apprehension of imminent physical harm. *See id.* (citing *Commonwealth v. Musgrave*, 38 Mass.App.Ct. 519, 649 N.E.2d 784, 787 n.7 (1995)); *see also Commonwealth v. Delgado*, 367 Mass. 432, 326 N.E.2d 716, 719 n.3 (1975) (quoting Restatement (Second) of Torts § 31 (1965)) ("Words do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person."). As the complaint alleges that "[t]he actions of the Defendants placed the Plaintiffs in fear and apprehension of imminent bodily harm," the plaintiffs rely on the threatened battery theory. (Dkt. No. 4, ¶ 127). Indeed, this is the *only* allegation in the complaint specifically identified as relevant to Count I. (*Id.*, ¶¶ 126-27).

**[6]** The defendants contend that Count I fails to state a viable claim for assault because, broadly speaking, the complaint fails to allege facts showing the defendants acted intentionally to harm the plaintiffs, or that the plaintiffs actually had a fear of being harmed.[4] The court essentially agrees. Beyond asserting conclusorily that the defendants' actions constituted a threat of bodily harm, the complaint fails to identify any "objectively menacing" conduct the defendants engaged in and fails moreover to allege facts showing that the defendants acted to put the plaintiffs in fear of imminent physical harm, or that the plaintiffs were indeed in fear of such harm. Implicitly recognizing as much, the plaintiffs in their opposition identify the defendants' assaultive conduct as "trying to force Plaintiffs to be vaccinated under the penalty of losing their jobs if they did not," with the concomitant threat of physical harm being described as "sticking a syringe into Plaintiffs' arms, likened to battery, and injecting an unknown substance into their body, the safety of which is yet still unknown." (Dkt. No. 20, p. 11; p. 11, n.1). This characterization fails to rectify the noted pleading deficiencies.

***3** Even assuming the complaint were deemed to adequately plead that the plaintiffs felt pressured to be vaccinated, it still fails to allege facts showing that the plaintiffs were additionally placed in reasonable apprehension of imminent harmful or offensive contact. True, it alleges that employees were forced to choose between being vaccinated or terminated, but the threat of termination is a psychological rather than physical harm and thus does not constitute assault. *See Gorassi*, 733 N.E.2d at 110 ("[W]hat is essential is that the defendant intended to put the victim in fear of imminent bodily harm, not that the defendant's actions created a generalized fear or some other unspecified psychological harm in the victim."). Not surprisingly, other courts have rejected the notion that a termination based on a refusal to be vaccinated may constitute a common law assault. *See Reed v. Tyson Foods, Inc.*, No. 21-cv-01155-STA-jay, 2022 WL 2134410, at *14 (W.D. Tenn. June 14, 2022) (dismissing assault claim where plaintiff employees were "free to accept or refuse the COVID-19 vaccine ... [and] pursue employment elsewhere"); *Johnson v. Tyson Foods, Inc.*, 607 F. Supp. 3d 790, 810 (W.D. Tenn. 2022) (same); *see also Reese v. Tyson Foods, Inc.*, No. 3:21-05087-CV-RK, 2021 WL 5625411, at *7 (W.D. Mo. Nov. 30, 2021) (finding assault claim unlikely to succeed on the merits where plaintiff admitted he was not physically forced to receive vaccine).

**[7]** **[8]** In short, Count I fails to state a viable claim for assault, both because it fails to identify any "objectively menacing" conduct from the defendants and because the threatened psychological or emotional harm of termination is legally insufficient to constitute an assault.[5]

### B. Count II: Violation of Equal Protection Rights

**[9]** Count II alleges that the defendants violated the plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment. (Dkt. No. 4, ¶¶ 129-32). "[A] litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). Section 1983 provides "a method for vindicating federal rights elsewhere conferred," but does not independently confer any substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). The court thus treats Count II as asserting a claim under section 1983.

**[10]** **[11]** **[12]** A plaintiff proceeding under § 1983 must allege facts sufficient to show that the defendant acted under color of state law and deprived the plaintiff of a federal constitutional or statutory right. *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4 (1st Cir. 2005). For the defendant to have acted under color of state law, its actions must be "fairly attributable to the State," meaning that it must be fair to characterize the defendant as a state actor. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). The defendants argue that the plaintiffs have failed to plead state action. The court agrees.

The amended complaint identifies each defendant as a private (i.e., non-governmental) corporation. (Dkt. No. 4, ¶¶ 28-36). Nowhere does it suggest that any defendant acted under color of state law or on behalf of a state. This deficiency alone warrants dismissal of Count II. *See Estades-Negroni*, 412 F.3d at 4. Even so, the court briefly addresses the arguments raised in the plaintiffs' opposition.

**[13]** The plaintiffs argue that the defendants were state actors because they were allegedly (1) "beholden" to and coerced by the federal government due to their receipt of significant federal funding; and were (2) complying with certain government policies (listed below) such that the defendants were working with the federal government to implement the government's broad-reaching vaccine mandate as a "work-around" to avoid constitutional limitations.[6] (Dkt. No. 20, pp. 3-6); *see* Exec. Order No. 14042, 86 Fed. Reg. 50985 (Sept. 9, 2021); Exec. Order No. 14043, 86 Fed. Reg. 50989 (Sept. 9, 2021); Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61555 (Nov. 5, 2021) ("the CMS Rule"). Neither of these theories persuades.

***4** **[14]** First, receipt of federal funding is insufficient to transform a private party into a state actor. *See Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 258 (1st Cir. 1994) (finding receipt of federal funds such as Medicare and Medicaid insufficient to establish private hospital as state actor); *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633, 639 (E.D. Ky. 2021) ("Private hospitals, no matter how much federal funding they may receive, are generally not state actors for purposes of constitutional questions."); *Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 446 (D. Mass. 2021) (noting that defendant hospital association was a private employer and not a state actor despite its receipt of federal funding and imposition of a COVID-19 vaccine mandate on its employees), *aff'd*, 32 F.4th 82 (1st Cir. 2022).

**[15]** **[16]** Second, an unsupported allegation that the defendants voluntarily extended governmental vaccine mandates to their own employees to curry favor with the Executive Branch of the Federal Government is not sufficient to make the promulgation of the Policy state action. To the extent the plaintiffs argue that the defendants created the Policy because the CMS Rule required them to do so, the CMS Rule was only published and became effective in November 2021, three months *after* the defendants announced the Policy, meaning that the defendants could not have "created the policy in question in this case because they were ordered to do so by the Federal Government." (Dkt. No. 20, p. 4). In any event, enacting a policy to comply with state regulations alone would not necessarily render the defendants state actors. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State.").

The plaintiffs do not allege any facts in the complaint suggesting that the defendants are state actors, and the allegations that they make for the first time in their opposition similarly fail to raise a plausible inference of state action. Accordingly, Count II fails to state a valid claim.

### C. Count III: Violation of Due Process Rights

In Count III, the plaintiffs assert violations of their substantive and procedural Due Process rights, citing the First, Fourth, and Fourteenth Amendments to the U.S. Constitution and Articles IV, X, XX, XXI, XXIX, and XXX of the Massachusetts Declaration of Rights. As discussed above, the plaintiffs must assert their federal constitutional claims under § 1983, and thus must show that the defendants acted under

color of state law. Because the plaintiffs do not adequately allege state action, their federal constitutional claims here are subject to dismissal.

**[17]** **[18]** **[19]** For the portion of Count III that relies on the Massachusetts Declaration of Rights, the proper cause of action is the Massachusetts Civil Rights Act ("MCRA"). M.G.L. c. 12, § 11I. Like § 1983, the MCRA is not a source of substantive rights but only a "mechanism for obtaining relief from the interference, or attempted interference, with rights conferred by Federal or Massachusetts law."[7] *Howcroft v. City of Peabody*, 51 Mass.App.Ct. 573, 747 N.E.2d 729, 745 (2001). The MCRA was enacted to provide a state remedy for civil rights violations and is "coextensive with 42 U.S.C. § 1983, except that [§ 1983] requires State action whereas [the MCRA] does not." *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 473 N.E.2d 1128, 1131 (1985). Accordingly, the plaintiffs need not allege that the defendants were state actors to set out a plausible MCRA claim. *Bell v. Mazza*, 394 Mass. 176, 474 N.E.2d 1111, 1115 (1985). Instead, a MCRA claim requires proof of (1) an existing right secured by the Constitution or laws of the United States or of Massachusetts, (2) interference or attempted interference with that secured right, and (3) "that the interference or attempted interference was by 'threats, intimidation or coercion.' " *Bally v. Northeastern Univ.*, 403 Mass. 713, 532 N.E.2d 49, 51-52 (1989).

***5** **[20]** The defendants argue that the plaintiffs fail to identify a requisite secured constitutional or legal right that was impacted here because the purported right the plaintiffs do identify -- the right "to be free from the invasion of bodily integrity and to be free from unwanted medical intervention" -- does not extend to a right to be free from compulsory vaccination. The court need not consider this argument because, even assuming the complaint correctly asserts a valid and relevant secured right, it fails for MCRA purposes to allege facts showing "interference or attempted interference" with that secured right.

**[21]** As discussed above, the plaintiffs were never physically compelled to receive a vaccine; rather, they were given an option between vaccination and termination and were terminated only after declining to be vaccinated. This matters because "termination of employment does not constitute 'interference' with a constitutional right where ... the employee was at-will."[8] *Nolan v. CN8*, No. 08-12154-RWZ, 2010 WL 3749466 at *3, 2010 U.S. Dist. LEXIS 99694 at *7 (D. Mass. Sept. 21, 2010), *aff'd*, 656 F.3d 71, 77 (1st Cir. 2011); *see Delmonte v. Laidlaw Env't Servs., Inc.*, 46 F. Supp. 2d 89, 93 (D. Mass. 1999) ("[A]n employer's threat of the loss of at-will employment does not constitute interference which is actionable under the MCRA."); *see also Korb v. Raytheon Corp.*, 410 Mass. 581, 574 N.E.2d 370, 372 (1991) (termination did not interfere with employee's right to free speech where employee made public comments inconsistent with employer's interests).

**[22]** **[23]** Further, even assuming the complaint were read to plead actual or attempted interference, the MCRA claim would still fail because the complaint does not adequately allege that the defendants interfered with the plaintiffs' rights through "threats, intimidation or coercion." The only "threat" the plaintiffs allege is their threatened, and later actual, loss of employment, but the threatened or actual loss of employment is "not coercive in the relevant sense under the MCRA." *Nolan v. CN8*, 656 F.3d 71, 77 (1st Cir. 2011); *see Delmonte,* 46 F. Supp. 2d at 93 (citing *Webster v. Motorola, Inc.*, 418 Mass. 425, 637 N.E.2d 203, 206 (1994)) ("[A]t-will employees are not entitled to their employment, and therefore do not, when threatened with its loss, reasonably suffer coercion or intimidation.").

In sum, Count III fails to plead a viable federal or state civil rights violation.

## V. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss Counts I, II, and III (Dkt. No. 14) is GRANTED.

### All Citations

--- F.Supp.3d ----, 2023 WL 4907617

Footnotes

1 The plaintiffs presumably refer to M.G.L. c. 151B, § 4 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

2 Gromyko applied for a medical exemption on or about September 3, 2021, and for a religious exemption on October 18, 2021. (Dkt. No. 4, ¶ 109). The complaint does not specify whether her request for a medical exemption was still pending when she submitted her request for a religious exemption.

3 Under Massachusetts law, civil assault is nearly identical to criminal assault. *See Ginsberg v. Blacker*, 67 Mass.App.Ct. 139, 852 N.E.2d 679, 683 n.7 (2006) (citing *Commonwealth v. Delgado*, 367 Mass. 432, 326 N.E.2d 716, 719 n.3 (1975)). The distinction between civil and criminal assault is that criminal assault does not require proof of the victim's actual fear or apprehension of harm. *Id.* (citing *Commonwealth v. Slaney*, 345 Mass. 135, 185 N.E.2d 919, 922 (1962)). Rather, criminal assault "depends entirely upon what the wrongdoer does and intends and not at all upon what the other apprehends, or does not apprehend." *Slaney*, 185 N.E.2d at 922. Courts in this district commonly cite to criminal assault cases to explain the elements of civil assault. *See, e.g.*, *Diaz v. Devlin*, No. 16-40039-TSH, 2019 WL 4804803 at *6, 2019 U.S. Dist. LEXIS 169730 at *15 (D. Mass. Sept. 30, 2019) (citing *Commonwealth v. Musgrave*, 38 Mass.App.Ct. 519, 649 N.E.2d 784, 787 (1995)); *O'Neil v. DaimlerChrysler Corp.*, 538 F. Supp. 2d 304, 317 (D. Mass. 2008) (citing *Gorassi*, 733 N.E.2d at 110); *Gouin v. Gouin*, 249 F. Supp. 2d 62, 69 (D. Mass. 2003) (citing *Gorassi*, 733 N.E.2d at 110).

4 Specifically, the defendants argue that Count I (1) does not allege that the defendants acted with the intent to cause or threaten a harmful or offensive contact with the plaintiffs; (2) does not allege that the defendants took any overt action towards making harmful or offensive contact with the Plaintiffs; (3) does not allege that the defendants engaged in conduct that a reasonable person would have recognized as intentionally threatening contact with the plaintiffs; and (4) fails to articulate any facts supporting the conclusory assertion that Plaintiffs actually had a fear or apprehension.

5 The complaint also fails to plead facts showing that any apprehension of harm or offensive conduct the plaintiffs might have felt was "imminent" where the plaintiffs knew in August 2021 that they had until the end of October, a period of two months or more, before they would need to choose between being vaccinated or terminated.

6 Strictly speaking, insofar as the plaintiffs allege that the defendants acted on behalf of the federal government, their claim properly arises under the Fifth Amendment rather than the Fourteenth Amendment. Additionally, the proper cause of action would be that provided by *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), rather than § 1983. Because *Bivens* requires a plaintiff to allege that the defendants "are federal agents ... acting under the color of federal law," *Camerano v. United States*, 196 F. Supp. 3d 172, 180 (D. Mass. 2016), the result here is the same whether the claim is analyzed under *Bivens* or § 1983.

7 To the extent that the plaintiffs assert their federal constitutional claims through the MCRA instead of § 1983, those claims fail for the same reason as their state constitutional claims, as discussed herein.

8 The court presumes that the plaintiffs were all employees at-will absent any indication to the contrary. *See Beaupre v. Seacoast Sales, Inc.*, 507 F. Supp. 3d 353, 361 (D. Mass. 2020) (Under Massachusetts law, [e]mployees are considered to be employed at will in the absence of a contract for a definite period of employment.")

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.