# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

CORRINE M. DEVITT,

     Plaintiff,

     v.

SANOFI-AVENTIS US, LLC

     Defendant.

Civil Action No.: 4:23-cv-10516-MRG

## MEMORANDUM & ORDER ON DEFENDANT'S
## MOTION TO DISMISS [ECF No. 15]

**GUZMAN, D.J.**

## I.    INTRODUCTION

Plaintiff-employee Corinne Devitt has sued Defendant-employer Sanofi-Aventis US, LLC ("Defendant" or "Sanofi") alleging that Sanofi wrongfully denied her request for a religious exemption to the COVID-19 employee vaccination policy and that, shortly afterwards, it retaliated by terminating her for failing to comply. [ECF No. 12 ¶ 10]. Sanofi moved to dismiss [ECF No. 15]; Plaintiff opposed that motion [ECF No. 18], and Sanofi replied, [ECF No. 22]. After hearing [ECF No. 23] and careful consideration, the motion to dismiss [ECF No. 15] was **GRANTED** by electronic order. [ECF No. 26].[1] This Memorandum provides the Court's legal analysis and reasoning for its rulings on the motion to dismiss.

---

[1] "District Judge Margaret R. Guzman: ELECTRONIC ORDER entered granting [] Motion to Dismiss. Defendant's motion to dismiss as to Count II and Count III is GRANTED with prejudice. Defendant's motion to dismiss Count I is GRANTED without prejudice and with leave to amend. An opinion setting forth the reasoning for the Court's decisions will follow in short order. (Castles, Martin) (Entered: 04/04/2024)" [ECF No. 26].

## II.    RELEVANT BACKGROUND

### a.  Factual Background

Plaintiff's amended complaint [ECF No. 12] is brief.  Unless otherwise noted, the following facts are taken from the amended complaint and are accepted as true for purposes of this motion.  Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).") (internal quotation marks and citation omitted).  All plausible inferences are made in Plaintiff's favor.  Id.

Plaintiff began her employment at Sanofi as a Cell Therapy Manager on February 7, 2022.  [ECF No. 12 ¶ 4].  Sanofi had a policy requiring all employees to become vaccinated against COVID-19.  [Id. ¶ 5].[2] This policy provided for the possibility of religious exemptions.  [Id. ¶ 6].  On December 22, 2021, and on January 4, 2022, Plaintiff engaged in interactive processes with Sanofi during which she requested a religious exemption.  [Id. ¶ 9].  On January 5, 2022, Plaintiff submitted a written request for a religious exemption.  [Id. ¶ 7].  Sanofi refused to approve the request and also refused to offer accommodations that were suitable to Plaintiff.  [Id. ¶ 10]. On February 14, 2022, Sanofi terminated Plaintiff for not complying with its vaccine policy.  [Id.]  Plaintiff seeks $2,000,000 in "general damages and costs" and for yet to be determined damages stemming from her emotional distress, embarrassment, humiliation, anxiety, sleeplessness, and trauma. [Id. at 6].  Plaintiff also seeks attorney's fees and costs.  [Id.]  Notably, the amended complaint is entirely silent on the nature of Plaintiff's alleged sincerely held religious belief.  It does, however, repeatedly allege that Sanofi "knew, or should have known that the COVID-19 vaccine did not prevent contracting nor spreading the disease." [Id. ¶¶ 22, 28, 34].[3]

---

[2] Sanofi has pointed out -- and Plaintiff has not disputed -- that it instituted its COVID-19 vaccine policy on November 21, 2021, which is *before* Plaintiff joined as an employee.  [ECF No. 16 at 4].

[3] Sanofi rightly points out that this is a secular argument against vaccination, and therefore, will not be considered by the Court in favor of a religious exemption. [ECF No. 16 at 4].

### b.  Procedural History

On February 4, 2022, before Plaintiff was terminated, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  [Id. ¶ 11].  The EEOC sent Plaintiff a "Right to Sue" letter on August 31, 2022.  [Id. ¶ 12].  The Court notes that Plaintiff's letter informed her that, under 42 U.S.C. § 2000e-5(f)(1), plaintiffs must bring suit within ninety (90) days of their receipt of notice of an EEOC right-to-sue letter.  42 U.S.C. § 2000e-5(f)(1); [ECF No.1-1].  On November 28, 2022 -- eighty-nine days after the date of the right to sue letter -- Plaintiff sued Sanofi in Massachusetts Superior Court.  [ECF No. 9].  In the state court complaint, Plaintiff asserted seven state common law claims.[4] Plaintiff did not assert any of her presently pending claims in her state court complaint.  Likewise, none of her state court causes of action are present in the instant amended complaint, which was filed on April 21, 2023.  However, the *factual allegations* in both of these complaints are strikingly similar.  [Compare ECF No. 1-1 ¶¶ 3-16 with ECF No. 12 ¶¶ 4-17].

In the instant amended complaint, Plaintiff alleges three causes of action: a violation of "M.G.L. Chapter 151" and of "Title VII"[5] (Count I); a violation of "Plaintiff[']s[] Equal Protection and Treatment Rights" under the 14th Amendment to the U.S. Constitution (Count II), and a violation of "Plaintiff[']s Substantive and Procedural Due Process Rights" under the U.S. Constitution and the Massachusetts Declaration of Rights (Count III).  [ECF No. 12, ¶ 18–34].

 For its part, Sanofi removed the case to this Court [ECF No. 1] and then moved to dismiss the action for four reasons: (a) because Plaintiff's Title VII claim is untimely; (b) because Plaintiff's constitutional claims fail as a matter of law since Sanofi is not a state actor; (c) because Plaintiff's Title VII and Mass. Gen. Law ch. 151B claims fail as a matter of law since the amended complaint does not

---

[4]  The causes of action included: detrimental reliance, intentional misrepresentation, negligence, tortious interference, intentional infliction of emotional distress, good faith and fair dealing, and assault.  [ECF No. 9].
[5] The Court assumes that the Plaintiff refers to Mass. Gen. Law ch. 151B, § 4 ("Chapter 151B") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").

contain any specifics about the Plaintiff's alleged sincerely held belief, and (d) because there is no affirmative evidence that Sanofi retaliated against Plaintiff for non-compliance with the vaccine policy. [ECF No. 16 ¶¶ 2–3].

## III.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must state a claim that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Plausible means something more than merely possible.  Zenon v. Guzman, 924 F.3d 611, 616 (1st Cir. 2019).  Gauging a pleaded situation's plausibility "is a 'context-specific' job that compels [the Court] 'to draw on' [its] 'judicial experience and common sense.'"  Id.  (quoting Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)).   Dismissal for failure to state a claim is appropriate if the complaint "fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotation marks and citations omitted).

Ordinarily, a court may not consider any materials that are either outside the four corners of the complaint "or not expressly incorporated therein" without converting the motion into one for summary judgment.  Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  However, there is a "narrow exception" for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  Watterson, 987 F.2d at 3 (internal quotation marks and citations omitted).  In fact, when a complaint's factual allegations are "expressly linked to – and admittedly dependent upon – a document [offered by the movant] (the

authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it[.]"  Beddall v. State St. Bank and Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998) (citations omitted and alterations in original).

## IV.    DISCUSSION

### a.  Timeliness of Title VII Claim

As a threshold issue, Defendant argues that Plaintiff's Title VII claim -- which resides within Count One -- should be dismissed as untimely.  A plaintiff asserting a Title VII claim must file suit within ninety (90) days of receiving the right to sue letter from the EEOC. Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 119 (1st Cir. 2009) (citing Franceschi v. U.S. Dep't of Veterans Affs., 514 F.3d 81, 85 (1st Cir. 2008)); 42 U.S.C. §2000e-5(f)(1). This requirement is strictly construed. Rice v. New England Coll., 676 F.2d 9, 10 (1st Cir. 1982) (concluding that the 90-day filing period was a statute of limitations).

The EEOC issued Devitt a right to sue letter on August 31, 2022, she did not explicitly assert a Title VII claim until she filed her First Amended Complaint on April 21, 2023. [ECF No. 12 ¶ 12]. Defendant contends that Devitt's Title VII claim is time-barred because it was first asserted in the First Amended Complaint ("FAC"), 243 days after receiving the right to sue. [ECF No. 16 at 7]. Devitt argues that the claim "relates back" to the filing of her original complaint on November 22, 2022, which was timely filed within the ninety-day window. [ECF No. 18 at 3–5].

### i.  Federal Procedural Law Controls the Relation Back Analysis

The parties do not agree as to which source of law controls the "relation back" question.  Defendant says that federal procedural law (specifically, Fed. R. Civ. P. 15(c)(1)(B)) applies while Plaintiff's position is that Massachusetts procedural law (specifically, Mass. R. Civ. P. 15(c)) applies. [ECF No. 16 at 7–9; ECF No. 18 at 3–5].  Although these rules have been found to be "substantively similar" to one another and the analysis would therefore likely be analogous under either, it is true that the Massachusetts relation

back rule "covers a broader range of amendments and is generally more liberal than its federal counterpart." <u>Pajak v. Rohm & Haas Co.</u>, No.19-10277-NMG 2019 U.S. Dist. LEXIS 212211, at *7-8 (D. Mass. Dec. 9, 2019) (citations omitted). Therefore, the distinction matters, and this Court must first decide which rule applies.

Plaintiff asserts that because this action was originally filed in state court, Massachusetts Rules of Civil Procedure should apply. [ECF No. 18 at 4]. In a diversity action, "the choice between the state and federal relation-back rule functions as a 'one-way ratchet, meaning that a party is entitled to invoke the more permissive relation back rule.'" <u>Pajak</u>, 2019 U.S. Dist. LEXIS 212211, at *8 (quoting <u>Coons v. Indus. Knife Co.</u>, 620 F.3d 38, 42 (1st Cir. 2010)); <u>see</u> <u>Morel v. Daimler-Chrysler AG</u>, 565 F.3d 20, 26 (1st Cir. 2009). However, federal courts "'look to the **amended complaint** to determine jurisdiction.'" <u>Royal Canin U.S.A, Inc. v. Wullschleger</u>, 604 U.S. 22, 32 (2025) (quoting <u>Rockwell Int'l Corp. v. United States</u>, 549 U.S. 457, 474 (2007) (emphasis added)). This rule "operates in federal-question cases and diversity cases, both to destroy and create jurisdiction." <u>Royal Canin</u>, 604 U.S. at 43. Thus, "an amendment [to a complaint] can wipe the jurisdictional slate clean, giving rise to a new analysis with a different conclusion." <u>Id.</u> at 34. Adding federal claims in such a suit "can create original jurisdiction where it once was wanting" and so too, an amendment can "create jurisdiction in an original diversity case." <u>Id.</u> at 24. Plaintiff amended her complaint after removal to federal court, terminating all state claims, and adding three counts based on federal question. [ECF No. 1-1; ECF No. 12]. Although this case was removed on grounds of diversity, after the FAC was filed on April 21, 2023, the Court's power to hear the case now derives from either federal question jurisdiction or diversity jurisdiction. <u>See</u> 28 U.S.C. § 1331.

Additionally, the Federal Rules of Civil Procedure "apply to a civil action <u>after</u> it is removed from state court." Fed. R. Civ. P. 81(c)(1) (emphasis added). "[S]tate law determines whether an amended pleading filed in state court <u>prior to removal</u> relates back to an earlier state-court pleading." 2 Steven S.

Gensler & Lumen N, Mulligan, Federal Rules of Civil Procedure, Rules and Commentary, Rule 81 (emphasis added) (citing <u>Taylor v. Bailey Tool Mfg. Co.</u>, 744 F.3d 944, 946–47 (5th Cir. 2014)). Here, Plaintiff introduced her Title VII claim <u>after</u> removal, so the Federal Rules apply. [<u>See</u> <u>e.g.</u>, ECF 12].

In a case, wherein federal law supplies the relevant statute of limitations, such as a Title VII action, Fed. R. Civ. P. 15(c)(3) applies. <u>See</u> <u>e.g.</u>, <u>Sigros v. Walk Disney World, Co.</u>, 190 F.Supp. 2d 165, 167–68 (D. Mass. 2002). When a plaintiff amends a complaint to add a new claim, Fed. R. Civ. P. 15(c) provides that an amended pleading relates back to the date of the original pleading if:

> (1) "'the law that provides the applicable statute of limitations allows relation back,' or (2) 'the amendment asserts a claim or defense that arose out of conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading.'"

<u>Trindade v. Grove Servs.</u>, 91 F.4th 486, 494-95 (1st Cir. 2024) (quoting Fed. R. Civ. P. 15(c)(1)(A)-(B)).

### ii.  Plaintiff's Title VII Claim is Timely

Here, Plaintiff's Title VII claim clearly arose out of the same alleged conduct and occurrences set forth in her original complaint.  As noted above, the factual allegations contained in the instant, amended complaint and the amended state court complaint are almost identical.  Both describe the Sanofi vaccination policy; both describe the alleged interactive processes that occurred, and both describe Sanofi's denial of Plaintiff's religious exemption request and her subsequent and directly related termination.  [ECF No. 9 ¶¶1-16; ECF No. 12 ¶¶1-17].

More fundamentally, there can be no question Plaintiff's state court complaint put Sanofi on notice of the claims against it, which is after all the underlying purpose of limitation periods. <u>See</u> <u>United States v. Kubrick</u>, 444 U.S. 111, 117 (1979).  Defendant's arguments to the contrary are unpersuasive.  It is true that Plaintiff jettisoned her state law claims in favor of, among others, a Title VII claim, but these new claims undoubtedly relate back to her original complaint since they arise out of "the conduct" and "occurrence[s]" set forth in her original complaint.  Fed. R. Civ. P. 15(c).  Since relation back will not

offend the purpose of the statute of limitations, this Court concludes that Plaintiff's Title VII claim relates back to the filing date of her original complaint and is therefore timely.  See e.g., Pajak, 2019 U.S. Dist. LEXIS 212211, at *7-9.

### iii.  Plaintiff's MGL c.151B Claims are Timely

Defendant's Motion to Dismiss makes no argument specific to the addition of Plaintiff's Chapter 151B claim. As timeliness is at issue for Count I pursuant to the Title VII claim, the Court will briefly address the timeliness of Plaintiff's Chapter 151B claim as well. To file a lawsuit for religious discrimination under Chapter 151B, a plaintiff must first exhaust their administrative remedies by filing an administrative charge with the EEOC or the Massachusetts Commission Against Discrimination ("MCAD").  See Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999); see also, Cuddyer v. Stop & Shop Supermarket Co., 750 N.E. 2d 928, 936 n.11 (Mass. 2001) ("A claim cannot be brought alleging discrimination under G.L.c. 151B, unless it is preceded by the filing of a complaint of unlawful discrimination with the MCAD within six months of the alleged act or acts of discrimination."). It is undisputed in this case that Plaintiff filed with the EEOC in February 2022. [ECF No. 12 ¶ 11]. The complaint is silent on whether Plaintiff filed a complaint with MCAD. However, pursuant to a "work-sharing" agreement between the EEOC and the MCAD, "a charge filed with the EEOC is automatically referred to MCAD . . . and claims filed with MCAD or the EEOC are effectively filed with both agencies." Williams v. City of Brockton, 59 F. Supp. 3d 228, 245 (D. Mass. 2014) (internal quotation marks and citations omitted).

A claim pursuant to Chapter 151B must be filed within three years in state or federal court, "regardless of whether the administrative agency has completed processing the claims." Jahour v. Mass. Bay Transp. Auth., No. 23-CV-10993-AK, 2024 U.S. Dist. LEXIS 23086, at *13 (D. Mass. Feb. 9, 2024) (citing Mass. Gen. Laws ch. 151B, § 9; see Goldstein v. Brigham & Women's Faulkner Hosp. Inc., 80 F.

Supp. 3d 317, 324 (D. Mass, 2015)).  Plaintiff was terminated from employment February 14, 2022. [ECF No. 12 ¶ 10]. She properly filed with the EEOC and MCAD pursuant to the "work-sharing" agreement between the agencies. [Id. ¶ 11]. She filed her initial state court complaint November 28, 2022, and the FAC April 21, 2023. Regardless of a relation-back analysis for the original complaint, Count I pertaining to Chapter 151B is timely.

## V.    Analysis of Count I[6] : Failure to Accommodate and Retaliation

Claims of religious discrimination under Title VII and Chapter 151B are analyzed under a two-part framework.  Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 133 (1st Cir. 2004).   First, a plaintiff "must make her prima facie case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action." Id. (citation omitted). To prove a "bona fide religious practice," Plaintiff must show both that the belief or practice is religious, and that it is sincerely held.  E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 56 (1st Cir. 2002).  Second, if the plaintiff establishes a prima facie case, "the burden then shifts to the [employer] to show that it made a reasonable accommodation[,]" or if they did not, that doing so would have resulted in "undue hardship." Id. (citation omitted); Cloutier, 390 F.3d at 133.

Plaintiff's Count I claim proceeds on two theories: (1) Sanofi engaged in religious discrimination when it failed to accommodate her request for a religious exemption to its vaccine policy, and (2) that Sanofi's termination of her employment constituted retaliation for her refusal to become vaccinated against COVID-19. The Court will analyze each in turn.

### 1.    Prima Facie Case of Religious Discrimination

---

[6] Since 151B and Title VII religious discrimination claims are evaluated under such a similar legal framework, this Court need not and will not conduct the same analysis twice.  See e.g., Leaver v. Life Care Ctrs. of Am., Inc., 712 F. Supp. 3d 194, 201 (D. Mass. 2024) (explaining, at the motion to dismiss stage, that "Chapter 151B claims operate under a standard that is indistinguishable from Title VII[.]") (citation omitted).

To establish a prima facie case of religious discrimination under Title VII and Chapter 151B, the Court must discern whether the FAC asserts facts from which the Court can infer the following four elements: (1) that Devitt has beliefs that are religious and sincerely held, and (2) that her employer imposed upon her an employment requirement (3) that conflicted with those beliefs and (4) "was the reason for the adverse employment action." Lowes v. Mills, 68 F. 4th 706, 719 (1st Cir. 2023) (citation omitted). Chapter 151B claims operate under a standard that is indistinguishable from Title VII for the purposes of this motion. Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 137 (1st Cir. 2004) (to show a prima facie Chapter 151B case, a plaintiff must show "the employer required her to violate a religious practice required by her sincerely held belief." (citation omitted)).

At the motion to dismiss stage, courts will not generally inquire into the sincerity of a sufficiently pleaded religious belief, however, the pleadings must go beyond a conclusory assertion that the required conduct violated a plaintiff's religion. See, e.g., Griffin v. Mass. Dep't of Rev., No. 22-cv-11991, 2023 U.S. Dist. LEXIS 125845, at *14 (D. Mass. July 20, 2023) (citing Africa v. Commonwealth of Pennsylvania, 662 F.2d 1025, 1031 (3d Cir. 1981)).

Here, Ms. Devitt filed an original and amended complaint making no assertions to how the COVID-19 vaccination impacted her religious beliefs or which religious beliefs she held, and a document providing more information on this topic that was filed by the Defendant is not incorporated by the amended complaint to an extent that the Court could appropriately consider it on a motion to dismiss. See Beddall, 137 F.3d at 17 (citations omitted). Any and all arguments presented by Devitt to the vaccine were argued in her Opposition to the Motion to Dismiss and presented secular theories. [See ECF No. 18 at 1-2, ("Being vaccinated with the COVID-19 vaccine does not, in any respect, prevent a person from spreading the disease to another person;" "The leading authority on the disease has been stating throughout the so-called COVID-19 pandemic that **being vaccinated does not prevent the spread of the disease**;"

10

"[b]eing vaccinated has virtually no effect on preventing the spread of COVID-19.") (emphasis in original)]. These threadbare assertions in her amended complaint alone fall short of the 12(b)(6) standard. However, in the Defendant's briefing, Sanofi attached exhibits including Ms. Devitt's accommodation request, which identified the connection between Ms. Devitt's religious beliefs and requested accommodation from Defendant Sanofi. [ECF No. 11-1, Exhibit E]. The only representations made by Ms. Devitt discussing religion were in her original accommodation forms sent to Sanofi. [Id.]. In this request, Devitt describes herself as a "biblically based Christian," who believes "our bodies [are] designed and created exactly as they were meant to be, to be the temple of the Holy Spirit." [Id. at 38-39]. Devitt states in her request that "defiling the physical body defiles the spirit as well[,] [a]s such, not only can I not take the vaccine . . . [f]or me to take the covid vaccines, would be a blasphemous sin, and it would be me placing trust in man, rather than God. [Id. at 39]. For me, to take the covid vaccine would be to forfeit my connection with God, and therefore, forfeit my eternal salvation." [Id.]. While there is a  "narrow exception[]" that would allow the Court to consider documents outside of the complaint, i.e. "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claims; or for documents sufficiently referred to in the complaint[,]"  Watterson, 987 F.2d at 3 (citation omitted), Devitt did not incorporate these assertions into her FAC, nor did the Defendant base any of its Motion to Dismiss arguments on information based in the accommodation letter. Therefore, the Court does not find this document was expressly incorporated into the four corners of the complaint, and Plaintiff has failed to meet her burden of establishing her prima facie case. See Bazinet v. Beth Israel Lahey Health, Inc., No. 1:23-cv-11056-AK, 2023 U.S. Dist. LEXIS 235377, at *20 (D. Mass. Dec. 22, 2023) (holding that a Plaintiff did not sufficiently allege that "her reluctance to be vaccinated is grounded in sincerely held religious beliefs[,]" and therefore did not establish a prima facie case for discrimination.); see also Thornton v. Ipsen Biopharmaceuticals, Inc., No. 23-11171-JCB, 2023 U.S. Dist. LEXIS 193116

(D. Mass. Oct. 26, 2023) (holding that when a Plaintiff failed to state what her religious "beliefs were or how they relate to vaccines generally or the COVID-19 vaccine specifically[,]" she fails to allege a prima facie case for religious discrimination after termination.)[7]

Thus, the Court granted the Motion to Dismiss via E-order without prejudice with leave to amend pursuant to Fed. R. Civ. P. 15(a)(2). [ECF No. 26].

## 2. **Undue Hardship**

Although Devitt has failed to establish a prima facie case for religious discrimination, the Court will take a moment to analyze the Defendant's undue hardship affirmative defense.

In a Title VII action for religious discrimination, a defendant may bring "undue hardship" as an affirmative defense. In 2023, the Supreme Court clarified that under Title VII, "undue hardship" is shown "when a burden is substantial in the overall context of an employer's business." Groff v. DeJoy, 600 U.S. 447, 468 (2023). To succeed on an undue hardship defense, the employer must show that "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." Id. at 470 (citation omitted). This requires the Court to take "into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." Id. at 470-71. "Relevant non-economic costs include health and safety risks, as well as the risk of reputational injury." Together Emps. v. Mass. Gen. Brigham Inc., 573 F. Supp. 3d 412, 435 (D. Mass. 2021), aff'd, 32 F.4th 82 (1st Cir. 2022)).

Here, Defendant has asserted undue hardship as an affirmative defense. [ECF No. 16 at 12–15]. Defendant claims that accommodating Devitt would either cause or increase safety risks, or lead to

---

[7] The Court's decision on 04/04/2024 was based on the controlling law at the time. The Court notes that the appeal of the two cited cases changed how courts in the First Circuit must review accommodation requests if provided by the parties. See Bazinet v. Beth Israel Lahey Health, Inc., 113 F 4th 9 (1st Cir. 2024) and Thornton v. Ipsen Biopharmaceuticals, Inc., 126 F. 4th 76 (1st Cir. 2025). For future filings in this matter, the parties must look to the current controlling law.

Sanofi's reputational harm as a company that "supported vaccine manufacturing throughout the global pandemic." [Id. at 12-13].

The First Circuit has noted that "it is possible for an employer to prove undue hardship without actually having undertaken any of the possible accommodations." Together Emps, 573 F. Supp. 3d at 436 (internal quotation marks and citation omitted). However, in Defendant's motion to dismiss in response to the FAC, Sanofi did not provide enough information to sufficiently assert undue hardship. Sanofi has not established the economic and non-economic costs associated with accommodations requested by Devitt, such as masking, routine COVID-19 testing, or other mitigating efforts such as social distancing, that could have been implemented had Devitt's religious exemption been granted. Cloutier, 390 F.3d at 134. Nor has Sanofi provided information to support the indirect harms related to its reputation, other than the fact that Sanofi "supported vaccine manufacturing throughout the global pandemic." Id. at 136; [ECF No. 16 at 13]. Therefore, "whether a hardship would be substantial in the context of [the] employer's business" is not clear on the face of either party's pleading. See Groff, 600 U.S. at 471. If the burden had shifted to Defendants, Sanofi's argument could not "succeed at the motion to dismiss stage because the argument requires the development of the factual record." Guillemard-Ginorio v. Contreras Gomez, 161 F. App'x 24, 28 (1st Cir. 2005) (citation omitted).

### b. Retaliation Claim

To establish a prima facie case of retaliation under Title VII, Devitt must establish that (1) she engaged in protected conduct; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the two. See Sisco v. DLA Piper LLP, 833 F. Supp. 2d 133, 147 (D. Mass. 2011) (quoting Rivera-Colón v. Mills, 635 F.3d 9, 12 (1st Cir. 2011)). If Devitt makes out her prima facie case, the burden will shift to Defendants to articulate a legitimate, non-retaliatory reason for the adverse action. Jones v. Walgreen Co., 679 F.3d 9, 20 (1st Cir. 2012).

Sanofi asserts that Devitt's claim fails as a matter of law because she did not engage in a protected activity. Defendant contends that Devitt's "failure to comply with a condition of her employment is not protected activity, and her termination for that non-compliance is not unlawful retaliation." [ECF No. 16 at 16]. However, the FAC asserts that Sanofi denied Devitt's accommodations before terminating her. Therefore, Devitt sufficiently pled the first element of retaliation because "[r]equesting a reasonable accommodation is a protected activity." Together Emps., 573 F. Supp. at 444 (citing Colón- Fontánez v. Mun. San Juan, 660 F.3d 17, 36 (1st Cir. 2011)). Devitt has also met the second prong of her claim, because she suffered an adverse employment action when she was terminated. See Toussaint v. Brigham & Women's Hosp., Inc., 166 F. Supp. 3d 110, 118 (D. Mass. 2015) (citing Pearson v. Mass. Bay Transp. Auth., 723 F.3d 36, 42 (1st Cir. 2013)); Martinelli v. Bancroft Chophouse, LLC, 357 F. Supp. 3d 95, 103 (D. Mass. 2019) ("To constitute an adverse employment action, the conduct 'must materially change the conditions' of plaintiff's employment." (citation omitted)).

Devitt, however, cannot succeed on the third prong of the analysis, causation. Devitt asserts in her amended complaint that Sanofi retaliated against her "because she refused to inject the COVID-19 vaccine." [ECF No. 12 ¶ 21]. However, it was not Devitt's request for an accommodation that led to her termination, but her failure to get the COVID-19 vaccination after her request for accommodation was denied. See Lucky v. COBX, Co., No. 22-12514, 2023 WL 3359607, at *2–3 (E.D. Mich. May 10, 2023) (emphasis omitted); see Together Emps., 573 F. Supp. 3d at 444 (holding that a plaintiff could not succeed on the merits of a retaliation claim where "the consequences for non-compliance are based on the employees' vaccination status, not whether or not they applied for an exemption"); see also Lavine v. Mass Gen. Brigham, No. 1:23-CV-10987-PBS, at *15 (D. Mass. Nov. 28, 2023) (holding in an almost-identical case, that Plaintiff could "not establish a causal connection between their religious exemption and termination" when the termination was due to his failure to vaccinate, not his request for accommodation).

As Devitt cannot establish causation for her retaliation theory for Count I, she fails to meet her burden for her prima facie case.

## VI.    Analysis of Count II & Count III

Counts II and III of Devitt's FAC allege several causes of action under the United States Constitution. Specifically, Count II alleges violations of Devitt's "Equal Protection and Treatment Rights" under the Fourteenth Amendment. [ECF No. 12 ¶ 25]. Count III alleges violations of Devitt's "Substantive and Procedural Due Process Rights" under the First, Fourth, and Fourteenth Amendments to the United State Constitution and Articles IV, X, XX, XXI, XXIX, and XXX of the Massachusetts Declaration of Rights. [Id. ¶ 31]. Sanofi argues that these claims must be dismissed because "Sanofi US is not a state actor, and the FAC provides no allegation or basis to infer that Defendant — a private entity — may be liable for supposedly violating Plaintiff's constitutional rights." [ECF No. 16 at 3]. The Court agrees.

"The Supreme Court has long held that the United States Constitution applies only to actions by governments and their employees." Tynecki v. Tufts Univ. Sch. Of Dental Med., 875 F. Supp. 26, 30 n.5 (D. Mass. 1994) (citation omitted); see e.g., Rendall-Baker v. Kohn, 457 U.S. 830 (1982). "The Massachusetts Supreme Judicial Court has found that the same requirement exists under the Massachusetts Constitution." Tyneki, 875 F. Supp. at 30 n.5 (citation omitted); see Phillips v. Youth Dev. Program, Inc., 459 N.E.2d 453, 456 (Mass. 1983) ("[u]nless the private entity is performing a traditional and exclusive State function, the focus must be on whether government action was involved in the particular conduct that is challenged as wrongful." (citations omitted)) The United States Supreme Court has identified a three-part inquiry for courts to consider in determining when conduct by a private actor rises to the level of state action, including:

> 1) [W]hether there was a sufficient nexus between the state and the private actor which compelled the private actor to act as it did; 2) whether the private actor has assumed a

15

traditionally public function; and 3) whether there is a sufficient "symbiotic relationship" between the state and the private actor so that the state may be recognized as a joint participant in the challenged activity.

Citizens to End Animal Suffering & Exploitation, Inc. v. Faneuil Hall Marketplace, Inc., 745 F. Supp. 65, 69 (D. Mass. 1990); Manhattan Cmty. Access Corp. v. Halleck, 587 U.S. 802, 809 (2019).

First, Plaintiff asserts that Defendant acted as "agents of state actors" because it was "ordered to create the policy per a mandate of the Federal government." [ECF No. 18 at 6]. According to Devitt, the Center for Medicare and Medicaid Services ("CMS") "mandated hospitals receiving Medicare and Medicaid funds to promulgate and enforce policies requiring their employees to be injected with the COVID-19 vaccine[,]" and that Defendant Sanofi "created the policy in question . . . because [it was] ordered to so by the Federal Government." [Id.]  Therefore, Sanofi should be considered a state actor. [Id.] Devitt also argues that Sanofi is a state actor because (1) there is "a close nexus between the State and the challenged action," (2) the public function test, (3) the state compulsion test, (4) the state's exercise of coercive power, and (5) Defendants' receipt of federal funding. [See id. at 6-7].

Sanofi is a privately-owned healthcare and pharmaceutical company, it is not a government actor. Additionally, unlike Plaintiff counsel's almost identical filings in Lavine v. Mass Gen. Brigham, Defendant Sanofi is not a hospital, nor did Sanofi fall under the applicable entities of the CMS regulation. No. 1:23-CV-10987-PBS, at *17; see CMS 3514-IFC (applicable entities are those that provide services to Medicare, Medicaid, Basic Health Programs, and Exchange Beneficiaries). Devitt's FAC does not allege any plausible facts suggesting that the government compelled or coerced Defendant Sanofi to implement Sanofi's Vaccination Policy. Additionally, the Supreme Court has stressed that there are "very few" functions that qualify a private entity as a state actor. Flagg Bros., Inc. v. Brooks, 436 U. S. 149, 158 (1978); Rendell-Baker, 457 U.S. at 842 (holding that to qualify as a traditional, exclusive public function

within the meaning of the state-action precedents, the government must have traditionally and exclusively performed the function (i.e. running elections and operating a company town)).

Devitt argues that "Defendant receives so much of its funding from the Federal government, it is completely beholden to the Federal government." [ECF No. 18 at 8]. However, it has long been understood that "extensive regulation and financial aid, without more, is not sufficient to elevate [D]efendants' conduct to the level of state action." Tynecki, 875 F. Supp. at 33 (citations omitted).

Because Sanofi is not a state actor and was not engaged in state action, Devitt's federal constitutional claims (Counts II and III) are dismissed with prejudice as a matter of law.

Count III pursuant to the Massachusetts Declaration of Rights is also dismissed because "although an action under the Massachusetts Civil Rights Act ("MCRA") does not require state action, a MCRA claim requires proof that interference or attempted interference was by threats, intimidation or coercion." Lavine, 23-cv-10987-PBS at 19 (quoting Batchelder v. Allied Stores Corp., 473 N.E. 2d 1128, 1131 (Mass. 1985); Bally v. Northeastern Univ., 532 N.E. 2d 49, 51–52 (Mass. 1989)) (internal citations omitted). Devitt has provided no evidence that she was threatened, intimidated, or coerced by Sanofi to receive a vaccination. The only "threat" that can be assumed from these filings "is [her] threatened, and later actual, loss of employment, but the threatened or actual loss of employment is 'not coercive in the relevant sense under the MCRA.'" Lavine, 23-cv-10987-PBS at 19 (quoting McEntee v. Beth Israel Lahey Health, Inc., 685 F. Supp. 3d 43, 52 (D. Mass. 2023) (citations omitted); see Nolan v. CN8, 656 F.3d 71, 77–78 (1st Cir. 2011) ("the termination, or threatened termination, of at-will employees is not coercive in the relevant sense under the MCRA… [A]t-will employees are not entitled to their employment, and therefore do not, when threatened with its loss, reasonably suffer coercion or intimidation.")

For the reasons stated above, the Motion to Dismiss pursuant to Count II and III are **GRANTED** in full.

**ORDER**

As stated in the Court's E-order [ECF No. 26], Defendant's motion to dismiss as to Count II and Count III was GRANTED with prejudice. Defendant's motion to dismiss Count I was GRANTED without prejudice and with leave to amend her failure to accommodate claim only. As shall be further detailed in a Show Cause Order, [ECF No. 33], Plaintiff shall have thirty (30) days from the issuance of this order to file a new amended complaint.

**SO ORDERED.**

Dated: August 4, 2025

  /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge